```
1              IN THE UNITED STATES DISTRICT COURT

2            FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                       SAN JOSE DIVISION

4
     UNITED STATES OF AMERICA,        )   CR-10-00827-LHK
5                                     )
                    PLAINTIFF,        )   SAN JOSE, CALIFORNIA
6                                     )
            VS.                       )   AUGUST 29, 2012
7                                     )
     ZHANG, ET AL,                    )   PAGES 1-43
8                                     )
                    DEFENDANT.        )
9    _____ )

10

11                  TRANSCRIPT OF PROCEEDINGS
                 BEFORE THE HONORABLE LUCY H. KOH
12                UNITED STATES DISTRICT JUDGE

13

14   A P P E A R A N C E S:

15

16   FOR THE PLAINTIFF:      UNITED STATES ATTORNEY'S OFFICE
     UNITED STATES           BY:  SUSAN KNIGHT
17                           150 ALMADEN BLVD. STE 900
                             SAN JOSE, CA  95113
18

19

20   FOR THE DEFENDANT:      NOLAN, ARMSTRONG, BARTON LLP
                             BY:  THOMAS NOLAN, JR.
21                                SHIRA KIEVAL
                             600 UNIVERSITY AVENUE
22                           PALO ALTO, CA  94301

23
               (APPEARANCES CONTINUED ON NEXT PAGE.)
24

25   OFFICIAL COURT REPORTER:    SUMMER FISHER, CSR, CRR
                                 CERTIFICATE NUMBER 13185
```

```
 1     FOR THE MOVANT:     K & L GATES, LLP
                           BY:  PATRICK SALCEDA
 2                               KIMBERLY STEWART
                           630 HANSEN WAY
 3                         PALO ALTO, CA 94304

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1    SAN JOSE, CALIFORNIA                    AUGUST 29, 2012
2                      P R O C E E D I N G S
3              (WHEREUPON, COURT CONVENED AND THE FOLLOWING
4    PROCEEDINGS WERE HELD:)
5              THE CLERK:  CR-10-00827-LHK.  UNITED STATES V.
6    ZHIQIANG ZHANG.
7              MS. KNIGHT:  GOOD MORNING AGAIN, YOUR HONOR.
8         SUSAN KNIGHT FOR THE UNITED STATES.
9              MR. NOLAN:  GOOD MORNING, YOUR HONOR.
10        TOM NOLAN AND SHIRA KIEVAL WITH MR. ZHANG WHO IS PRESENT.
11             THE COURT:  OKAY.  SO THIS IS ON FOR A MOTION
12   HEARING.
13        I HAVE READ THE PAPERS WITH REGARD TO THE APPOINTMENT OF A
14   DAMAGES EXPERT, FOR THE COURT'S BENEFIT IS HOW IT'S PHRASED.
15   I'M DENYING THAT REQUEST.
16        BUT LET'S TALK ABOUT THE CASE ITSELF.  I THINK THE BEST
17   THING TO DO AT THIS POINT WOULD BE TO HAVE A SETTLEMENT
18   CONFERENCE.  I WOULD RECOMMEND EITHER JUDGE RONALD WHYTE OR
19   MAGISTRATE JUDGE GREWAL, THEY BOTH ARE -- THEY ARE VERY
20   EXPERIENCED WITH TRADE SECRET CASES.
21        JUDGE GREWAL HAS A TECHNICAL BACKGROUND FROM MIT.
22   JUDGE WHYTE HAS DONE A LOT OF FELONY SENTENCINGS, SO HE'S VERY
23   FAMILIAR WITH HOW THESE THINGS WOULD ULTIMATELY POTENTIALLY
24   PLAY OUT.
25             SO WHAT'S YOUR VIEW ON THAT?
```

```
1              MS. KNIGHT:  YOUR HONOR, THE GOVERNMENT WILL

2    PARTICIPATE IN A SETTLEMENT CONFERENCE WITH EITHER JUDGE.

3              MR. NOLAN:  THE DEFENDANT ALSO, THE DEFENDANTS ALSO

4    WOULD AGREE TO THAT.

5         AND YOUR ASSESSMENT OF THE TWO JUDGES AS I SAT HERE I SAID,

6    OH YEAH, LET'S HAVE JUDGE GREWAL.  THEN I SAID OH YEAH, LET'S

7    HAVE JUDGE WHYTE.

8         JUDGE WHYTE AND I -- I KNOW HE KNOWS A LOT ABOUT THE

9    SENTENCING AND THAT'S AN IMPORTANT PART OF SOMETHING LIKE THIS,

10   BUT AT THE SAME TIME SO IS THE TECHNICAL.

11        SO WE WOULD BE HAPPY WITH EITHER JUDGE, YOUR HONOR.  IT

12   DEPENDS WHO THE COURT FEELS THAT WE SHOULD HAVE OR WHO IS MOST

13   AVAILABLE.

14             THE COURT:  I MEAN, JUDGE WHYTE HAS DONE PATENT CASES

15   FOR OVER 20 YEARS.

16        SO HE ALSO, WAS ALSO A MATH MAJOR IN COLLEGE, SO I THINK HE

17   WILL NOT HAVE ANY PROBLEMS WITH THE TECHNICAL.

18             MR. NOLAN:  JUDGE WHYTE IS FINE, YOUR HONOR.

19             MS. KNIGHT:  YEAH.

20             THE COURT:  OKAY.  SO I'M GOING TO --

21             (OFF-THE-RECORD DISCUSSION.)

22             THE COURT:  WHY DON'T I JUST REFER THIS AND YOU ALL

23   CAN CONTACT.

24             MS. KNIGHT:  WE WILL DO THAT AND WORK OUT A MUTUALLY

25   AGREEABLE TIME.
```

1          MR. NOLAN:  AND YOU WOULD LIKE THIS PROBABLY WITHIN

2    THE NEXT 2 TO 3 WEEKS, I WOULD IMAGINE.

3          THE COURT:  WELL, I DON'T KNOW WHAT HIS SCHEDULE IS

4    BECAUSE HE'S IN TRIAL RIGHT NOW.

5          BUT AS SOON AS HE CAN ACCOMMODATE YOU IS FINE.  HE'S

6    GOING TO TRIAL UNTIL 130.  I DON'T KNOW THAT HE WOULD DO A

7    SETTLEMENT CONFERENCE IN THE AFTERNOON BEYOND THAT.  BUT I'M

8    JUST GOING TO REFER YOU TO JUDGE WHYTE FOR A SETTLEMENT

9    CONFERENCE.

10          YOU KNOW, I THINK THAT WOULD BE THE BEST SORT OF LIKE AN

11    EARLY NEUTRAL EVALUATION EFFECTIVELY, YOU CAN SET FORTH ALL OF

12    YOUR -- I MEAN, OBVIOUSLY THE SENTENCING WILL NOT BE LIMITED TO

13    LOSS AMOUNT.  THE GUIDELINES ARE NOT MANDATORY.  IT WILL BE

14    3553(A) FACTORS WHICH ARE A LITTLE MORE HOLISTIC AND LOOK AT

15    OTHER CIRCUMSTANCES OF THE OFFENSE.

16          BUT EVEN AS TO A LOSS AMOUNT, I THINK THAT JUDGE WHYTE

17    COULD GIVE YOU A GOOD SORT OF REALITY CHECK ON WHAT'S REALLY

18    MORE REALISTIC TO EXPECT.

19          IF THIS WERE TO GO TO TRIAL, I'M NOT GOING TO DECIDE IT

20    RIGHT NOW.  BUT YOU KNOW, IF YOU FELT LIKE THAT ISSUE NEEDED TO

21    GO TO THE JURY OR EVEN ADVISORY VERDICT ON THE LOSS AMOUNT

22    ISSUE, I WOULD LIKE TO HEAR FROM YOU ALL WHETHER THIS RAISES

23    APPRENDI TYPE ISSUES THAT WE HAVE TO HAVE A FACTUAL FINDING

24    FROM A JURY ON THIS OR NOT.

25          BUT WE CAN RESOLVE IT LATER, I DON'T THINK IT HAS TO BE

1    DECIDED RIGHT NOW.

2              MR. NOLAN:  AGAIN, JUST TO REMIND THE COURT THAT ONE

3    OF THE REASONS WE THOUGHT THAT THE COURT WOULD BE INCLINED TO

4    USE THIS METHOD WOULD BE TO ASSIST THE DEFENDANT IN HIS SIXTH

5    AMENDMENT OR OUR SIXTH AMENDMENT RESPONSIBILITY TO HIM TO

6    ADVISE HIM ABOUT CONSEQUENCES OF ENTERING INTO A PLEA,

7    ET CETERA, BASED ON OUR RESPONSIBILITY.

8         AND ALSO BECAUSE OF THE LACK OF AVAILABLE INFORMATION TO US

9    BECAUSE OF THE LACK OF COOPERATION BY THE ALLEGED VICTIM IN THE

10   MATTER SO THAT WE DON'T HAVE THE SAME RESOURCES TO DO THAT

11   WORK, EITHER FINANCIAL OR PROCEDURAL RESOURCES, SO TO SPEAK.

12        AND IN A WAY --

13             THE COURT:  WELL, I MEAN, I'VE LOOKED AT TWO OF HIS

14   REQUESTS FOR CJA FUNDED EXPERTS AND I DON'T FIND HIM TO BE

15   INDIGENT AND I DON'T WANT TO GO INTO MY SAVINGS TO BE

16   PARTICULARLY PERSUASIVE OR WHY WE SHOULD BE CJA FUNDS THAT TEND

17   TO BE FOR INDIGENT DEFENDANTS FOR EXPERTS.

18        AND PARTICULAR, NO DISRESPECT TO DAMAGES EXPERTS, BUT YOU

19   CAN GET DAMAGES EXPERTS TO PRETTY MUCH VOUCH FOR ANY NUMBER

20   WHICH --

21             MR. NOLAN:  THAT'S WHY I WAS HOPING WITH THE COURT

22   APPOINTED ONE, THE RESPONSIBILITY WOULD BE TO THE COURT NOT TO

23   EITHER THE PARTIES.

24        AND THEREFORE WE WOULD HAVE A MORE, HOPEFULLY A MORE

25   INDEPENDENT ONE.  THAT'S -- THAT WAS ONE OF THE REASONS FOR IT

```
 1            THE COURT:  AND I UNDERSTAND THAT.  I UNDERSTAND

 2   THAT.  BUT I -- HAVING LOOKED AT THE FULL RECORD, I DON'T THINK

 3   IT'S -- I DON'T THINK IT'S JUSTIFIED IN THIS INSTANCE.

 4            MR. NOLAN:  AND YOUR HONOR, IN REGARDS TO THE FUNDING

 5   ISSUE, THAT'S A VERY DIFFICULT ISSUE.  I MEAN, YOU KNOW, I

 6   DON'T KNOW WHETHER ANYONE OTHER THAN A CORPORATION OR SOMEONE

 7   WITH SUBSTANTIAL WEALTH, CAN AFFORD TO DEFEND THEMSELVES UNDER

 8   THE CIRCUMSTANCES THAT OF THE NEEDS AND THE TIME CONSTRAINTS

 9   AND THE TECHNICAL INFORMATION THAT'S NEEDED AND JUST COMPLYING

10   WITH PROTECTIVE ORDERS AND THINGS LIKE THAT.    I MEAN, WE

11   PRESENTED TO THE COURT, AND I'VE TOLD COUNSEL WE DID THIS.  WE

12   PRESENTED TO THE COURT THE ENTIRE PICTURE.  WE GAVE THE COURT

13   EVERYTHING IN TERMS OF TAX RETURNS AND ASSETS AND LIABILITY AND

14   LIVING AND THINGS LIKE THAT.

15       AND I DON'T KNOW WHAT THE SOLUTION IS.  I MEAN, I SUPPOSE

16   THE SOLUTION IS THAT WE SIMPLY DON'T HAVE IT WE SIMPLY DON'T.

17   I DON'T THINK IT'S THE RESPONSIBILITY OF THE LAWYER WHO TAKES

18   ON A CASE TO PAY IT OUT OF THEIR POCKET WHEN THEY TRY TO MAKE

19   FINANCIAL ARRANGEMENTS.

20            MR. ZHANG WOULDN'T GET A COURT APPOINTED COUNSEL, I CAN

21   UNDERSTAND THAT.  BUT, YOU KNOW, I THINK THERE'S A COUPLE

22   DIFFERENT PHILOSOPHIES IN THE NORTHERN DISTRICT.  AND USUALLY

23   WHEN THE CASE GETS THIS COMPLEX AND REQUIRES THIS MUCH OUTSIDE

24   RESOURCES, IN ORDER TO DO THE RIGHT JOB, YOU KNOW, THAT WITH

25   CONTROL BY THE COURT THAT THOSE THINGS ARE MADE AVAILABLE.
```

```
 1            QUITE FRANKLY, I'M IN A REAL DILEMMA HERE AS FAR AS WHAT

 2    I CAN DO.  HOW I CAN DO IT.  AND I FEEL LIKE IN FRONT OF THE

 3    JURY, YOU KNOW, I HAVE TO STAND UP AND SAY, YOU KNOW, HOW MUCH

 4    WOULD IT COST, DO YOU HAVE THAT KIND OF MONEY, SHOW THE JURY WE

 5    DON'T HAVE THAT MONEY, WE CAN'T DO THAT WORK, WE CAN'T

 6    CROSS-EXAMINE THAT WITNESS, BECAUSE WE DON'T HAVE ANYBODY TO

 7    LOOK AT THE MATERIAL

 8            THE COURT:  I'M LOOKING AT SEVERAL HUNDRED THOUSAND

 9    DOLLARS OF SAVINGS, STOCKS AND COLLEGE FUNDS.

10            SO I'M JUST NOT PERSUADED THAT MR. ZHANG IS INDIGENT.

11    I'VE SEEN WHAT HE'S BEEN PAYING FOR YOUR LAW FIRM AND THIS MAN

12    IS NOT INDIGENT.

13            AND CJA FUNDS ARE REALLY INTENDED FOR SOMEBODY WHO IS

14    INDIGENT.

15            SO NOW, THAT'S WHY I THINK GOING TO A SETTLEMENT

16    CONFERENCE WITH JUDGE WHYTE, WHO CAN POINT TO DEFECTS,

17    LIMITATIONS OF THE GOVERNMENT'S LOSS AMOUNT IS THE BEST WAY TO

18    GO BECAUSE HE CAN SEE THROUGH ANY DEFICIENCIES AND WOULD BE

19    ABLE POINT THAT OUT.

20            AND I THINK ULTIMATELY SENTENCING IS NOT GOING TO -- I

21    MEAN I'M REALLY GOING TO BE LOOKING AT 3553(A) FACTORS, THERE'S

22    NO MANDATORY MINIMUM HERE, THERE'S NO REQUIRED SENTENCE.

23            IT'S GOING TO BE A MORE HOLISTIC CONSIDERATION BASED ON

24    THE OFFENSE AND INDIVIDUAL CHARACTERISTICS OF MR. ZHANG.

25            BUT --
```

1          MR. NOLAN:  THANK YOU, YOUR HONOR.

2          THE COURT:  I THINK JUDGE WHYTE CAN HELP IN A WAY,

3    PERHAPS MORE THAT -- I THINK HE CAN PROVIDE A PERSPECTIVE THAT

4    WOULD BE EVEN MORE BENEFICIAL TO REALLY EVALUATING THIS CASE

5    THAN A DAMAGED EXPERT WHO I WOULD SUSPECT IS MORE LIKELY GOING

6    TO BE COMING FROM AN ECONOMIC LITIGATION PERSPECTIVE WHICH MAY

7    NOT BE AS HELPFUL IN GIVING SORT OF A REALITY CHECK ON WHAT'S

8    REALLY THIS CASE ULTIMATELY WORTH.

9          MR. NOLAN:  AND THE OTHER ISSUE IN THE COURT'S

10   PICKING THIS UP IS THAT THERE'S SO MANY DIFFERENT WAYS OF

11   EVALUATING IN A CRIMINAL MATTER.

12       AND THE EXPERT WOULD SAY OKAY, ON THE ONE HAND IT COULD BE

13   THIS, BUT ON THE OTHER HAND IT COULD BE THIS, AND WE ARE LEFT

14   IN THE SAME POSITION WE ARE IN NOW.

15          THE COURT:  I, YOU KNOW --

16          MR. NOLAN:  IT SEEMED LIKE A GOOD IDEA AT THE TIME IN

17   ORDER TO SHIFT RESPONSIBILITY, AND IT MIGHT HELP.

18          THE COURT:  I UNDERSTAND.  AND IT'S MADE A VALUABLE

19   POINT.

20       I DO HOPE THAT THE GOVERNMENT'S LOSS CALCULATION IS REALLY

21   RIGOROUS.  AND I THINK IF IT'S NOT JUDGE WHYTE WILL BE ABLE TO

22   SEE THROUGH THAT.

23          MS. KNIGHT:  YOUR HONOR, THE GOVERNMENT IS OPENING TO

24   A FULL DISCUSSION.  THERE ARE MANY WAYS TO EVALUATE LOSS AND

25   THAT WAS JUST ONE NUMBER.  WE ARE OPEN TO THE DISCUSSION SO I

1    THINK JUDGE WHYTE WOULD BE HELPFUL.

2        THE COURT:  I MEAN, I JUST HAD A CASE WHERE ONE

3    EXPERT SAID 2.7 BILLION THE OTHER SAID 22,000.  BOTH HIGHLY

4    QUALIFIED EXPERTS.

5     I MEAN, BUT IF ONE PERSON CAN TELL YOU ALMOST 3 BILLION AND

6    THE OTHER PERSON SAYS I THINK THE NUMBER WAS LITERALLY BETWEEN

7    22 AND $27,000.

8     SO YOU CAN HIRE A DAMAGES EXPERT WHO CAN PRETTY MUCH GIVE

9    YOU WHATEVER NUMBER YOU WANT AND THE PAYING CLIENT WANTS.

10     SO I'M JUST NOT SURE HOW USEFUL THAT WOULD BE HERE.  BUT

11    YOU DEFINITELY MADE YOUR POINT THAT THIS NEEDS TO BE A RIGOROUS

12    ANALYSIS.  AND I UNDERSTAND YOU WHEN YOU ARE SAYING THAT THESE

13    THINGS ARE VERY DIFFICULT TO QUANTIFY.

14        MR. NOLAN:  YOUR HONOR, THERE'S ONE OTHER ASPECT OF

15    THE REFERRAL.

16        THE COURT:  WHAT'S THAT.

17        MR. NOLAN:  AND THAT IS, THERE WAS AN OCCASION IN

18    WHICH I HAD A MATTER THAT WAS REFERRED AND JUDGE WARE WAS THE

19    SETTLEMENT JUDGE.  AND HE ULTIMATELY FELT IT WAS VERY IMPORTANT

20    TO GET THE CORPORATE PEOPLE INVOLVED.  IN TERMS OF APPROVALS

21    AND PEOPLE HERE, THE ALLEGED VICTIM.

22     IN A CASE LIKE THIS, WHAT WE ARE FINDING OUT, I THINK TODAY

23    FOR EXAMPLE, THE GOVERNMENT HAS NEVER LOOKED AT THE SECRETS

24    THAT THE COMPANY HAS NOR HAVE THEY BEEN GIVEN THE SECRETS NOR

25    IS THE COMPANY WILLING TO GIVE US THE SECRETS TO EVALUATE

1    WITHOUT SOME KIND OF SUBPOENA AND -- AFTER TWO YEARS, SO IT'S

2    CLEAR THE GOVERNMENT HAS NEVER LOOKED AT EVALUATED, BEEN GIVEN

3    THE SECRET.

4        IF YOU WOULD THINK THAT IT WOULD BE APPROPRIATE FOR THE

5    CIVIL LITIGANTS TO BE AT LEAST AVAILABLE AT THAT SETTLEMENT

6    CONFERENCE, IT WOULD BE A CONFERENCE BETWEEN THE GOVERNMENT AND

7    THE DEFENSE, BUT AVAILABLE SO THAT JUDGE CAN PRIVATELY TALK TO

8    THE VICTIM COMPANY, GET INFORMATION, THAT NEITHER OF US HAVE.

9    IN OTHER WORDS, TWO YEARS WE STILL HAVEN'T SEEN THE SECRET.  IT

10   HASN'T BEEN GIVEN TO US.

11       I JUST WONDER WHETHER THAT MIGHT BE HELPFUL.  YOU KNOW

12   IT'S A LITTLE UNUSUAL, MAYBE WE SHOULD WAIT AND SEE IF

13   JUDGE WHYTE WANTS TO DO THAT BUT THAT MAY BE OF SOME HELP.

14       THE COURT:  WELL, I WOULD THINK THAT, AND I DON'T

15   KNOW ENOUGH ABOUT THIS CASE SO MAYBE I SHOULDN'T SAY.

16       I WOULD THINK THAT JUDGE WHYTE WILL WANT TO SEE WHAT THE

17   TRADE SECRET IS BECAUSE I'VE HAD CIVIL TRADE SECRET CASES WHICH

18   WERE CLAIMING THINGS THAT WERE TAUGHT IN PRESCHOOL WERE TRADE

19   SECRETS AND NOT THAT THAT'S THE SITUATION IN THIS CASE, BUT I

20   THINK WHOEVER THE JUDGE IS, IS REALLY GOING TO GIVE YOU A

21   NEUTRAL EVALUATION, NEEDS TO KNOW WHAT THEY ARE.

22       SO I'M ASSUMING THAT THAT IS GOING TO BE GIVEN TO

23   JUDGE WHYTE, OTHERWISE I THINK ANY KIND OF SETTLEMENT

24   CONFERENCE WOULD BE PRETTY USE LESS IF HE DOESN'T GET TO SEE

25   WHAT IT IS AND HE'S DONE A LOT OF TRIALS AND WILL KIND OF BE

1    ABLE TO TELL YOU HOW THE JURY IS LIKELY TO PROCEED.

2            MR. NOLAN:  WELL, YOU MIGHT WANT TO HEAR FROM

3    COUNSEL.

4            MS. KNIGHT:  YOUR HONOR, THE INDICTMENT HAS TWO

5    COUNTS, CONSPIRACY WHICH IS A CONSPIRACY TO STEAL TRADE SECRETS

6    CALLED SIRF BLOCKS AND SURF STUDIO.  THEY ARE A LIBRARY OF

7    SOURCE CODE.

8        THEN WE HAVE COUNT 2 WHICH WE ALLEGE THE THEFT OF THREE

9    SPECIFIC SOURCE CODE FILES.  WE'VE HAVE TURNED OVER THE SOURCE

10   CODE THE FILE, THE CODE TO MR. NOLAN BUT WE HAVE NOT OBTAINED

11   THE LIBRARY.

12        AND THERE'S ALSO ALLEGED DUMPS FROM THE LIBRARY WHICH THE

13   GOVERNMENT WILL WORK WITH SIRF TECHNOLOGY TO ARRANGE INSPECTION

14   OF THE CODE, WE NEED TO WORK OUT THE LOGISTICS.  BUT THE VICTIM

15   COMPANY HAS BEEN COOPERATIVE, IT'S JUST THEY REQUIRE CERTAIN

16   METHODS IN ORDER TO REVIEW SOURCE CODE OF THIS NATURE.

17           MR. NOLAN:  AND THOSE METHODS MAY NOT BE CONSISTENT

18   WITH THE DEFENDANT'S RIGHTS TO DEFEND HIMSELF.

19       IN OTHER WORDS, WHAT I JUST HEARD TODAY THROUGH MS. KIEVAL

20   THAT THEY WILL NOT GIVE THIS TO THE GOVERNMENT WITHOUT A

21   SUBPOENA.

22       I DON'T KNOW HOW THE GOVERNMENT IS GOING TO ISSUE A

23   SUBPOENA FOR THIS TO GIVE THEM TO ME.  THAT THEY WILL NOT LET

24   ME HAVE IT THAT I HAVE TO DO SOMETHING IN A CLEAN ROOM WHICH I

25   DON'T UNDERSTAND.  THAT I CAN'T REVIEW IT AT AN INDEPENDENT

```
1    SOURCE.  I CAN'T EVEN REVIEW IT APPARENTLY AT THE FBI OR

2    WHATEVER.

3        I CAN'T -- SO, AND THIS IS TWO YEARS AFTER THE CASE

4    STARTED.  AND THEY HAVE BEEN TELLING US, OH, WE WILL GET BACK

5    TO YOU, WE WILL GET BACK TO YOU.

6        AND NOW THEY ARE COMING BACK TO US TODAY WITH A TRIAL

7    DATE OF JANUARY 11TH TO SAY WE ARE NOT GOING TO DO UNLESS YOU

8    GET A SUBPOENA OR UNLESS IT'S UNDER CERTAIN CIRCUMSTANCES.  AND

9    WE NEED A NEW PROTECTIVE ORDER.  AND THEY HAVEN'T FILED

10   ANYTHING --

11        THE COURT:  WHY IS THERE SO MUCH GAME PLAYING IN THIS

12   CASE?

13        I MEAN, IF YOU ARE GOING TO TAKE A TRADE SECRET CASE

14   CRIMINAL, I JUST DON'T UNDERSTAND THAT THEY'RE SUDDENLY SAYING

15   OH, WE CAN'T DO THIS.

16        IF THIS WERE A CIVIL TRADE SECRET CASE THAT WOULD HAVE

17   BEEN TURNED OVER A LONG TIME AGO.

18        MS. KNIGHT:  I UNDERSTAND, YOUR HONOR.  WE WILL.  I

19   WILL WORK WITH THE COMPANY.

20        THE COURT:  I'M TIRED OF HEARING THESE EXCUSES,

21   FRANKLY.

22        WHO IS HERE FROM SIRF?  I MEAN, I DON'T UNDERSTAND WHY THIS

23   WENT CRIMINAL IN THE FIRST PLACE.  I HAD ANOTHER TRADE SECRET

24   CASE WHICH WAS FAR MORE EGREGIOUS THAT STAYED CIVIL, SO I DON'T

25   KNOW WHY THIS IS CRIMINAL.
```

1    IF THEY ARE HEMMMING AND HAWING AND NOT PRODUCING IT AFTER

2    THEY HAD THE GOVERNMENT TURN THIS INTO A CRIMINAL CASE AND NOW

3    THEY ARE SAYING WE'RE NOT GOING TO TURN OVER THE INFORMATION

4    BECAUSE IT'S SO COMPLICATED, GIVE ME A BREAK.

5        WE DO HIGH-TECH CASES ALL THE TIME AND THEY ARE DONE ON A

6    SPEEDY BASIS.

7            MS. KNIGHT:  YOUR HONOR, I BELIEVE ATTORNEYS FROM

8    SIRF ARE HERE AND OUTSIDE COUNSEL PATRICK SALCEDA IS SEATED IN

9    THE FRONT ROW.

10           THE COURT:  SO WHAT'S THE PROBLEM?  IN TWO YEARS THEY

11   CAN'T TURN OVER THE LIBRARY FROM WHICH THESE TWO ALLEGEDLY

12   STOLEN FILES ARE FROM?

13       I MEAN, I HAD A TRADE SECRET CASE THAT WENT TO TRIAL IN

14   15 MONTHS AND IT ALSO HAD PATENT ASPECT, IT HAD A COPYRIGHT

15   ASPECT AND IT HAD A LOT MORE GOING ON THAN THIS.

16       SO I DON'T UNDERSTAND WHY YOU ARE SAYING YOU CAN'T TURN

17   OVER THE LIBRARY IN TWO YEARS.

18       WHAT'S THE ISSUE?  THIS STUFF GETS TURNED OVER FASTER IN

19   A CIVIL CASE THAN IN A CRIMINAL CASE, THAT MAKES NO SENSE TO

20   ME.

21       WHAT'S THE ISSUE?  NOW YOU'VE GOT THE GOVERNMENT TO DO A

22   CRIMINAL PROSECUTION, NOW YOU ARE SAYING THEY HAVE TO SUBPOENA

23   YOU TO TURN OVER THE LIBRARY?  SPEAK UP.  I WANT SOMEONE TO

24   SPEAK UP.

25           IF YOU ARE GOING TO USE THE JUDICIAL SYSTEM TO PROSECUTE

1    THIS CASE, THEN YOU NEED TO EXPLAIN YOUR ACTIONS BECAUSE I'M

2    FEELING FRUSTRATED HERE.

3         I'VE BEEN TRYING TO MOVE THIS CASE, AND EVERY TIME I HEAR

4    THAT THERE'S A DELAY THAT'S CAUSED BY THE ALLEGED VICTIM.

5              MR. SALCEDA:  UNDERSTOOD, YOUR HONOR.

6              THE COURT:  WHY DON'T YOU IDENTIFY YOURSELVES FOR THE

7    RECORD.

8              MR. SALCEDA:  GOOD MORNING, YOUR HONOR.

9         PATRICK SALCEDA ON BEHALF OF CSR TECHNOLOGIES.

10             MS. STEWART:  KIMBERLY STEWART FOR CSR.

11             MR. SALCEDA:  YOUR HONOR, THE LIBRARY REQUEST IS OF

12   RECENT, IT'S NOT TWO YEARS.  I DON'T KNOW WHEN THAT WAS

13   REQUESTED FROM MR. NOLAN.  AND THE ONLY CONSIDERATION OR

14   HESITANCE IN PRODUCING THE LIBRARY WAS BECAUSE MR. NOLAN

15   INSISTED THAT IT BE SENT OUTSIDE THE JURISDICTION TO AN UNKNOWN

16   EXPERT WITH NO RESTRICTION ON ITS REVIEW ESSENTIALLY THAT IT

17   JUST HAD TO BE SIGNED FOR BY SOMEBODY IN THE OFFICE.

18        SOURCE CODE IS PROVIDED IN CIVIL TRADE SECRET CASES, BUT

19   UNDER CONDITIONS, THERE'S SOURCE CODE REVIEW IN CLEAN ROOMS,

20   THERE'S SOURCE CODE REVIEW AT OUTSIDE COUNSEL'S OFFICES.

21        WE ARE WILLING TO DO THAT AND TO PROVIDE THAT INFORMATION

22   TO MR. NOLAN.

23             THE COURT:  ARE YOU REQUIRING TO BE SUBPOENAED?

24             MR. SALCEDA:  I THINK THE SUBPOENA WAS NECESSARY

25   BECAUSE OF MR. NOLAN'S HESITANCE IN ALLOWING US TO HAVE

1    RESTRICTIONS ON THE SOURCE CODE REVIEW.

2         I WILL PROVIDE -- I BELIEVE WE CAN PROVIDE THAT WITHOUT

3    SUBPOENA, BUT --

4              THE COURT:  I'M GOING TO VACATE THIS TRIAL DATE.  I

5    FEEL LIKE YOU ARE BEING DILATORY.  I'M GOING TO VACATE THIS

6    TRIAL DATE.

7         THIS IS RIDICULOUS.  IT'S ALREADY, BASICALLY SEPTEMBER 1ST.

8    SEPTEMBER, OCTOBER, NOVEMBER, DECEMBER, WE HAVE A TRIAL IN FIVE

9    MONTHS?  THIS IS RIDICULOUS.

10        WHAT DO YOU HAVE TO SAY FOR YOURSELVES?  I MEAN, IT'S

11   BEEN TWO YEARS.

12             MS. STEWART:  YOUR HONOR, WITH ALL DUE RESPECT -- MAY

13   I SPEAK, PLEASE.

14        WE HAVE BEEN TRYING TO PROVIDE MR. NOLAN WITH THE

15   INFORMATION THAT HE HAS REQUESTED.

16        WITH REGARD TO THE SOURCE CODE WE ARE TALKING ABOUT TRADE

17   SECRETS.  TRADE SECRETS ARE THINGS THAT AREN'T PATENTED, SO WE

18   HAVE TO HAVE SPECIAL PROTECTION ON THOSE.  WE ASKED WHEN

19   MR. NOLAN AND MS. KNIGHT --

20             THE COURT:  ARE YOU SAYING THE SOURCE CODE IS

21   COPYRIGHTED?

22             MS. STEWART:  YES.

23        I APOLOGIZE, YOUR HONOR, BECAUSE WHEN WE PUT OUR CODE IN,

24   WE PUT COPYRIGHT PROTECTIONS DOWN AT THE BOTTOM OF THE SOURCE

25   CODE.

1        BUT WHAT I'M TRYING TO EXPLAIN, YOUR HONOR, IS THAT WHEN

2   THEY WENT -- WHEN MS. KNIGHT AND MR. NOLAN TALKED ABOUT

3   AMENDING THE PROTECTIVE ORDER, WE ASKED FOR THE SPECIAL

4   PROTECTIONS FOR THE SOURCE CODE SPECIFICALLY.

5        THE COURT:  THE PROTECTIVE ORDER DOESN'T INCLUDE

6   ANYTHING ABOUT HOW SOURCE CODE IS GOING TO BE TREATED.  WHAT

7   KIND OF PROTECTIVE ORDER IS THAT IN A TRADE SECRET CASE?

8        MS. KNIGHT:  IT'S SUPPOSED TO BE KEPT IN A LOCKED

9   OFFICE.  IT'S TO BE RETURNED AFTER THE CONCLUSION OF THE TRIAL

10   TO MR. NOLAN OR MY OFFICE.

11        THERE ARE SPECIFIC PROTECTIONS, AND MR. NOLAN AND I

12   RECENTLY AMENDED IT TO DEAL WITH EXPERTS SPECIFICALLY THAT ANY

13   CONFIDENTIAL PROPRIETARY INFORMATION SENT TO AN EXPERT HAS TO

14   BE SENT BY FEDERAL EXPRESS, HAS TO BE SIGNED BY SOMEBODY IN THE

15   OFFICE, HAS TO BE KEPT IN A LOCKED OFFICE, CANNOT LEAVE THAT

16   OFFICE.

17        MR. NOLAN:  AND THE EXPERT HAS TO SIGN THE PROTECTIVE

18   ORDER.

19        MS. KNIGHT:  BEFORE THE --

20        MR. NOLAN:  BEFORE IT'S SENT.

21        THE COURT:  SO SIGN IT UPON TAKING AND RECEIVING.

22        MR. NOLAN:  RIGHT.

23        SO THAT THEY DIDN'T HAVE TO COME TO OUR OFFICE, THEY

24   WOULDN'T HAVE THE ABILITY AND WHERE THEY ARE LOCATED AND THAT

25   KIND OF THING.

1          AND THE U.S. ATTORNEY AND OUR OFFICE HAD AN AGREEMENT ON

2     THESE AS BEING APPROPRIATE.  AND THIS HAS BEEN GOING ON NOW,

3     WHILE WE REQUESTED, THIS IS THE ACTUAL TRADE SECRET ALLEGED IN

4     COUNT 1 AS BEING THE ITEM THAT HE INTENDED CONSPIRED TO TAKE

5     WHICH HAS NEVER BEEN PRODUCED TO GOVERNMENT.

6          WE HAVE NEVER SEEN IT, WE DON'T KNOW WHERE IT IS.  THEY

7     DON'T HAVE ANYTHING FROM MR. ZHANG IN TERMS OF SEIZURE THAT HE

8     HAS ANY OF THIS INFORMATION.

9          THEY SENT A CEASE AND DESIST LETTER TO HIM BEFORE THE

10    CRIMINAL CASE.  HE DESTROYS EVERYTHING ON HIS COMPUTER, THEN

11    THEY CLAIM HE CONSPIRED TO TAKE A PARTICULAR LIBRARY OF

12    MATERIAL.  AND THAT THE DOWNLOAD WAS THAT MATERIAL.  AND WE ARE

13    SAYING WE WANT TO SEE THAT MATERIAL.  THAT'S FROM DAY ONE, IT'S

14    COUNT 1, IT'S THE TRADE SECRET ALLEGED IN COUNT 1.

15          I'M SORRY, BUT THE PROTECTIVE ORDER THING THE GOVERNMENT

16    AND I HAVE WORKED IT OUT AND SOMEHOW THEY DON'T WANT IT TO GO

17    OUT OF THEIR PREMISES TO AN INDEPENDENT EXPERT AND THEY WANT

18    SOME OTHER RESTRICTIONS ON IT.  AND THIS HAS BEEN, IF I COULD

19    ASK THE PROSECUTOR, WE HAD AGREEMENT ON THIS AT LEAST 4 TO

20    5 WEEKS AGO.

21          MS. KNIGHT:  I BELIEVE SO.

22          MS. STEWART:  WHEN WE RECEIVED A COPY OF THE

23    PROTECTIVE ORDER AS PROPOSED BY BOTH THE PROSECUTION AND

24    DEFENSE, WE IMMEDIATELY PROPOSED OUR OWN ADDITIONAL LANGUAGE

25    FOR PROTECTIONS OF THE SOURCE CODE SPECIFICALLY.  WE'VE ALSO

1    OFFERED, YOUR HONOR, TO ACCOMMODATE AN EXPERT WITNESS WHO MAY

2    BE LOOKING AT IN INFORMATION.

3         SO FOR EXAMPLE, IF THE EXPERT WERE IN TEXAS WE WOULD NOT

4    ASK THEM CLEARLY TO COME HERE TO CALIFORNIA, WE WOULD OFFER TO

5    MAKE THE CODE AVAILABLE IN TEXAS IN, FOR EXAMPLE K&L GATES

6    OFFICE SO THAT IF HE WERE IN AUSTIN, ALL HE WOULD HAVE TO DO IS

7    GO TO THE K&L GATES OFFICE.

8         WE ARE NOT ASKING FOR ANYTHING UNREASONABLE IN THIS CASE,

9    ONLY TO PROTECT THE CODE IN A WAY THAT IT'S NOT GOING RANDOMLY

10   TO AN EXPERT THAT WE DON'T KNOW WHERE THEY ARE AT, WHO THEY ARE

11   OR WHAT KIND OF SECURITY PRECAUTIONS THEY CAN TAKE WITHIN THEIR

12   OFFICE, YOUR HONOR.

13        THAT'S WHAT WE ARE LOOKING FOR, JUST TO PROTECT THE CODE

14             THE COURT:  DID YOU EVER CONFIRM IF THIS IS EVER IN A

15   SELLING PRODUCT LAST TIME.

16             MS. STEWART:  YES, WE HAVE, YOUR HONOR.

17             THE COURT:  IS IT SOLD IN INDIA?

18             MS. STEWART:  IT'S SOLD IN INDIA, IT'S SOLD IN CHINA.

19             THE COURT:  SO WHAT'S THE OBJECTION TO HAVING EXPERT

20   GO TO THE K&L GATES OFFICE IN AUSTIN IF THAT'S WHERE THE EXPERT

21   IS LOCATED?

22             MR. NOLAN:  YOUR HONOR, FIRST OF ALL, WE CAN'T EVEN

23   AFFORD AN EXPERT.

24        SO I SUPPOSE BECAUSE I THINK EVENTUALLY IN THE TRIAL THEY

25   ARE GOING TO HAVE TO SAY, SHOW ME THE EXHIBIT THAT'S THE TRADE

1    SECRET.  YOU KNOW.  THEY CAN'T JUST SAY IT'S IN OUR OFFICE

2    SOMEWHERE, NO ONE GETS TO LOOK AT IT AND SEND IT AWAY.

3            THE COURT:  THIS IS GOING TO BE AN OPEN TRIAL.

4            MR. NOLAN:  YEAH.

5            THE COURT:  THE SOURCE CODE IS GOING TO BE AN EXHIBIT

6    IN OPEN TRIAL.  I'M NOT GOING TO SEAL THE TRIAL AT THIS POINT.

7            YOU UNDERSTAND THAT, RIGHT?  IF YOU'VE JIMMED UP THIS

8    SYSTEM TO INVOLVE A PUBLIC INSTITUTION, WE ARE A PUBLIC

9    INSTITUTION AND A TRIAL ON ANYTHING DISPOSITIVE IS OPEN.  THIS

10   WILL BE SOMETHING THAT THE PUBLIC IS ENTITLED TO KNOW, IT'S A

11   RESOLUTION ON THE MERITS.

12       SO YOU ARE NOT GOING TO GET ANY PROTECTION.  I'M NOT

13   GOING TO SEAL THE COURTROOM DURING THE TRIAL.  DO YOU

14   UNDERSTAND THAT?

15       DO YOU EXPECT ME TO SEAL THE TRIAL WHEN WE TALK ABOUT

16   SOURCE CODE?  THIS IS A TRADE SECRET TRIAL, SO THOSE TRADE

17   SECRETS ARE GOING TO BE MADE AVAILABLE TO OUR JURORS AND IT'S

18   GOING TO BE OPEN TO THE PUBLIC; DO YOU UNDERSTAND THAT?

19       I MEAN, THIS IS WHAT YOU HAVE REQUESTED.  YOU HAVE

20   REQUESTED A CRIMINAL PROSECUTION WITHIN A PUBLIC INSTITUTION SO

21   THIS IS A PUBLIC TRIAL.

22       DO YOU UNDERSTAND THAT?  I'M NOT GOING TO SEAL THIS

23   COURTROOM.

24            MS. STEWART:  I HEAR WHAT YOU ARE SAYING RIGHT NOW.

25        IT'S THE FIRST I'VE HEARD THAT THE CODE ITSELF WOULD NOT BE

1    PROTECTED EVEN WITHIN THE COURT ITSELF.

2              THE COURT:  I MEAN YOU -- AS AN EXHIBIT, IT DOESN'T

3    HAVE TO BE A PUBLICLY FILED EXHIBIT, BUT ANY TESTIMONY, DIRECT,

4    CROSS ABOUT THE CODE, IS GOING TO BE IN OPEN COURT.

5        I'M NOT SAYING YOU HAVE TO SHOW UP, PUT THE -- YOU DON'T

6    HAVE TO PUT THE SOURCE CODE ON THE PUBLIC MONITORS, BUT ANY

7    TESTIMONY ABOUT THE CODE IS GOING TO BE OPEN TO THE PUBLIC.

8              MS. STEWART:  OKAY.  I UNDERSTAND THAT.

9        BUT WHAT WE'RE -- WE'RE NOT TALKING ABOUT A QUESTION THAT

10   SAYS, IS LINE NUMBER WHICH STATES X, TO BE PRIVATE.  IF THE

11   CODE ITSELF IS PROTECTED, FILED UNDER SEAL FOR EXAMPLE, THE

12   TESTIMONY ITSELF MAY BE OKAY TO BE, TO BE HEARD PUBLICLY.

13       BUT IT'S THE CODE, CORRECT.  IT'S ACTUALLY THE WRITTEN

14   LINES AND HOW THEY ARE CONFIGURED THAT BECOMES IMPORTANT TO THE

15   COMPANY BECAUSE THAT'S WHAT WE'VE DEVELOPED.

16             THE COURT:  HEY, IN APPLE V. SAMSUNG THEY HAD A LOT

17   OF CODE IN THAT CASE, IT WAS IN AN OPEN COURTROOM.

18       SO YOU ARE TELLING ME OH, MAYBE IT'S OKAY.  I'M TELLING

19   YOU I AM NOT GOING TO SEAL THE COURTROOM.  IF WE ARE IN THE

20   MIDDLE OF TRIAL AND YOU'RE HAVING TO ASK WHAT IS THIS

21   SIGNIFICANCE, OF LINE 12, OF FILE NUMBER BLAH, BLAH THAT'S ALL

22   GOING TO BE OPEN TO THE PUBLIC.

23             MS. STEWART:  UNDERSTOOD.

24             MR. NOLAN:  YOUR HONOR, IN ANSWER TO YOUR QUESTION, I

25   DO NOT HAVE THE RIGHT TO INSIST THAT THE U.S. ATTORNEY'S OFFICE

1    ALLOW ME TO BE PRESENT TO WATCH THEIR FBI EXAMINE THE ITEMS IN

2    COUNT 1 THAT WE ARE TALKING ABOUT.

3        I DON'T BELIEVE THAT THE CORPORATION, THE ALLEGED VICTIM

4    HAS THE RIGHT TO THE WORK PRODUCT OF MY EXPERT WATCHING WHAT

5    THEY DO, BEING ALL INVOLVED, HAVING TO DO IT ON THEIR PROPERTY,

6    HAVING -- IN OTHER WORDS, I WANT A COPY.  THAT COPY IS

7    PROTECTED BY A PROTECTIVE ORDER THAT'S ADEQUATE TO THE

8    GOVERNMENT, ADEQUATE TO US.

9        THE GOVERNMENT IS THE ONE WHO IS MAKING IT AVAILABLE TO

10   ME UNDER THE PROTECTIVE ORDER BECAUSE PRESUMABLY THE GOVERNMENT

11   HAS TO GET IT FROM THE VICTIM BECAUSE THEY'RE THE ONE

12   PROSECUTING THE CASE AND IT IS THE ALLEGED SECRET.

13       AND I DON'T THINK THEY CAN BRING THEIR CASE AND SAY, BUT

14   WE DON'T HAVE IT, WE DON'T HAVE CONTROL OVER IT, SOMEBODY ELSE

15   HAS IT, THEY WON'T GIVE IT TO US.  UNLESS WE AGREE TO ALLOW

16   THEM YOUR WORK PRODUCT AND TO WATCH WHAT YOU DO AND TO KNOW WHO

17   IS DOING IT.

18       WE'VE ALREADY ENTERED INTO THE AGREEMENT THAT THE

19   EXPERT'S KNOWLEDGE, OF WHO THE EXPERT IS, IS WITH THE COURT.

20   IT'S UNDER SEAL.

21       IF THERE SHOULD BE ANY PROBLEM WITH THIS AND THEY THINK

22   THERE'S SOME REASON THERE'S A LEAK BY ONE OF THE EXPERTS, THEY

23   APPLY TO THE COURT AND FIND OUT WHO THE EXPERT IS AND THEY DO

24   IT THAT WAY.

25       BUT THOSE ARE THE PROTECTIONS THAT WE'RE ENTITLED TO THAT

1    YOU MAY NOT BE ENTITLED TO IN A CIVIL LITIGATION.  SO YES,

2    THERE'S A PROBLEM IN DOING IT IN THE OFFICE OF A LAW FIRM IN

3    TERMS OF OUR PRIVILEGES.

4         YOU KNOW, WE NORMALLY DON'T HAVE THIS PROBLEM BECAUSE THE

5    GOVERNMENT GETS THE INFORMATION FROM THE VICTIM.  THE VICTIM

6    HAS TO UNDERSTAND WHEN THEY GO TO THE GOVERNMENT THAT THEY HAVE

7    TO GIVE THEM INFORMATION, THEY HAVE TO ANSWER QUESTIONS, THEY

8    HAVE TO PRODUCE DOCUMENTS TO THE GOVERNMENT TO CONVINCE THE

9    GOVERNMENT THAT THEY SHOULD BRING THEIR RESOURCES.

10        WHAT I DIDN'T REALIZE UNTIL TODAY THAT WAS AT NO TIME

11   APPARENTLY DID THE GOVERNMENT EVEN LOOK AT THE SECRET, EXAMINE

12   THE SECRET IN COUNT 1, GET A COPY OF THE SECRET, OR MAKE SURE

13   THAT WHATEVER THE SECRET WAS AT THE TIME MY CLIENT ALLEGEDLY

14   CONSPIRED TO OBTAIN IT IS STILL IN EXISTENCE IN THE SAME WAY IT

15   WAS THEN NOW.

16        SO ONE OF THE THINGS YOU HAVE TO DO IS YOU HAVE TO LOOK

17   AT AND SEE WHAT'S THE DATE OF THIS, WHAT CHANGES HAVE BEEN MADE

18   SINCE THIS -- BECAUSE IF THERE'S CHANGES, THEN MAYBE WE ARE NOT

19   TALKING ABOUT A CRIME.

20        BECAUSE IT HAS TO BE -- IT HAS TO NOT ONLY HAVE OF HAD-IT

21   DOESN'T HAVE TO BE A TRADE SECRET AT THE TIME BUT IT HAS TO BE

22   SUCH THAT THE CLIENT BELIEVED IT WAS A TRADE SECRET AND WAS

23   CONSPIRING TO CONTAIN THE TRADE SECRET.  SO THERE HAS TO BE

24   SOME INDICATION THAT THERE'S REASON TO BELIEVE THAT THERE WAS A

25   TRADE SECRET AT THE TIME.

1        AND WE ALSO HAVE TO KEEP IN MIND THAT MY CLIENT WAS THE

2   ONE IN CHARGE OF DEVELOPING THIS PRODUCT.  HE WAS IN CHARGE OF

3   CREATING THIS PRODUCT.

4        AND SO, I BELIEVE ALL I HAVE TO DO IS AGREE WITH THE

5   GOVERNMENT ON A REASONABLE PROTECTIVE ORDER, BUT I AM CONCERNED

6   ABOUT -- AND I AGREE WITH THE COURT THAT, WHILE I WANTED TO

7   MOVE THIS ALONG, I AGREE WITH THE COURT THAT MAYBE BECAUSE OF

8   THE PROBLEMS WE ARE GOING HAVING AND BECAUSE OF THE SETTLEMENT

9   CONFERENCE, WE SHOULD VACATE IT BECAUSE IT IS A GREAT DEAL

10  OF -- WE DON'T WANT TO SPEND THE TIME TO DO THESE THINGS AND

11  MAYBE THE CASE SHOULD RESOLVE.  AND WE ARE NOT ADVERSE TO

12  RESOLVING THE CASE.

13        MS. KNIGHT:  YOUR HONOR, REGARDING COUNT 1, THE

14  GOVERNMENT REVIEWED THE LIBRARIES WE INTERVIEWED WITNESSES, WE

15  HAD GRAND JURY WITNESSES.

16        THE GOVERNMENT IS SECURE REGARDING THE TRADE SECRET

17  PROTECTION AFFORDED TO BOTH OF THOSE SOURCE CODE PROGRAMS, SIRF

18  BLOCK AND SIRF STUDIO.

19        ALTHOUGH WE DID NOT GET THE ENTIRE LIBRARY, WE

20  INVESTIGATED THOSE, INVESTIGATED THE SOURCE CODE, THE RESEARCH

21  AND DEVELOPMENT OF IT TO ASSURE OURSELVES AS AN INDEPENDENT

22  REVIEW THAT IT IS A TRADE SECRET.

23        MR. NOLAN:  IF THEY DID EXAMINE THE LIBRARY, UNDER WHAT

24  CIRCUMSTANCES DID THEY DO SO AND HOW DO WE KNOW THAT THE

25  LIBRARY THEY EXAMINED STILL EXISTED?  DID THEY GO TO SIRF AND

1        LOOK AT IT?

2            I DIDN'T SEE ANY -- I DON'T THINK THERE ARE ANY REPORTS

3        OF THIS EXAMINATION ANYWHERE, ANY RECORD OF THIS EXAMINATION

4        THAT WE HAVE TO SHOW THAT ON SUCH AND SUCH A DATE --

5            THE COURT:  WAS A 302 EVER MADE OF THIS?

6            MS. KNIGHT:  WE DIDN'T LOOK AT THE LIBRARY ITSELF, WE

7        HAD WITNESSES TESTIFY REGARDING THE RESEARCH AND DEVELOPMENT OF

8        THAT LIBRARY.

9            WE HAVE NOT -- A CASE AGENT FROM THE UNITED STATES SECRET

10       SERVICE HAS NOT GONE AND REVIEWED LINE-BY-LINE BECAUSE THERE

11       ARE MILLIONS OF LINES OF CODE FOR BOTH OF THOSE PROGRAMS, NO.

12       WE HAVEN'T EXAMINED THE CODE ITSELF, WE HAVE INTERVIEWED PEOPLE

13       WHO DEVELOPED THE CODE.

14           THE COURT:  WHAT'S THE STATUS OF THE CIVIL CASE?  IS

15       THIS CRIMINAL CASE BEING LEVERAGE FOR THE --

16           MR. NOLAN:  IT WAS NEVER FILED.

17           THEY WERE IN THE PROCESS, THE CIVIL LITIGANTS WERE IN THE

18       PROCESS OF SETTLEMENT IN THE MIDDLE OF THE CRIMINAL

19       INVESTIGATION.  MY CLIENT GAVE A DEPOSITION, THEY TURNED OVER

20       MATERIAL, THEY COOPERATED, THEY DRAFTED THE AGREEMENTS.

21           AND THEN THE INDICTMENT CAME IN, OR THE SEARCH.  I'M NOT

22       SURE WHETHER THE SEARCH STOPPED THE CIVIL CASE OR NOT.

23           THE COURT:  I'M SURE YOUR CLIENT WOULD HAVE DONE

24       DEPOSITION IF HE HAD KNOWN IT WAS GOING CRIMINAL.

25           MR. NOLAN:  NO, IF THE CIVIL LAWYERS HAD CALLED MY

```
 1       OFFICE I DON'T THINK I WOULD HAVE ADVISED TO GO INTO A

 2       DEPOSITION WHEN THERE'S NO CIVIL CASE PENDING WHEN THERE'S A

 3       CRIMINAL CHARGE WHEN WE COULD HAVE GOTTEN A STAY.

 4            AND HE WENT AHEAD AND VOLUNTARILY GAVE A DEPOSITION.

 5       WE'VE TRACED -- UNFORTUNATELY, WE'VE TRACED THE INVOLVEMENT OF

 6       THE GOVERNMENT AND SIRF TO A TIME BEFORE THE DEPOSITION.

 7            SO CLEARLY THEY WERE IN COMMUNICATION.  WE'VE ISSUED

 8       SUBPOENAS AND BOTH SIDES HAVE SAID YOU ARE NOT ENTITLED TO

 9       THEM.  THE CIVIL SIDE SAYS IT'S WORK PRODUCT, THE CRIMINAL SIDE

10       SAYS IT'S NOT BRADY, IT'S NOT JENCKS, YOU ARE NOT ENTITLED TO

11       IT.

12            NOW I KNOW THAT MATTER IS BEING HEARD SEPTEMBER 13TH,

13       THAT ISSUE IS GOING TO BE HEARD.  BUT I MEAN IT'S LIKE, WELL

14       WAIT A SECOND, YOU KNOW, HOW CAN I PROVE THAT THE TWO OF YOU

15       ARE REALLY ONE AND THEREFORE I'M ENTITLED TO THE CIVIL

16       LITIGANTS COMMUNICATIONS WITH THE GOVERNMENT BECAUSE I'M GOING

17       TO CLAIM THE CIVIL LITIGANTS ARE AGENTS OF THE GOVERNMENT WHEN

18       THEY THEN CLAIM PRIVILEGE AND SAY, YOU CAN'T HAVE IT AND THE

19       GOVERNMENT SAYS YOU CAN'T HAVE IT.

20            SO WE ARE GOING TO HAVE AN ISSUE THERE ABOUT -- AT THIS

21       POINT WE HAVE NO COMMUNICATIONS BETWEEN THE TWO OF THEM TO SEE

22       WHETHER OR NOT THE GOVERNMENT SAID, WELL, WHY DON'T YOU SEE IF

23       YOU CAN TAKE HIS DEPOSITION OR WHY DON'T YOU HOLD OFF UNTIL

24       FILING THE CIVIL SUIT WE DON'T WANT THEM TO KNOW THERE'S A

25       CRIMINAL INVESTIGATION GOING ON.
```

```
 1          NOW I DON'T KNOW WHAT THE RESULT OF ALL THAT IS IN TERMS

 2     OF WHERE IT GOES, BUT --

 3          MS. KNIGHT:  YOUR HONOR, THE GOVERNMENT NEVER

 4     INSTRUCTED K&L GATES OR SIRF TO TAKE MR. ZHANG'S DEPOSITION.

 5     THEY PRESENTED THE CASE ON OUR OFFICE, THE SECRET SERVICE

 6     BECAME INVOLVED.  WE NEVER INSTRUCTED THEM TO DO ANYTHING.

 7          ANY COMMUNICATIONS ARE REFLECTED OF REPORT THAT IS WE WILL

 8     RESOLVE THIS ON THE 14TH BEFORE JUDGE LLOYD.  BUT I WANT TO BE

 9     CLEAR WE NEVER INSTRUCTED SIRF, CSR, OR K&L GATES TO DO

10     ANYTHING WITH RESPECT --

11          THE COURT:  I HAVE TO SAY, A LOT ABOUT THIS CASE

12     DOESN'T SMELL RIGHT IT ME.

13          ALL RIGHT.  I'M NOT GOING TO MOVE THE TRIAL DATE AT THIS

14     TIME.  THE TRIAL DATE IS GOING TO REMAIN AS SET.  BUT EITHER

15     SUFFER AND GOING TO PRODUCE THE LIBRARY OR I WILL VACATE THE

16     TRIAL DATE.  IF YOU REQUIRE A SUBPOENA AT THIS LATE STAGE I

17     THINK THAT'S IN BAD FAITH.

18          THE GOVERNMENT AGREED TO A PROTECTIVE ORDER ALREADY WITH

19     THE DEFENSE AND NOW YOU ARE SAYING TWO YEARS AFTER THE

20     INDICTMENTS HAVE ALREADY BEEN FILED.

21          MR. SALCEDA:  YOUR HONOR, IF I MAY.

22          THE MODIFICATION TO THE PROTECTIVE ORDER WAS, I THINK YOU

23     SAID IT WAS FOUR WEEKS AGO, FIVE WEEKS AGO.  AGAIN, WE TRIED TO

24     PARTICIPATE IN MODIFYING THAT TO ACCOUNT FOR THE SOURCE CODE.

25     IF IT'S JUST A MATTER OF PRODUCING THE LIBRARY, I BELIEVE WE
```

```
 1    CAN DO THAT.  WE JUST ASK THAT THERE BE MORE PROTECTIONS

 2    PROVIDED FOR THE SOURCE CODE THAN WHAT WE ARE IN THE PROTECTIVE

 3    ORDER THAT THE GOVERNMENT AND MR. NOLAN'S OFFICE AGREED TO.

 4             THE COURT:  TELL ME SPECIFICALLY WHAT IT IS THAT YOU

 5    WANT.  I'M GOING TO RULE ON THIS RIGHT NOW WHETHER I WOULD

 6    AMEND THE PROTECTIVE ORDER.  GO AHEAD, WHAT IS IT.

 7             MR. SALCEDA:  WE WOULD LIKE IT TO BE REVIEWED IN

 8    EITHER A K&L GATES OFFICE OR A CSR FACILITY NEAR.

 9             THE COURT:  CSR, NO.  NO, THIS IS A CRIMINAL CASE.

10             MR. SALCEDA:  UNDERSTOOD.  IT WAS JUST --

11             THE COURT:  HE HAS TO DEFEND HIMSELF FROM CRIMINAL

12    CHARGES THAT HE COULD FACE UP TO FIVE YEARS OF PRISON AND YOU

13    ARE SAYING YOU WANT THE ALLEGED VICTIM TO WATCH HIS EXPERT

14    REVIEWING YOUR CODE, THE ANSWER IS NO, THE ANSWER IS NO.

15             MR. SALCEDA:  ABSOLUTELY.

16             THE COURT:  OKAY.  NOW, WHAT ELSE.

17             MR. SALCEDA:  WITH RESPECT TO REVIEW IN K&L GATES

18    OFFICE WE WOULD NOT MONITOR THE REVIEW AND THE CODE HE WOULD BE

19    IN A CLOSED ENVIRONMENT.  WE WOULDN'T HAVE CONTACT WITH HIM.

20    IT WOULD BE ON A SUBJECT COMPUTER THAT WOULD HAVE THE CODE

21    LOADED TO IT.  AND WE --

22             THE COURT:  SO THEN YOU COULD DO A MONITORING OF

23    WHICH FILES HE ACCESSED.

24             MR. SALCEDA:  THE LIBRARY WOULD BE PROVIDED ON YOU

25    KNOW THE SAFE COMPUTER ESSENTIALLY AND THE DOOR WOULD BE CLOSED
```

1    BEHIND HIM.  WE WOULDN'T PEEK IN.

2              THE COURT:  NO.

3         GO AHEAD.  WHAT OTHER AMENDMENTS TO THE PROTECTIVE ORDER

4    ARE YOU ASKING FOR?

5              MS. STEWART:  I THINK THAT'S IT.  IT'S TO HAVE IT IN

6    A SECURE LOCATION.  IF THEY WANT PRINTOUTS OF IT AT THE TIME

7    THAT THEY GO THROUGH LINE BY LINE AND SAY, I NEED TO SEE THIS

8    IN A HARD COPY, THEY GET A PRINT OUT OF IT.  THEY HIT THE

9    CONTROL P BUTTON, FOR EXAMPLE.  BUT NO ONE IS IN THERE LOOKING

10   OVER THEIR SHOULDER, IT'S SIMPLY IN AN ENVIRONMENT WHERE

11   THERE'S NO --

12             THE COURT:  I ALREADY RULED.  OKAY.  NO.  ALL RIGHT.

13        THE AGREEMENT WAS REACHED AS TO MODIFICATIONS TO THE

14   PROTECTIVE ORDER BETWEEN THE GOVERNMENT AND THE DEFENSE.

15   THAT'S WHAT'S GOING TO BE COMPLIED WITH.

16        I'M GOING TO QUASH ANY SUBPOENA THAT YOU REQUIRE BE

17   ISSUED IN ORDER FOR THE DEFENSE TO GET THE LIBRARY.

18        WHAT ELSE DO WE NEED TO DO?  I WANT THIS CASE TO BE READY

19   TO GO TO TRIAL IN JANUARY.  YOU ARE NOT HELPING BY SETTING UP

20   ALL THOSE DISCOVERY ROADBLOCKS WHICH IS WHAT WE TALK ABOUT

21   EVERY TIME THERE'S A STATUS CONFERENCE IN THIS CASE.

22             MR. SALCEDA:  I'M CONFUSED, YOUR HONOR.

23        YOU ASKED WHAT MODIFICATION TO THE PROTECTIVE ORDER, DID

24   YOU REJECT THE REQUEST THAT IT BE REVIEWED IN K&L GATES OFFICE?

25             THE COURT:  YES, I DID AND I REJECTED IT BE VIEWED AT

1    THE ALLEGED VICTIM'S OFFICE.

2         ALL RIGHT.  AND I SAID DO NOT REQUIRE A SUBPOENA TO BE

3    ISSUED.  OKAY.  THIS CASE IS SET TO GO TO TRIAL AND YOU ARE

4    SETTING UP MORE AND MORE ROADBLOCKS THAT ARE CAUSING MORE

5    DELAYS.

6         EITHER YOU WANTED THIS CASE TO BE CRIMINALLY PROSECUTED

7    IN WHICH YOU ARE GOING TO FULLY COOPERATE OR YOU ARE NOT.

8         SO WHAT ELSE?

9         MR. SALCEDA:  I DON'T THINK THERE'S ANYTHING ELSE.

10         THE COURT:  OKAY.  SO YOU ARE GOING TO GO TO

11    JUDGE WHYTE FOR A SETTLEMENT CONFERENCE.

12         LET'S SET ANOTHER STATUS CONFERENCE.

13         MR. NOLAN:  YOUR HONOR, WE DID RAISE ONE OTHER THING

14    WHICH DOESN'T HAVE TO BE ADDRESSED TODAY BUT WANTED TO ALERT

15    THE COURT TO THE ISSUE OF EXPERT WITNESSES AND WHETHER THEY

16    HAVE TO DESIGNATE A WITNESS AS AN EXPERT.  IT MAY BE THAT YOU

17    CAN WORK ON THIS LATER, BUT DID YOU HAVE A CHANCE -- DID THE

18    COURT HAVE A CHANCE TO REVIEW THAT PORTION OF THE STATUS

19    MEMORANDUM.

20         I'VE HAD TRIALS INVOLVING ALLEGED TRADE SECRETS.  THE

21    GOVERNMENT HAS A TENDENCY FROM MY EXPERIENCE NEVER TO CALL AN

22    INDEPENDENT EXPERT.  THEY CALL EMPLOYEES OF THE COMPANY TO

23    TESTIFY.  THEY NEVER QUALIFY THEM AS EXPERTS.  THEY DON'T USE,

24    THEY DON'T FOLLOW THE RULES OF 702, SO THERE'S NO REPORT.

25    THERE'S NO RECOGNITION OF WHAT THEY REVIEWED, ET CETERA.

1      THEN THEY ASK QUESTIONS AND WE PUT IT IN OUR MEMORANDUM,

2   THAT SAY, DO YOU BELIEVE THIS IS A TRADE SECRET, AND SOME

3   COURTS HAVE BASICALLY ALLOWED THEM TO DO IT ON THE BASIS THAT

4   IT'S AN OPINION OF -- I'M NOT SURE.

5           MS. KIEVAL:  AN OPINION BASED ON PERSONAL KNOWLEDGE

6   AND HAVE REJECTED THE ARGUMENT THAT SEEMS PRETTY STRAIGHT

7   FORWARD THAT IT REQUIRES SPECIALIZED KNOWLEDGE AND THEREFORE

8   FALLS UNDER THE REQUIREMENT THAT IT BE EXPERT TESTIMONY IF IT'S

9   GOING TO BE IN THE FORM OF AN OPINION.

10          MR. NOLAN:  AND I JUST THOUGHT I WOULD ALERT THE

11  COURT TO THE PROBLEM.  IT IS, IT COULD BE IN THE FORM OF AN IN

12  LIMINE MOTION BUT IF IT WERE GRANTED AS AN IN LIMINE MOTION

13  THERE WOULD BE THE PROBLEM OF NOT DESIGNATING EXPERTS AND

14  DELAYING THE TRIAL.

15          THE COURT:  I'M PROBABLY GOING TO DENY THAT BECAUSE I

16  DO THINK A COMPANY IS QUALIFIED TO SAY WHAT OF THEIR OWN SOURCE

17  CODE THEY CONSIDER TO BE A TRADE SECRET AND WHETHER THEY TAKE

18  ALL THE APPROPRIATE PRECAUTIONS TO KEEP THE SECRET WHETHER THEY

19  DERIVE ECONOMIC VALUE AND LAY OUT ALL THE ELEMENTS OF WHETHER

20  IT'S A TRADE SECRET.

21          MR. NOLAN:  WITHOUT COMPLYING WITH THE CODE AS

22  BEING -- IN OTHER WORDS.

23      WE ARE NOT SAYING THEY CAN'T TESTIFY WE ARE SAYING THOSE

24  PEOPLE HAVE TO BE TREATED AS EXPERTS UNDER THE CODE.  THEY HAVE

25  TO BE QUALIFIED AND THEY HAVE TO FOLLOW THE DISCOVERY

1    REQUIREMENTS.  WE'RE NOT SAYING THEY WON'T QUALIFY.  I SUSPECT

2    THEY WILL.

3         BUT IT DOESN'T SEEM TO ME THAT THEY SHOULD BE RELIEVED OF

4    THE REQUIREMENTS OF WHAT 702 --

5            THE COURT:  SO WHAT ELSE WOULD YOU SAY THAT THEY

6    WOULD NEED TO DO IF THEY ARE GOING TO BE QUALIFIED AS EXPERTS

7    VERSUS JUST TESTIFYING AS.

8            MR. NOLAN:  WELL, I DON'T HAVE 702 IN FRONT OF ME

9    BUT -- WELL, I THINK NUMBER ONE THEY HAVE TO PREPARE A REPORT.

10   NUMBER TWO, THEY HAVE TO SAY WHAT THEY RELIED UPON.  I DON'T

11   HAVE 702 IN FRONT OF ME.

12           THE COURT:  IS THERE NO 302?

13        I WOULD ASSUME THAT WHEN THE GOVERNMENT INVESTIGATED THIS

14   CASE AND DECIDED TO SEEK AN INDICTMENT, THAT THEY HAD THOSE

15   CONVERSATIONS WITH THE EMPLOYEES AS TO WHY THIS WAS A TRADE

16   SECRET, NO, IS THERE NOT ANY.

17           MS. KNIGHT:  THERE ARE REPORTS BY THE SECRET SERVICE

18   THAT IF WE -- THERE ARE SEVERAL REPORTS, BUT IF WE DECIDE TO

19   QUALIFY CERTAIN EMPLOYEES AS EXPERTS WE WILL FULFILL THE

20   REQUIREMENTS OF 702.

21           MR. NOLAN:  WELL, THAT CERTAINLY HELPS.

22        IN OTHER WORDS IF I UNDERSTAND THEY ARE GOING TO NOTICE

23   AND FULFILL THE REQUIREMENTS OF 702 THEN I DON'T HAVE A

24   COMPLAINT.

25           I'M JUST TELLING YOU IN THE THREE CASES I'VE TRIED IN THE

1    PAST THAT HASN'T OCCURRED SO I WANTED TO RAISE IT EARLY ON.

2         NOW I CAN EXPECT I WILL GET THE REQUIREMENTS OF 702 I

3    DON'T THINK I NEED ANYTHING MORE THAN THAT.

4         BECAUSE THEY SHOULD BE TREATED AS EXPERT WITNESSES THEY

5    ARE OFFERING AN EXPERT OPINION, I DON'T THINK THEY ARE RELIEVED

6    OF THAT.  THAT SOLVES THAT PROBLEM.  IF THEY WANT TO RELY UPON

7    THOSE EXPERTS, THAT'S THEIR PREROGATIVE.

8              THE COURT:  ALL RIGHT.  WHAT ABOUT YOUR LAST ISSUE?

9              MR. NOLAN:  OH, THE FACT THAT THERE'S A SUPERSEDING

10   INDICTMENT.  I JUST WANT TO ALERT THE COURT.

11             THE COURT:  WHEN IS THAT GOING TO BE FILED, A

12   SUPERSEDING INDICTMENT.

13             MS. KNIGHT:  I BELIEVE TOWARDS THE END.  THE CASE

14   AGENT IS OUT OF PROTECTION.  I BELIEVE TOWARDS THE MIDDLE OF

15   SEPTEMBER.

16             THE COURT:  WHY WAS THIS INVESTIGATED BY SECRET

17   SERVICE INSTEAD OF FBI?  I'M JUST CURIOUS.

18             MS. KNIGHT:  I BELIEVE MY SUPERVISOR CONTACTED THEM,

19   THE VICTIM COMPANY CAME IN TALKED TO MY SUPERVISOR AND MY

20   SUPERVISOR CONTACTED THE SECRET SERVICE; THAT'S HOW THEY BECAME

21   INVOLVED.

22             MR. NOLAN:  I JUST WANTED TO ALERT THE COURT THAT

23   ONCE THAT HAPPENS THEN WE WILL HAVE TO FILE, WE ARE INTENDING

24   TO FILE A MOTION BILL OF PARTICULARS AND A MOTION TO DISMISS.

25        AND I WANTED TO ALERT THE COURT TO THAT.

1          THE COURT:  THAT'S FINE.

2          SO THE AMENDMENT IS GOING TO CHANGE THE CHARGES OR WHAT?

3     WHY ARE WE GETTING AN AMENDMENT SO LATE?

4          THIS CASE IS TWO YEARS OLD.  I SET IT FOR TRIAL, WHAT, A

5     COUPLE MONTHS AGO?  WHY ARE WE GETTING THIS?  WHY HASN'T IT

6     HAPPENED YET?

7          MS. KNIGHT:  WE LEARNED THAT IN COUNT 21 OF THE

8     SOURCE CODE FILES WAS ERRONEOUSLY LISTED AS A SIRF STUDIO FILE

9     AND IT'S FROM A DIFFERENT LIBRARY SIRF LOCK.  SO THAT'S WHAT

10    THE CHANGE IS GOING TO BE.

11         AND WE WILL PROBABLY TAKE A CLOSER LOOK AT THE COUNT 1,

12    THE CONSPIRACY COUNT, AND WE RECENTLY LEARNED REGARDING THE

13    ERROR WITH RESPECT TO COUNT 2.

14         THE COURT:  ALL RIGHT.

15    WELL, I'M GOING TO SET A 60-DAY DEADLINE FOR YOUR

16    SETTLEMENT CONFERENCE FOR JUDGE WHYTE BUT PLEASE TRY TO SEE HIM

17    SOONER.  I THINK HE WILL BE ABLE TO ACCOMMODATE HIM SOONER BUT

18    I DON'T WANT TO COMPRESS HIS TIME PERIOD TOO MUCH.  SO LET'S

19    SET A STATUS CONFERENCE.

20         SO WHEN ARE YOU GOING TO DO THE, AMEND THE INDICTMENT.

21         MS. KNIGHT:  I HOPE BY THE END OF SEPTEMBER.

22    WELL, I MEAN, THE CASE AGENT IS OUT --

23         THE COURT:  WHAT IS THE DELAY HERE?

24         MS. KNIGHT:  I APOLOGIZE, YOUR HONOR.

25         THE COURT:  I PUSHED THIS TO SET A TRIAL DATE, OKAY,

1    IN JANUARY, AND NOW YOU ARE TALKING YOU CAN'T AMEND THE

2    COMPLAINT WHICH IS AN ERROR OF THE GOVERNMENT FOR ANOTHER MONTH

3    WHEN YOU KNOW EXACTLY WHAT IT IS THAT YOU NEED TO DO?

4            MS. KNIGHT:  I WILL TALK TO THE SECRET SERVICE ABOUT

5    PULLING THAT AGENT FROM THE PROTECTION DETAIL, YOUR HONOR, AND

6    GETTING HIM BACK HERE TO AMEND THE INDICTMENT.

7            THE COURT:  SO WHEN DO YOU ALL WANT TO COME BACK,

8    OCTOBER 10TH?

9            MS. KNIGHT:  THAT'S FINE WITH THE GOVERNMENT,

10   YOUR HONOR.

11           MR. NOLAN:  THAT'S FINE, YOUR HONOR.

12           THE COURT:  THAT WILL BE AT 9:00.  IS THERE A REQUEST

13   FOR A FINDING OF EXCLUDABLE TIME?

14           MR. NOLAN:  YES, YOUR HONOR.

15       PREPARATION, MOTION IS PENDING, DISCOVERY MOTIONS,

16   SETTLEMENT CONFERENCE PENDING, AND THE ANTICIPATION OF A

17   SUPERSEDING INDICTMENT.

18           THE COURT:  OKAY.  THE COURT GRANTS THE CONTINUANCE

19   ON THE MOTION OF DEFENSE COUNSEL.

20       THE COURT FINDS THE INTEREST OF JUSTICE SERVED IN GRANTING

21   THE CONTINUANCE OUT WEIGH THE BEST INTEREST OF THE PUBLIC AND

22   THE DEFENDANT IN A SPEEDY TRIAL.  A FAILURE TO GRANT THIS

23   CONTINUANCE WOULD DENY BOTH GOVERNMENT AND DEFENSE COUNSEL

24   REASONABLE TIME NECESSARY FOR EFFECTIVE PREPARATION TAKING INTO

25   ACCOUNT THE EXERCISE OF DUE DILIGENCE IN LIGHT OF THE PENDING

1    MOTIONS BEFORE JUDGE LLOYD, IN LIGHT OF THE NEED FOR A

2    SUPERSEDING INDICTMENT TO CORRECT ERRORS IN THE INDICTMENT.

3    AND THE MOTIONS THAT ARE ANTICIPATED TO BE FILED AFTER THIS, SO

4    THE TIME THROUGH AND INCLUDING AUGUST 29TH, 2012 AND

5    OCTOBER 10TH, 2012 IS DEEMED EXCLUDED.

6            MR. NOLAN:  THANK YOU, YOUR HONOR.

7            YOUR HONOR, WOULD THE COURT ALLOW ME TO FILE SUPPLEMENTAL

8    REQUEST FOR ANCILLARY SERVICES WITH THE UNDERSTANDING THAT THE

9    COURT IS NOT INCLINED TO GRANT THEM, AND WOULD THE COURT BE

10   OFFENDED BY MY DOING SO BUT REALLY TO MAKE THE RECORD AS CLEAR

11   AS TO THE AMOUNT OF MONEY NEEDED SO THAT THERE'S A RECORD OF

12   THAT.

13           AGAIN, I'M NOT CHALLENGING THE COURT'S ORDER I'M JUST

14   SAYING THAT EACH TIME I REQUEST, I BELIEVE IT'S A DIFFERENT SET

15   OF CIRCUMSTANCES DEPENDING UPON WHAT'S NECESSARY.

16           FOR EXAMPLE, IN THE MIDDLE OF THIS IF THIS WAS A

17   DEPOSITION NEEDED IN HUNGARY --

18           THE COURT:  YOU KNOW, IT'S NOT CLEAR TO ME.  IN YOUR

19   DECLARATION YOU SAY HE'S GOT ALL THESE SAVINGS BUT THAT'S NOT

20   REALLY CLEARED OUT.  I UNDERSTAND IT TO BE IN THE THREE HUNDRED

21   THOUSAND MARK; IS THAT CORRECT?  IF YOU ADD UP --

22           MS. KIEVAL:  SOME OF THE SAVINGS ARE I THINK FROZEN

23   BY THE GOVERNMENT RIGHT NOW.

24           MS. KNIGHT:  OH, I'M SORRY.  I THINK HE'S STILL

25   MAKING PAYMENTS ON THE ATTORNEY'S FEES, SO A CERTAIN AMOUNT OF

1    HIS SAVINGS IS ALREADY PREMARKED FOR THAT AND THE AMOUNT OF

2    MONEY THAT HE'S PAYING NOW IS SIGNIFICANTLY HIGHER THAN HIS

3    FAMILY'S INCOME.

4            MR. NOLAN:  HE'S AVAILABLE FOR EXAMINATION.

5            THE COURT:  SO HIS JOB AT VISA PAYS $7,000 A MONTH

6    AND HIS WIFE'S CONSULTING JOB PAYS $7,000 A MONTH; IS THAT

7    RIGHT?

8            MR. NOLAN:  NET.  YES.

9            AND HE PAYS US, I BELIEVE THE RECORD IS THERE.  HALF

10   OF HIS NET INCOME FOR BOTH FAMILIES, I MEAN FOR ALL PART OF THE

11   FAMILY.

12        AND BY THE WAY, I THINK THE COURT CAN GRANT THE MOTION

13   WITH AN UNDERSTANDING THAT IF THERE'S MONEY LEFT OVER FROM MY

14   FEES THAT THAT IS SECURED AND THEREFORE WILL COVER -- IN OTHER

15   WORDS, IF WE SETTLE THE CASE FOR EXAMPLE, THEN HE CONTINUES, HE

16   CAN BE RESPONSIBLE FOR THE AMOUNT PAID OUT FROM THE AGREEMENT

17   HE HAS WITH ME BECAUSE THAT'S ALREADY BEEN COMMITTED BY HIM.

18           THE COURT:  WELL, I MEAN, YOU CAN MAKE THE REQUEST.

19   I WILL LOOK AT EACH ONE ON ITS OWN MERITS.  BUT I MEAN, JUST

20   GENERALLY I DON'T FIND MR. ZHANG TO BE INDIGENT.

21           MR. NOLAN:  I JUST DIDN'T WANT TO OFFEND THE COURT BY

22   DOING SO.

23        AND I FEEL AT LEAST WHEN WE LOOKED AT THE RULES IT APPEARED

24   THAT THE REQUEST DEPENDS UPON SORT OF THE TOTALITY OF THE

25   CIRCUMSTANCES AND THE NEED FOR A PARTICULAR TYPE OF

1    EXPENDITURE.  WHILE TRADITIONALLY IN THIS DISTRICT YOU JUST GET

2    HIM DECLARED INDIGENT, PERIOD, THEN ALL THE ANCILLARY SERVICES

3    ARE AT THE DISCRETION OF THE COURT TO MAKE SURE YOU FOLLOW THE

4    RULES.

5              BUT IN LOOKING MORE CAREFULLY --

6              THE COURT:  YOU SEND 6,000 A MONTH TO CHINA?

7              THE DEFENDANT:  BOTH MY WIFE AND I.  OUR PARENTS ARE

8    OLD AND VERY SICK.  AND IN FACT MY MOTHER IS UNDERGOING SURGERY

9    RIGHT NOW.  I'M ACTUALLY SPENDING A LOT OF MONEY ON THE CASE

10   INSTEAD OF MY FAMILY RIGHT NOW.  SO THAT'S WHY I THINK THIS

11   REQUEST HERE --

12             THE COURT:  WHERE IN CHINA DO THEY LIVE?

13             THE DEFENDANT:  MY MOTHER LIVES IN SHAO MING,

14   SOUTHERN CHINA.  AND MY WIFE'S --

15             THE COURT:  WHAT'S THE POPULATION?  IS THAT A RURAL

16   AREA?

17             THE DEFENDANT:  IT'S AN URBAN AREA.

18       BUT IN CHINA, IF YOU GO TO SURGERY YOU HAVE A SERIOUS

19   DISEASE, YOU HAVE TO PAY OUT OF YOUR POCKET STILL.

20             THE DEFENDANT:  SHAO MING, MY MOM'S CITY.  MY WIFE'S

21   MOM'S CITY IS BEIJING.

22             THE COURT:  I DON'T KNOW, SENDING $72,000 IN CASH A

23   YEAR TO HIS PARENTS WHO LIVE IN CHINA, I DON'T KNOW, JUST

24   QUESTIONS IN MY MIND ABOUT SOME OF THE REPRESENTATIONS ABOUT

25   SOME OF THESE EXPENSES.

1          MR. NOLAN:  WHY DON'T WE TRY TO GET VERIFICATIONS IF

2   WE CAN.

3          THE COURT:  HE'S GOT $300,000 IN STOCKS, SAVINGS AND

4   A CHECKING COLLEGE FUND.  HE HAS $70,000 FOR A TEN-YEAR OLD

5   DAUGHTER IN A COLLEGE FUND.  HE'S NOT INDIGENT.

6      WHAT WAS THE NUMBER I WAS LOOKING AT IN THE COLLEGE FUND,

7   IT SAID 70,000 I THINK FOR A TEN-YEAR OLD.  THIS IS NOT, I

8   THINK, WHAT CJA IN FUNDS WERE INTENDING.

9          SO I MEAN, YOU CAN FILE IT TO MAKE A RECORD.  I WILL LOOK

10   AT EACH ONE ON ITS OWN MERITS, BUT I'M TELLING YOU GENERALLY, I

11   FIND THIS DEFENDANT IS ABLE TO PAY AND HE SHOULD.

12          MR. NOLAN:  THAT'S FINE, YOUR HONOR.

13      I APPRECIATE IT.  AGAIN, CIRCUMSTANCES, THE BALANCE MAY

14   SHIFT AT SOME POINT AND WE WILL HAVE TO SEE.

15      BUT I THINK WITH THE SETTLEMENT CONFERENCE OPPORTUNITIES

16   I DON'T KNOW WHAT IT'S GOING TO TAKE TO EVALUATE THIS LIBRARY.

17      SO I STILL DON'T HAVE SORT OF A BID ON THAT AND TRY TO

18   FIND SO THAT'S WHY I ANTICIPATED THAT BY STARTING SMALL AND

19   THEN SEEING THE REACTION AND I JUST HAVE TO SEE HOW I CAN DO

20   THE LIBRARY EVALUATION, WHO I'M GOING TO GET TO DO IT AND HOW

21   MUCH IT'S GOING TO COST ME AND WHERE WE ARE GOING TO GET THE

22   MONEY AND THINGS LIKE THAT.

23      I'VE ALERTED COURT TO IT NOW.  WE'LL HAVE TO GO BACK AND

24   SEE WHAT WE CAN DO.  AND WE WILL.

25          THE COURT:  OKAY.

```
1        I MEAN, HE'S COMMITTED TO PAYING YOUR OFFICE A CERTAIN

2    AMOUNT WHICH HE OBVIOUSLY IS MORE THAN HALFWAY THERE, RIGHT

3    60 PERCENT THERE.

4        IF THE CASE SETTLES SOME OF THOSE FUNDS WOULD BE AVAILABLE

5    FOR EXPERTS AND COSTS, BUT I WILL TAKE A LOOK AT EACH

6    INDIVIDUAL REQUEST.

7                MR. NOLAN:  THANK YOU.

8                THE COURT:  I'M TELLING YOU GENERALLY THAT'S WHERE

9    I'M COMING FROM.

10                MR. NOLAN:  I UNDERSTAND.  I APPRECIATE, YOUR HONOR.

11                THE COURT:  WHAT ELSE DO WE NEED TO DO?

12        I'M HOPING THERE'S SOME PROGRESS BY OCTOBER, MAYBE YOU

13    MIGHT HAVE HAD YOUR SETTLEMENT CONFERENCE BY JUDGE WHYTE I'M

14    HOPING THE LIBRARY ISSUE IS TAKEN CARE OF.

15        I'M GOING TO REALLY URGE THE PARTIES PLEASE LET'S NOT

16    HAVE ANY MORE DISCOVERY FIGHTS.  I'M ASSUMING CRS WANTS THIS

17    TRIAL IN JANUARY.  DO YOU, OR YOU DON'T CARE WHEN IT IS?

18                MS. STEWART:  THE SOONER THE BETTER, YOUR HONOR.  WE

19    WOULD LIKE TO PUT THIS BEHIND US.

20                THE COURT:  ALL RIGHT.

21        WELL, THE MORE ROADBLOCKS YOU KEEP PUTTING UP ON DISCOVERY,

22    I WILL VACATE THE TRAIL DATE.  IF YOU WANT THE TRIAL THEN THE

23    DEFENSE NEEDS DISCOVERY.  I MEAN, THEY HAVE A CONSTITUTIONAL

24    RIGHT TO HAVE EFFECTIVE ASSISTANCE OF COUNSEL, EFFECTIVE

25    DEFENSE.  AND YOU ARE PROHIBITING THAT, PREVENTING THAT BY
```

1    CONTINUING TO PUT UP ROADBLOCKS ON DISCOVERY.

2         EVERY STATUS CONFERENCE WE'VE HAD IS ANOTHER DISCOVERY

3    ISSUE WHERE CSR NEEDS MORE TIME.  SO YOU ARE NOT ACHIEVING YOUR

4    GOAL OF HAVING A QUICK TRIAL DATE IF YOU CONTINUE TO PUT THESE

5    ROADBLOCKS UP ON DISCOVERY.

6         SO I MAY END UP VACATING THIS TRIAL DATE ANY WAY BECAUSE

7    THE INDICTMENT IS BEING SUPERSEDED I'M BEING TOLD THAT CAN'T BE

8    DONE FOR ANOTHER MONTH.

9         AND YOU KNOW, I WILL, I WILL BE AN ADVOCATE TO BRINGING

10   THIS CASE TO RESOLUTION QUICKLY.  BUT WHEN I START SEEING THAT

11   IT'S THE PLAINTIFF AND THE PROSECUTION, THEN I START CHANGING

12   MY MIND.  EITHER YOU WANT THIS CASE TO BE RESOLVED QUICKLY OR

13   YOU DON'T.  AND IT'S IN YOUR CONTROL.

14            MR. NOLAN:  COULD WE HAVE A DATE FOR THEM TO PROVIDE

15   THE LIBRARIES TO THE PROSECUTION?

16            THE COURT:  WHEN ARE YOU GOING TO DO THAT?

17            MR. SALCEDA:  IS THREE WEEKS UNREASONABLE,

18   YOUR HONOR?

19            THE COURT:  I'M VACATING THE TRIAL DATE.  I'VE HEARD

20   ENOUGH.  TRIAL DATE IS VACATED.  YOU KNOW WHAT, TAKE A YEAR,

21   TAKE THREE YEARS, GO FOR IT.  I'M VACATING THE TRIAL DATE AND

22   I'M VACATING ALL THE PRETRIAL DEADLINES.  I'VE HAD IT.  I'M

23   TRYING TO MOVE THIS CASE.

24        YOU ARE NOT HELPING ME.  FORGET IT, TRIAL DATE IS VACATED,

25   IT'S GONE.  ALL THE PRETRIAL DEADLINES ARE GONE.  YOU TAKE AS

1    MUCH TIME AS YOU WANT.  I'M NOT GOING TO REQUIRE THAT.  I'M

2    TAKING IT OFF MY CALENDAR FOR JANUARY 2013, FINE.  PRETRIAL

3    DEADLINES AND TRIAL DATE VACATED.

4         I'M FINE WITH MOVING THE STATUS CONFERENCE TO NOVEMBER OR

5    DECEMBER.  I'VE HAD IT.  I'VE TRIED TO HELP IN PUSHING THIS

6    CASE AND FACILITATING RESOLUTION, BUT I'M DONE NOW.  OKAY.

7         ALL RIGHT.  NEXT CASE, PLEASE.

8             (WHEREUPON, THE PROCEEDINGS IN THIS MATTER WERE

9    CONCLUDED.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                   **CERTIFICATE OF REPORTER**

5

6

7

8          I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13          THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24   _____

25   SUMMER A. FISHER, CSR, CRR
     CERTIFICATE NUMBER 13185          DATED: 9/12/12