Thomas J. Nolan (SBN: 48413)
Shira Kieval (SBN: 269409)

**Nolan, Armstrong & Barton, LLP**

600 University Ave. \ Palo Alto, Ca. 94301
Tel. (650) 326-2980  Fax (650) 326-9704
Attorneys for Defendant
Zhiqiang Zhang

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ZHIQIANG ZHANG,<br><br>Defendant. | No. CR 10-00827 LHK<br><br>**DEFENDANT ZHANG'S SENTENCING MEMORANDUM**<br><br>Date: August 14, 2013<br>Time: 9:30 a.m.<br>Judge: The Hon. Lucy H. Koh |

Michael Zhang, by and through counsel, hereby submits this Sentencing Memorandum for the Court's consideration in connection with Mr. Zhang's sentencing.

Mr. Zhang requests that the Court impose the specific sentence agreed upon by the parties, after multiple settlement conferences that included significant participation by the victim company, which is memorialized in Mr. Zhang's Rule 11(c)(1)(C) plea agreement: a probationary sentence that includes six months of curfew (as set out in detail in the agreement and below), but does not include any fine.

Probation or probation and home confinement is the sentence in 45% of federal cases where the defendant is charged with criminal trade secrets offenses. It is also the appropriate sentence in this case, considering Mr. Zhang's acceptance of responsibility, his significant

cooperation, the limited scope of his criminal conduct, his clean record, and the steps that he has taken to change his work-life balance since being faced with accusations by the victim company in 2009.

### I. Mr. Zhang's binding plea agreement was the product of significant negotiation, which involved the victim company.

The Rule 11(c)(1)(C) plea agreement in this case was carefully crafted after months of discussions between the parties and the victim company, which included multiple settlement conferences before the Honorable Ronald M. Whyte. It was designed to address the needs of the government and the victim company,[1] taking into account Mr. Zhang's defenses against the charges contained in the indictment, and the difficulties that the government would face at trial.[2] Ultimately, after much negotiation, the parties agreed to the following sentence:

- Five years of probation with a special condition of six months curfew with electronic monitoring, meaning that Mr. Zhang will be required to be in his residence between the hours of 10:00 p.m. and 6:00 a.m., except for approved absences for employment,

---

[1] The plea agreement was deliberately structured under Rule 11(c)(1)(C), in part because of the complicated problems that arise in cases with corporate victims, which must make litigation disclosures to their shareholders and the public, and also have obligations to maximize shareholder earnings. SiRF has likely incurred considerable legal fees due to its decision to pursue criminal charges against Mr. Zhang, rather than timely signing a civil settlement that Mr. Zhang had agreed to on behalf of his company (during what was supposed to be a stand-still period of civil negotiations). Although SiRF has resolved all civil claims with Mr. Zhang for $75,000, and although SiRF participated in settlement conferences where the parties agreed that the loss amount in this case was $75,000, the practical reality is that SiRF cannot now come before this Court and state that the only impact it has felt has been $75,000 in loss. As anticipated, the victim company has called the loss incalculable, and instead has focused on the cost of developing entire programs and products. *See* Victim Impact/Financial Statement For Corporate Victim.

[2] Some of the evidentiary problems are unique to this case, but others are inherent in criminal trade secret prosecutions, as "[t]he term 'trade secret' is one of the most elusive and difficult concepts in the law to define." *Lear Siegler, Inc. v. Ark–Ell Springs, Inc.*, 569 F.2d 286, 288 (5th Cir.1978).

**DEFENDANT ZHANG'S SENTENCING MEMORANDUM**
*United States v. Zhiqiang Zhang*, **CR 10-00827 LHK**

2

religious services, medical care, and at such other times as may be specifically authorized by the United States Probation Office;

- $100 special assessment;

- $75,000 in restitution, which has already been paid; and

- A special search condition of probation.[3]

The entire agreement between the parties is contained within the four corners of the plea agreement, which does not include (and therefore precludes) any fine and only includes one special condition of probation. *See United States v. Gilchrist*, 130 F.3d 1131, 1132 (3d Cir. 1997) (where binding plea agreement did not discuss supervised release, imposition of one year of supervised release was a violation of the plea agreement). Because a court may only accept or reject the agreed upon sentence in an 11(c)(1)(C) agreement, *United States v. Austin*, 676 F.3d 924, 927 (9th Cir. 2012), it would be inconsistent with Rule 11 for the Court to impose any fine[4] or additional special condition of probation.[5]  Moreover, the additional special conditions of

---

[3] Per the plea agreement, "The defendant shall submit his person, residence, office, vehicle, or any property under his control to a search.  Such a search shall be conducted by a United States Probation Officer or any federal, state, or local law enforcement officer at any time with or without suspicion.  Failure to submit to such a search may be grounds for revocation; the defendant shall warn any residents that the premises may be subject to searches."

[4] Here, although the plea agreement acknowledges that a fine is permitted by law, ¶ 1, it does not include a fine in the agreed upon sentence, ¶ 8. A criminal fine is a punishment and is a criminal sentence, even if different in kind than incarceration. Silence as to the imposition of a fine should be treated the same as an explicit statement that no fine may be imposed. *Cf. Southern Union Co. v. United States*, 132 S.Ct. 2344, 2350 (2012) ("While the punishments at stake in those cases [*Cunningham*, *Booker*, *Blakely*, etc.] were imprisonment or a death sentence, we see no principled basis under *Apprendi* for treating criminal fines differently.").

[5] In this circuit, parties may leave certain terms open, at least regarding probation, so long as (in contrast to this case) the plea agreement makes clear that the terms are open. *United States v. Rudd*, 662 F.3d 1257, 1261 n. 2 (9th Cir. 2011) (where defendant preserved right appeal imposition of special conditions of probation, binging plea agreement implicitly contemplated imposition of such conditions).  In other districts the law is stricter and open terms are not permitted at all. *See United States v. BP Products North America, Inc.*, 610 F. Supp. 2d 655, 722-723 (S.D. Tex. 2009) ("[A] provision that allowed the court to impose other conditions of

**DEFENDANT ZHANG'S SENTENCING MEMORANDUM**
*United States v. Zhiqiang Zhang*, **CR 10-00827 LHK**

3

1 probation suggested in the presentence report are not necessary in this case.[6]

2 The agreed upon sentence is a small departure from the range suggested by the U.S. Sentencing Guidelines. The presentence report, in contrast, suggests a Guidelines sentence. However, the presentence report gives only slight consideration to Mr. Zhang's significant cooperation, and does not consider the unique value that the government and the victim company placed on Mr. Zhang's cooperation in this case. *See* Presentence Report ¶ 91 & Justification. Moreover, the Guidelines are not presumptively reasonable. *United States v. Blinkinsop*, 606 F.3d 1110, 1114 (9th Cir. 2010). As discussed below, Section 3553 factors support the agreed upon sentence in this case, not the Guidelines sentence.

---

probation if it accepted the plea . . . would be contrary to the law that limits this court's role in a Rule 11(c)(1)(C) plea to deferring, accepting, or rejecting the plea; this court cannot accept the plea and then modify its terms, even if the parties agreed.").

[6] The first suggested additional special condition is a requirement that Mr. Zhang disclose information about his job duties, so that U.S. Probation can make a decision whether to warn future employers if they are at risk. Such a condition is unnecessary. Mr. Zhang is already required to disclose all tax information, meaning that Mr. Zhang is already required by law to inform Probation of any individual who is paying Mr. Zhang taxable income. Moreover, it is in Mr. Zhang's interest to disclose the specific details of his job requirements, as he knows that, unless Probation is satisfied that his current employer is not at risk, Probation may well contact his current employer. And he is already not permitted to lie to Probation about this information.

The presentence report includes considerable details about the back and forth between U.S. Probation and defense counsel about <u>defense counsel's</u> decision to discuss the details of Mr. Zhang's current job with the supervising probation officer after sentencing. It is defense counsel's understanding that the supervising probation officer makes the determination whether to contact the current employer, and it simply makes sense to discuss this issue with the supervising officer. Defense counsel's decision at the sentencing stage in no way suggests that Mr. Zhang will be anything other than cooperative with his supervising officer. Mr. Zhang has had no issues on pretrial release, and there is no reason to think that he will have any issues on probation.

The second additional special condition requested, that is not included in the binding plea agreement, is a prohibition on contact with Mr. Zhang's codefendants. The U.S. Attorney's Office has agreed that this is not an appropriate condition of probation in this case. The presentence report does not provide any reason to prohibit this contact. Moreover, the offense conduct in this case occurred in 2006. What was then a trade secret is now 7 year old technology in what is a rapidly changing field. For context, the first-general iPhone was not released until mid-2007, and the first Android phone was not sold until fall 2008.

**DEFENDANT ZHANG'S SENTENCING MEMORANDUM**
*United States v. Zhiqiang Zhang*, **CR 10-00827 LHK**

4

## II. The 3553 factors support the agreed-upon sentence in this case

Under the factors listed in 18 U.S.C. section 3553(a), the agreed-upon sentence is appropriate in this case. As the Supreme Court made clear in *Gall v. United States*, while the Guidelines are the starting point in determining an appropriate sentence, the judge should consider all relevant section 3553(a) factors. 552 U.S. 38, 49-50 (2007). "In doing so, [the district judge] may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented." *Id*. at 50 (internal citations omitted). The court's mandate is to "impose a sentence sufficient, but not greater than necessary, to comply with the basic aim of sentencing." 18. U.S.C. § 3553(a).

### a. Probation is the mean sentence in theft of trade secret cases, and the sentence in case with comparable conduct.

Section 3553(a)(6) requires the court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Between 1996 and July 2012, the federal government charged approximately 148 individuals with violations of the Economic Espionage Act. Of those convicted and sentenced before July 2012, approximately 39% received sentences of probation, and 6% received probation and home confinement. *See* Exibit A.[7] Mr. Zhang's conduct is similar to many of the defendants sentenced

---

[7] These numbers are derived from Exhibit A, a declaration and chart prepared by undersigned counsel Thomas J. Nolan and an associate attorney at Mr. Nolan's law firm, Jenny Brandt. The declaration and chart were presented to the U.S. Sentencing Commission in March 2013 as part of a public comment on proposed amendments for 2013 submitted on behalf of the Federal Public and Community Defenders.

The chart contains details regarding all 122 cases where at least one defendant was charged with violating the Economic Espionage Act – either 18 U.S.C. section 1831 (economic espionage) or 1832 (theft of trade secrets). The list includes all cases filed between the passage of the

to probation or probation and home confinement.

In *United States v. Conti*, CR 05-151 (E.D. Wis.), the 118th case listed in Exhibit A, three men were charged with conspiracy after leaving a refrigeration company to form their own rival refrigeration company. They were alleged to have taken (among other thing) construction drawings of installed projects, bids, proposals, change orders, quotes, forms computing costs, internal memos regarding business issues, lists of equipment, emails, an overhead analysis, and a labor cost analysis; and to have directed a co-worker to create a budget of expenses normally incurred by their employer (which they also took). They brought many of these to their new offices. They deleted files from their computers and hired away service and maintenance technicians. They made unsolicited bids to their former employer's clients. Dkt. 1, Indictment. All three defendants pled guilty to computer fraud (the trade secret charges were dismissed on the government's motion) and were sentenced to one year probation, 180 days home confinement, and restitution.[8]

In *United States v. Suibin Zhang*, CR 05-812 RMW (N.D. Cal.),[9] the defendant went to trial and was convicted of five trade secrets counts. On March 14, 2013, he was sentenced to three months custody, three years of supervised release, and $75,000 in restitution. Mr. Suibin Zhang was convicted of downloading 16 trade secrets from his old employer just after accepting a job

---

Economic Espionage Act in 1996 and the creation of the chart in July 2012.

The chart lists sentences for defendants where those sentences are available on Pacer, or where reliable information regarding the sentence was otherwise available online. These 105 sentences range from probation to 188 months incarceration.

Note that some of the defendants who were sentenced pled guilty to non-trade secret counts only.

[8] Charges against a corporate defendant were dismissed.

[9] This case is listed on the chart as pending. Mr. Suibin Zhang was not sentenced until after the chart was completed, and his sentence is not included in the statistical analysis above.

**DEFENDANT ZHANG'S SENTENCING MEMORANDUM**
*United States v. Zhiqiang Zhang*, **CR 10-00827 LHK**

with a direct competitor, copying those trade secrets onto a laptop computer belonging to his new employer one month later when he began his new job, and still possessing those trade secrets two months later. Dkt. 118, Superseding Indictment. According to the government, he also lied to the FBI. Dkt. 318, Government's Sentencing Memorandum, at p. 2.

In *United States v. Yang*, CR 97-288 (N.D. Ohio), the fortieth case, a father (the chief executive of a large Taiwanese corporation), and his daughter (a corporate officer involved in research and development) were convicted after trial of crimes under the Economic Espionage Act. It was alleged that the father and daughter paid the employee of an American company that was a direct competitor of their corporation to steal confidential and proprietary information, which the employee did. The father was sentenced to six months of home confinement and a $250,000 fine; and the daughter was sentenced to one year of probation and fined $5,000. *See* Halligan, Reported Criminal Arrests and Convictions Under the Economic Espionage Act of 1996 (updated 2/17/08), at http://tradesecretshomepage.com/indict.html#_Toc9924964.

Mr. Zhang's conduct has many similarities to the conduct of the defendants in the above-listed cases, and in some instances is less serious. A sentence of five years of probation with six months of curfew fulfills the requirement of Section 3553 that this Court avoid sentencing disparities.[10]

---

[10] In recommending a higher sentence, the presentence report urges that the offense was serious because it involved trade secrets, and an attempt by the defendant to use those trade secrets to competitive advantage. In practical terms, that describes most trade secret cases. First, by definition, all trade secret cases involve trade secrets. Second, by looking at the chart in Exhibit A, it is clear that practically speaking they either involve (1) an attempt to sell the trade secrets for money to a competitor, or (2) an attempt to use the trade secrets to competitive advantage.

Take for example the two following cases, where the defendants received three-year probationary sentences. *United States v. Murphy*, CR 11-29 DLJ (N.D. Cal.), the sixth case on the list of cases attached as Exhibit A, involved allegations that the defendant created his own company to compete with his employer; downloaded to his work laptop approximately 8,800 files (including equality checklists, service and maintenance procedures, vendor scorecards, customer

**DEFENDANT ZHANG'S SENTENCING MEMORANDUM**
*United States v. Zhiqiang Zhang*, **CR 10-00827 LHK**

7

### b. Mr. Zhang has accepted responsibility for his actions and cooperated with the government and the victim company.

Mr. Zhang has accepted responsibility for his actions and cooperated with the government and the victim company. His acceptance of responsibility is reflected in the agreed to guidelines, and his cooperation is properly considered under 18 U.S.C. § 3553(a), without regard to whether the government has filed a 5K1.1 motion. *United States v. Zolp*, 479 F.3d 715, 721 (9th Cir.2007); *see also United States v. Landron-Class*, 696 F.3d 62, 66 (1st Cir. 2012).

When Mr. Zhang was first confronted by SiRF in June 2009 and accused of wrongdoing, shortly after he left the company, he began to negotiate with SiRF in earnest. He shut down his company completely. He agreed to pay $25,000 to enter into a standstill agreement. He conducted an internal investigation. He provided SiRF with information about who at his company had access to SiRF code, who might have used it, and what code exactly would have been used. He submitted to a deposition. He turned over hard drives and thumb drives that he and others had used while working at Anywhere Logic. He agreed to sign a negotiated settlement agreement in which, among other things, he promised not to work in a competing field for a number of years, and pay an additional $50,000 to resolve all potential civil claims.[11]

Then, in November 2010, after a long and unexplained silence from SiRF, he was indicted in this case. He was charged with conspiracy, and with possession of three files that the

---

lists, customer service information, and expense and pricing information); copied some of these files from his work laptop; and then used a deletion program to delete his user activity on his work laptop. Dkt. 1, Information. He pled guilty to possession of a stolen trade secret and was sentenced to 3 years of probation and $40,000 in restitution. In *United States v. West*, CR 08-709 JW (N.D. Cal.), the eighth case on the list, the defendant was accused of taking architecture and product specifications for one of his employer's next-generation LED products, and then accepting a job with his employer's competitor. Dkt. 1, Information. He pled guilty to possession of a stolen trade secret and was sentenced to 3 years of probation and a $5,000 fine.

[11] The agreement was never signed.

**DEFENDANT ZHANG'S SENTENCING MEMORANDUM**
*United States v. Zhiqiang Zhang*, **CR 10-00827 LHK**
8

government alleged were trade secrets.[12]  He was also charged with transportation of stolen property, a charge voluntarily dismissed by the government before this case settled.

      Mr. Zhang has now pled guilty to replicating a trade secret, the interface contained within BTManager.java.  He agreed to cooperate fully with the government. He participated in three debriefing sessions with Assistant U.S. Attorney Susan Knight, federal investigators, in-house counsel for SiRF, outside counsel for SiRF, and a SiRF employee familiar with the code.  He provided Anywhere Logic source code to the government and to SiRF.  On his own initiative, he waived attorney-client privilege from the civil negotiations and provided all of his emails with his civil attorney.  He contacted former Anywhere Logic employees, including one of his co-defendant's in this case (with the permission of the court), in an attempt to track down any remaining Anywhere Logic hard drives that might have any possibility of containing SiRF source code.  Mr. Zhang resolved <u>all</u> civil claims with SiRF and paid SiRF the remaining $50,000 of restitution that he owed.

---

[12] These files were not trade secrets.  Rather, they were simple codes created to allow software to interface with Windows Mobile in order to retrieve and display Cell ID location and GPS location.  This type of technology was discussed openly and publicly on the internet during the time period alleged in the indictment, and so the idea of retrieving and displaying Cell ID location and GPS location was not a secret.  Additionally, sample codes and sample applications created to accomplish this retrieval and display were contemporaneously available to the public, and so at least some methods of creating working code were not a secret.

      As a specific example, the first file (CellIdLogger) is almost completely generated by Microsoft Visual Studio, an automated assistant for C++ programming.  It is nearly identical to "_27CMHELPER_cpp", sample code included in the Software Development Kit "Windows Mobile 5.0 Pocket PC SDK.msi," which is available at http://www.microsoft.com/en-us/download/details.aspx?id=42.  There are a few minor changes.  First, the file sets flag variables (variables that have one value until some condition is true, at which point they have a different value).  Second, the file has a cleanup function – as directed by Microsoft Visual Studio.  And finally, the file includes some lines of code that are <u>identical</u> to those found on a Microsoft forum, posted by a Microsoft employee, Mel Sampat, Program Manager, Microsoft on Monday, March 05, 2007 in answer to a question.  See http://social.msdn.microsoft.com/forums/en-US/vssmartdevicesnative/thread/a91dc2fe-8ade-4b1c-9bbc-27f030283ce8.  The code in the file CellIdLogger is readily ascertainable from code that was publically available at the time it was created.

**DEFENDANT ZHANG'S SENTENCING MEMORANDUM**
*United States v. Zhiqiang Zhang*, **CR 10-00827 LHK**
9

Mr. Zhang has accepted responsibility for his actions. He has cooperated fully with SiRF and the government to help track down any missing source code, provide information about Anywhere Logic's activities, and answer all remaining questions. He has paid restitution in full. He now requests that the Court accept his binding plea agreement and sentence him to five years of probation with six months curfew with electronic monitoring, as described above.

### c. Mr. Zhang has changed his approach to work, and lost a great deal because of these accusations.

Under Section 3553, a court should also consider the history and characteristics of a defendant in fashioning an appropriate sentence. In this case, Mr. Zhang has no prior criminal history, and he has taken steps to change his life by increasing his focus on family and church. But he has also lost a great deal: facing the possibility first of great financial disaster and later the risk of a prison sentence, he and his wife made the decision to delay having a second child – for long enough that the delay may well have become permanent.

Mr. Zhang was born during the Cultural Revolution, to school teachers who were forced to move far from their home, and who worked hard their entire lives to support their extended families through a period of turmoil and financial difficulty. Mr. Zhang adopted their work ethic, and even as he was starting a family of his own, he devoted much of his spare time to work. Anywhere Logic was a company that he founded while working full time and he would spend many weekends and evenings programming code, even as he continued to be promoted at SiRF.

When Mr. Zhang was confronted by SiRF and threatened with legal action, it put tremendous strain on his marriage. Realizing what he might lose, Mr. Zhang shifted the focus of his attentions from supporting his family financially to supporting his family emotionally. Although he found a new job, he also took the time to work to save his marriage. He began to take a much more active role as a father, spending more time with his daughter, taking her to the

park, reading bible with her, and helping her with her homework. He accepted spiritual help from his sister, who steered him to a new church that added an additional dimension of meaning to his life. He and his family became very involved with the church.

At the same time, Mr. Zhang was hiring lawyers. He faced the prospect of significant civil liability. He thought he had negotiated a civil settlement, but ended up waiting a significant period of time while waiting for it to be signed. It was not signed. Instead, Mr. Zhang was charged criminally, in what was declared a complex case, and was now facing the possibility of a long proceeding followed by, potentially, a prison sentence. Mr. Zhang's situation was not unique, as many criminal defendants face long periods of uncertainty and significant legal fees. Nonetheless, it is important to note that the uncertainties faced by Mr. Zhang caused him to delay having a second child. The period of uncertainty lasted long enough that the delay may well be permanent.

These decisions demonstrate that Mr. Zhang has taken responsibility for his actions at home, not merely with SiRF and the government. He has worked to understand the root cause of his conduct, and to change his life for the better. He has accepted that his actions have had very negative impacts on his family, and he has decided to make choices that support and nurture his family instead. With his focus now on his daughter, his wife, and his spiritual wellbeing, Mr. Zhang – who has no criminal history – is unlikely to commit any more crimes, or to allow himself to come close to the line.

But some damage may be irreversible, such as the decision to delay having a child. Mr. Zhang does not blame anyone else for this damage, but does ask for the Court to consider it when determining whether to accept his binding plea deal with the government.

**DEFENDANT ZHANG'S SENTENCING MEMORANDUM**
*United States v. Zhiqiang Zhang*, **CR 10-00827 LHK**
11

**d. Mr. Zhang misappropriated one trade secret to use to test his company's product, not to include in the product.**

Under section 3553(a), a primary factor to be considered by the court in determining an appropriate sentence is the nature and circumstances of the offense. The crime that Mr. Zhang has pleaded guilty to is using his knowledge of one SiRF trade secret to replicate it: the interface contained within the code known as BTManager.java. This was a code developed in June 2006 to access a SiRF Bluetooth GPS device to obtain location information from the device. It was <u>very</u> modest in size compared to the SiRFstudio and SiRFloc programs.[13] The code was to be used to test Anywhere Logic code, and would not have been included in any Anywhere Logic product.

When Mr. Zhang appeared in Court to enter his plea in this case, the Court expressed some concern regarding the agreed upon sentence and deferred its decision whether or not to accept the guilty plea. It appeared that some of the Court's concern was based on the extended recitation of facts in Paragraph 2. The final 12 lines of the recitation describe the factual basis of Mr. Zhang's plea. The first 34 lines simply provide background facts, compiled after significant negotiation and multiple settlement conferences, and reflect the needs of the Government, defendant, and victim company to explain the history and context of the investigation, prosecution, and settlement.

Although they are all true, they are not statements of criminal activity, and many of the facts have benign explanations. The defense has appended a longer explanation of these facts as Exhibit B, in case the Court is hesitant to accept the plea based on the extended recitation of facts, and is prepared to answer any additional questions at the sentencing hearing.

## III.   Other Sentencing Issues

Paragraph 20 has been edited somewhat since the proposed PSR, both at the request

**DEFENDANT ZHANG'S SENTENCING MEMORANDUM**
*United States v. Zhiqiang Zhang*, **CR 10-00827 LHK**

defense counsel, and to incorporate details from new agency reports. The defense would like to clarify that Mr. Zhang met Mr. Liang in graduate school, and had recruited Mr. Liang to SiRF before recruiting him to Anywhere Logic. However, Mr. Zhang met Mr. Li at SiRF, not in graduate school. Additionally, the defense disagrees with the final two paragraphs of Paragraph 20. Mr. Zhang transmitted SiRF code, but (with the exception of the interface) not SiRF trade secrets. The interface that constitutes the trade secret that Mr. Zhang unlawfully replicated was a short file, and it was used to test the Anywhere Logic product that was being developed.

## IV. Conclusion

The sentence specified in the binding plea agreement was arrived at after considerable negotiations between the parties, and in consultation with the victim company. It was filed only after Mr. Zhang participated in three debriefing sessions with the government and the victim company. Moreover, the agreed upon sentence is a just sentence. It is comparable to the sentences handed down in similar cases. It recognizes Mr. Zhang's extensive cooperation, and other losses that he has suffered. Mr. Zhang has not only accepted responsibility for his actions, but upon self-reflection he has recognized the root causes of why he is now awaiting sentencing by this Court – and made the decision to turn away from these causes by concentrating less on being a bread winner and more on being a father and a husband.

Respectfully submitted,

NOLAN, ARMSTRONG & BARTON, LLP

Dated: August 7, 2013

/s
_____
Shira Kieval
Thomas J. Nolan
Attorneys for Defendant Zhiqiang Zhang

---

[13] As Mr. Zhang acknowledged in the plea agreement, SiRF spent between $70,000 and $120,000 to develop the BTManager.java code, compared with $7.7 million dollars to develop SiRFstudio and SiRFloc source code.

**DEFENDANT ZHANG'S SENTENCING MEMORANDUM**
*United States v. Zhiqiang Zhang*, **CR 10-00827 LHK**
13