# Exhibit B

**Explanation of Paragraph 2 of the Plea Agreement**

Mr. Zhang has pleaded guilty to replicating that single trade secret. There are also a number of facts in the plea agreement that do not form the factual basis for Mr. Zhang's plea, but rather provide background regarding the circumstances that triggered SiRF's and the government's suspicions. These facts are true, but many have more benign explanations than either SiRF or the government originally feared. While Mr. Zhang did incur civil liability (which has been resolved completely through civil negotiations with SiRF) and did replicate one trade secret, he never stole or attempted to steal large swaths of code as he had been accused. Below is an explanation of the background facts, and how they came to be.

Mr. Zhang is a highly skilled and well trained computer programmer and geographer. He began working as a mobile-services software engineer in Silicon Valley even before earning his Ph.D. from Syracuse University in 1998. Mr. Zhang met and befriended many other skilled computer programmers and geographers while studying in China and New York, and while working in Silicon Valley. As his career developed, and Mr. Zhang began managing other software engineers, he would recruit programmers to work with or under him whom he knew from school or previous jobs – programmers he knew possessed the right skill sets and work habits to succeed.

In 2000, he started his own company, Anywhere Logic, in order to create location-based services for mobile phones.[14] Two years later, Mr. Zhang took a job at SiRF, a company primarily known for manufacturing GPS chips. Like many GPS chip companies, SiRF also developed programs that used both GPS satellites and cell phone towers to isolate cell phone locations

---

[14] These are the types of mobile services that today we take for granted: maps on our cell phones that know where we are based on our cell phone signal, that know where we might want to go based on information in our social media accounts (like recommendations from friends), and that we can use for free because they are funded by advertisements.

**DEFENDANT ZHANG'S SENTENCING MEMORANDUM**
*United States v. Zhiqiang Zhang*, **CR 10-00827 LHK**

(SiRFloc). From 2006, SiRF also began to create a program to help application developers develop cell phone applications that utilized the cell phone user's location (SiRFstudio).

At the same time, Anywhere Logic began developing a free, advertising-supported application that would allow users to navigate from their cell phones.

Other technology companies, like Google and MapQuest and Facebook, also worked to develop and expand their location-based services.

Although Mr. Zhang has lived in the United States since 1995, and is a United States citizen, he still has family, friends, and classmates in China, and Mandarin is his first language. Expanding his company into China made sense. Mr. Zhang began to establish legal entities in both the United States and the People's Republic of China. In 2006, Mr. Zhang arranged for Anywhere Logic employees to give a presentation to the Jiangsu provincial office of China Mobile regarding the product that Anywhere Logic was developing.

Shortly after this, Mr. Zhang began working on SiRFstudio (described above). SiRF began to cultivate a relationship with the Beijing office of China Mobile, hoping that it could capitalize on the Beijing Olympics by licensing SiRFstudio to China Mobile. Anywhere Logic, which had not been in communications with the Beijing Office, did not have any more meetings with the Jiangsu Province office, or any other office of China Mobile.

Mr. Zhang knew Xiaodong Liang from graduate school. In 2006, he recruited Mr. Liang to SiRF, because the skills Mr. Liang developed earning a Ph.D. in computational science were exactly what SiRF needed for the software program Mr. Zhang was helping develop.

Mr. Zhang's responsibilities at SiRF changed several times over the 6 ½ years that he worked there. He began as a Senior Software Engineer in November 2002. By the time he voluntarily departed SiRF in May 2009 to devote all of his energies to Anywhere Logic, he was Director of Software Development. He also worked on a number of different programs and

**DEFENDANT ZHANG'S SENTENCING MEMORANDUM**
*United States v. Zhiqiang Zhang*, **CR 10-00827 LHK**

managed a number of programmers.  His primary job responsibility from mid-2006 to September 2008 was to work on SiRFstudio.  Then his primary assignment was to develop a program called SiRFhybrid, which was related to, but distinct from, SiRFstudio.  But Mr. Zhang continued to manage a number of programmers working on other projects, including the lead engineer developing SiRFloc (a former coworker of his from another company whom Mr. Zhang recruited to work at SiRF), and another engineer who was working to integrate SiRFhybrid into SiRFstudio – and who was frequently called upon by engineers based in India who had questions about SiRFstudio code.

In 2008, Mr. Zhang brought Tom Lin in to Anywhere Logic as a founder.  Mr. Zhang had not been able to secure funding for Anywhere Logic, and he thought that Mr. Lin would be able to.  Although Mr. Lin had previously worked for SiRF, Mr. Zhang did not talk to him until after he had left SiRF to work for another technology company.  Mr. Lin was able to secure some funding for Anywhere Logic – from a funder who does not appear to have been involved with SiRF in any way.

Mr. Zhang and his employees developed the core components of the product that they were creating using open-source software, including PostGIS, MapServer, and PostgreSQL.  However, as they began working in earnest to expand Anywhere Logic, they used certain SiRF-developed code a crutch.  Mr. Zhang, for example, copied what he believed was open-source or otherwise publically known software code from certain files that were part of SiRFstudio and SiRFloc.  He instructed his employees to do the same, but was also careful to instruct his employees to stay away from SiRF's core IP and any trade secrets.  For example, during its internal investigation, SiRF, the company found a Skype message between Mr. Zhang and Yanmin Li, instructing Mr. Li to reuse certain SiRFstudio code files because of Mr. Zhang's belief that "[t]here isn't anything secret about those." Indictment ¶¶ 6(a), 12.

**DEFENDANT ZHANG'S SENTENCING MEMORANDUM**
*United States v. Zhiqiang Zhang*, **CR 10-00827 LHK**

During his last six months at SiRF, Mr. Zhang downloaded very large quantities of source code from SiRF's Perforce database to his work computer. The reason that he downloaded such large amounts of code is because he was "syncing" the code at his work station, meaning that he would update large swaths of SiRFstudio code by downloading them and replacing the older versions of the code on his work station. This was instead of going through and manually updating each of the many files that his subordinates were working with. This was his habit throughout the time that he was employed at SiRF, and it saved him the time it would take to search through the hundreds of thousands of SiRFstudio and SiRFloc files on the Perforce database for the files that his subordinates might be using. In his last six months at SiRF, he "synced" SiRFstudio code, even though he was no longer primarily assigned to develop SiRFstudio, in order to review the work of his subordinates.

Mr. Zhang also began using his personal laptop for SiRF work. His work laptop was old and needed to be upgraded. Although he obtained approval from his supervisor for a new laptop, he was not given one by the IT department. He transferred some of the files that he had downloaded onto his personal laptop. After he left SiRF in May 2009, he deleted his SiRF files from his personal laptop.

On July 14, 2009, Mr. Zhang received a cease and desist letter from SiRF that threatened him with civil litigation. The letter accused Anywhere Logic of misappropriating SiRFstudio and then marketing "that stolen property as its own." Mr. Zhang panicked, and the next day he saved multiple copies of the install file for the operating system Fedora on his personal laptop. Although he did not install Fedora, the act of saving multiple copies of the installation file overwrote the unused space on his computer, meaning that no one would be able to access deleted files that otherwise might remain in this unused or unallocated space until overwritten.

While some of these actions were violations of Mr. Zhang's employment agreement, and

**DEFENDANT ZHANG'S SENTENCING MEMORANDUM**
*United States v. Zhiqiang Zhang*, **CR 10-00827 LHK**

others subjected him to civil liability, they appeared to SiRF and to the government to be far worse than they were. At the worst, it appeared that Mr. Zhang could have taken all of SiRFstudio and SiRFloc, and then deleted his hard drive to cover his tracks. In fact, while Mr. Zhang did erase data, his actions did not conceal the extensive criminal conduct that SiRF and the government feared.