1                 UNITED STATES DISTRICT COURT

2               NORTHERN DISTRICT OF CALIFORNIA

3                      SAN JOSE DIVISION

4

5

    UNITED STATES OF AMERICA,        )  CR-10-00827 LHK
6                                    )
                    PLAINTIFF,       )  SAN JOSE, CALIFORNIA
7                                    )
              VS.                    )  SEPTEMBER 18, 2013
8                                    )
    ZHIQIANG ZHANG, A/K/A MICHAEL    )  PAGES 1-27
9   ZHANG,                           )
                                     )
10                  DEFENDANT.       )
    _____ )

11

12                 TRANSCRIPT OF PROCEEDINGS
                BEFORE THE HONORABLE LUCY H. KOH
13                 UNITED STATES DISTRICT JUDGE

14

15   A P P E A R A N C E S:

16   FOR THE PLAINTIFF:    UNITED STATES ATTORNEY'S OFFICE
                           BY:  SUSAN KNIGHT
17                         150 ALMADEN BOULEVARD, SUITE 900
                           SAN JOSE, CALIFORNIA  95113
18

19   FOR THE DEFENDANT:    NOLAN, ARMSTRONG & BARTON
                           BY:  THOMAS J. NOLAN
20                              SHIRA KIEVAL
                           600 UNIVERSITY AVENUE
21                         PALO ALTO, CALIFORNIA  94301

22

23   OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                                 CERTIFICATE NUMBER 9595
24

25           PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
                 TRANSCRIPT PRODUCED WITH COMPUTER

```
 1     SAN JOSE, CALIFORNIA                    SEPTEMBER 18, 2013

 2                     P R O C E E D I N G S

 3          (COURT CONVENED AND THE FOLLOWING PROCEEDINGS WERE HELD:)

 4               THE CLERK:  CALLING CASE NUMBER CR-10-00827 LHK,

 5     UNITED STATES VERSUS ZHIQIANG ZHANG.

 6               MS. KNIGHT:  GOOD MORNING, YOUR HONOR.  SUSAN KNIGHT

 7     FOR THE UNITED STATES.

 8               MR. NOLAN:  GOOD MORNING, YOUR HONOR.  TOM NOLAN AND

 9     SHIRA KIEVAL ON BEHALF OF MR. ZHANG, WHO'S PRESENT.

10               MS. RAYA:  GOOD MORNING, YOUR HONOR.  AYLIN RAYA FROM

11     U.S. PROBATION.

12               THE COURT:  OKAY.  GOOD MORNING TO EVERYONE.

13          I'VE REVIEWED EVERYTHING THAT HAS BEEN SUBMITTED VERY

14     CAREFULLY AND AT THIS TIME I'M NOT GOING TO ACCEPT THE PLEA

15     AGREEMENT.

16          I THINK IT'S ONLY FAIR THAT I TELL YOU WHAT SOME OF MY

17     CONCERNS ARE, AND I WOULD LIKE TO ASK IF YOU WOULD PLEASE GO

18     BACK AND SEE IF YOU CAN REWORK THE PLEA AGREEMENT.  I'M NOT

19     SAYING THAT WE'RE LEGIONS APART, BUT I DO HAVE SOME CONCERNS

20     AND I'D LIKE TO GO AHEAD AND STATE THEM IF THAT GIVES YOU ANY

21     ADDITIONAL INFORMATION.

22          AND I WILL TELL YOU WHAT I FOUND -- I APPRECIATED THE

23     EXHIBITS A AND B THAT THE DEFENSE SUBMITTED, BUT I STILL HAVE

24     SOME CONCERNS, AND WHY DON'T I JUST SORT OF GO THROUGH WHAT

25     THEY ARE.
```

```
1        I'M CONCERNED THAT -- AND I APOLOGIZE BECAUSE I HAVE ASKED

2    PREVIOUSLY, IT'S MR. ZHANG; CORRECT?

3             THE DEFENDANT:  YES.

4             THE COURT:  ZHANG.  I'M JUST CONCERNED THAT THE

5    PRIMARY ASSIGNMENT AT SIRF CHANGED FROM SIRF STUDIO TO SIRF

6    HYBRID IN SEPTEMBER OF '08, WHICH AT LEAST THERE'S AN

7    ALLEGATION IS SOMEWHAT DISTINCT FROM SIRF STUDIO.

8        AND THE FACT THAT ON SEPTEMBER 19TH OF 2008, MR. ZHANG TOLD

9    MR. LI TO REUSE THE SIRF STUDIO PORTABLE TYPES AND INTERNAL

10   OPERATING SYSTEM, ET CETERA, AS MUCH AS POSSIBLE AND CHANGE THE

11   NAMING, AND I AGREE HE SAYS THERE'S NOTHING SECRET ABOUT THOSE,

12   BUT I THINK THE FACT THAT HE SAYS TO CHANGE THE NAMING

13   UNDERSTANDS THAT HE KNOWS THAT AN ANYWHERE LOGIC PROJECT,

14   PRODUCT, CANNOT HAVE SIRF OPERATING SYSTEM FILES, WHATEVER,

15   INCLUDED.

16       AND I'M DISTURBED THAT FROM NOVEMBER OF '08 THROUGH APRIL

17   OF '09, MR. ZHANG DOWNLOADED OVER 100,000 FILES RELATED TO SIRF

18   STUDIO AND SIRF BLOCK.

19       WHY THAT WAS DONE WHEN HE'S NO LONGER PRIMARILY ASSIGNED TO

20   SIRF STUDIO AND HE'S OBVIOUSLY USING IT IN ANYWHERE LOGIC

21   PRODUCTS SINCE HE'S SPECIFICALLY TELLING MR. LI TO DO SO IS OF

22   CONCERN, AND I DON'T KNOW -- I UNDERSTAND THE DEFENSE'S

23   POSITION IS, WELL, HE WAS STILL HAVING TO OVERSEE A SUBORDINATE

24   WHO WAS WORKING ON SIRF STUDIO.

25       I DON'T KNOW IF THAT'S THE CASE OR NOT.  I'D LIKE MORE
```

```
 1        INFORMATION ON THAT.  PERHAPS THAT'S SOMETHING THAT SIRF CAN

 2        ANSWER.

 3              AND THEN THE FACT THAT WHEN, ON JULY 14TH, 2009, MR. ZHANG

 4        DID RECEIVE THE CEASE AND DESIST LETTER FROM SIRF, THAT HE

 5        INSTALLED MULTIPLE COPIES OF THE INSTALL FILE OF THE OPERATING

 6        SYSTEM FOR FEDORA ON HIS PERSONAL LAPTOP, BUT THEN HE DOESN'T

 7        INSTALL THE FEDORA OPERATING SYSTEM ITSELF, IT JUST MEANS THAT

 8        HE DID NOT WANT ANYONE TO ACCESS THE DELETED 100,000 FILES.

 9              AND HE'S A PH.D.  HE WAS THE DIRECTOR OF SOFTWARE AT SIRF.

10        I THINK HE KNEW EXACTLY WHAT HE WAS DOING.  I KNOW THE DEFENSE

11        SAYS HE PANICKED, BUT I'M DISTURBED BY THAT.  I THINK THESE ARE

12        PRETTY SERIOUS.

13              THE FACT THAT HE HAD A COMPETING COMPANY THE ENTIRE PERIOD

14        OF HIS EMPLOYMENT AT SIRF, THE FACT THAT HE RECRUITED TWO SIRF

15        EMPLOYEES TO WORK FOR ANYWHERE LOGIC DURING THE TIME OF THEIR

16        EMPLOYMENT WITH SIRF, THE FACT THAT HE TOLD THEM TO USE SIRF

17        TECHNOLOGY IN ANYWHERE LOGIC PRODUCTS, THE FACT THAT HE WAS

18        COMPETING FOR THE SAME CLIENTS, LIKE CHINA MOBILE, DURING THE

19        TIME OF HIS EMPLOYMENT WITH SIRF, I'M JUST -- I FIND THESE TO

20        BE SERIOUS ALLEGATIONS.

21              THE FACT THAT THIS DECEIT OF HIS EMPLOYER LASTED FOR SEVEN

22        YEARS, FROM 2002 WHEN HE WAS HIRED AT SIRF TO 2009 WHEN HE

23        WAS -- WHEN HE RESIGNED.

24              I LOOKED CAREFULLY AT THE DEFENSE'S SENTENCING MEMO AND I

25        KNOW, YOU KNOW, ONE OF THE CASES YOU RELY ON IS MR. SUIBIN
```

1    ZHANG, BUT THAT CASE IS DISTINGUISHABLE.

2        I MEAN, MR. ZHANG IN OUR CASE HAD STARTED HIS OWN

3    COMPETITOR COMPANY, KEPT IT GOING FOR SEVEN YEARS WHILE HE WAS

4    EMPLOYED AT SIRF, MADE PRESENTATIONS TO THIRD PARTIES LIKE

5    CHINA MOBILE, DOWNLOADED 100,000 FILES.

6        WE HAVE MR. SUIBIN WAS HIRED; A MONTH LATER HE DID TAKE --

7    DOWNLOAD 16 TRADE SECRETS; HE WAS HIRED BY ANOTHER COMPANY.  HE

8    WASN'T STARTING -- HE WASN'T FORMING ANOTHER COMPETITOR

9    COMPANY, HE WASN'T RECRUITING EMPLOYEES, HE WASN'T TELLING THEM

10   TO USE THE EMPLOYER'S TRADE SECRETS IN A COMPETITOR PRODUCT.

11   HIS CONDUCT LASTED THREE MONTHS, NOT SEVEN YEARS.  HE WASN'T

12   MAKING PRESENTATIONS TO THIRD PARTIES LIKE CHINA MOBILE.

13       I JUST -- I JUST HAVE CONCERNS ABOUT THE CONDUCT THAT'S

14   BEEN ALLEGED, AND I THINK THAT ADDITIONAL PUNISHMENT SHOULD BE

15   ON THE TABLE FOR A DISCUSSION AT LEAST.

16       I'M ALSO DISTURBED THAT MR. ZHANG IS NOT WILLING TO TELL

17   PROBATION ABOUT HIS CURRENT EMPLOYER.  OBVIOUSLY IT SEEMS THAT

18   MR. ZHANG HAS NOT DISCLOSED THIS CRIMINAL CASE TO HIS CURRENT

19   EMPLOYER AND HE WANTS THE COURT TO CONTINUE IN THAT PROCESS AND

20   PROBATION, WHICH I'M NOT GOING TO BE CONDONING THAT.

21       I UNDERSTAND THAT THE CLAIM IS, WELL, HIS LAWYER WILL TELL

22   AFTER, POST-SENTENCING.  WHY?  WHAT DOES IT MATTER PRE- OR

23   POST-SENTENCING?  HE BASICALLY WANTS THE COURT TO BE COMPLICIT

24   IN THE DECEIT OF HIS -- HIS CURRENT EMPLOYER SHOULD KNOW THAT

25   HE'S GOING TO BE CONVICTED OF TRADE SECRET THEFT.

1    THERE SHOULD BE A POSSIBILITY OF REAL SUPERVISION ONCE

2    MR. ZHANG IS SENTENCED, AND I AM DISTURBED BY SEEING THAT

3    THERE'S NO WILLINGNESS TO DISCLOSE TO THE CURRENT EMPLOYER,

4    THAT THEY WANT THE CURRENT EMPLOYER TO COMPLETELY BE DECEIVED

5    ABOUT THIS TRADE SECRET THEFT CASE AND WANT THE COURT TO GO

6    ALONG WITH IT AND SAY, "FINE, THAT'S FINE, DON'T TELL THE

7    EMPLOYER.  LET'S JUST -- YOU KNOW, AND AT SOME POINT WHEN

8    MR. NOLAN OR SOMEBODY ELSE WANTS TO TELL THEM, THEY CAN TELL

9    THEM."

10    I'M NOT GOING TO GO ALONG WITH THAT.  I THINK THERE NEEDS

11    TO BE THE POSSIBILITY OF ACTUAL SUPERVISION WHILE ON PROBATION.

12    AS FAR AS -- I JUST -- YOU KNOW, I HAVE CONCERNS.  THERE'S

13    NO PAYMENT OF A FINE BECAUSE A $28,000 PIANO WAS PURCHASED AND

14    A $22,000 COLLEGE PREP CLASS, PRESUMABLY FOR HIS TEN YEAR OLD

15    DAUGHTER, WAS PURCHASED.

16    YOU KNOW, I JUST -- YOU KNOW, I WAS LOOKING THROUGH

17    EVERYTHING.  I READ THROUGH EVERYTHING VERY CAREFULLY.  I READ

18    THROUGH THE WHOLE CHART OF ALL THESE TRADE SECRET CASES THAT

19    HAVE BEEN PROSECUTED ALL OVER THE COUNTRY, AND I FEEL LIKE

20    THERE'S SOME GAMING OF THE SYSTEM GOING ON HERE.

21    SO I'M GOING TO ASK THAT YOU GO BACK, PLEASE, AND DO A

22    LITTLE FURTHER EXPLORATION, AND I'D LIKE TO CONTINUE THIS

23    SENTENCING.

24    MR. NOLAN:  COULD WE MAKE A FEW COMMENTS, YOUR HONOR?

25    THE COURT:  PLEASE, GO AHEAD.

1        MR. NOLAN:  I'M SOMEWHAT DISTURBED BY THE FACT THAT

2    WE HAVE AN INDIVIDUAL WHO STILL HAS A FAMILY TO SUPPORT, AND IF

3    THE EMPLOYER THAT HE HAS WANTS TO ASK HIM ABOUT HIS PRIOR

4    RECORD, THEY CAN, AND HE HAS TO ANSWER THE QUESTION.

5        AND ALL WE'VE SUGGESTED IS THAT IF THE -- IF THE PROBATION

6    DEPARTMENT FEELS THAT IT'S NECESSARY TO NOTIFY THE EMPLOYER,

7    THAT'S THE PROPER ENTITY TO MAKE THAT DECISION BECAUSE IT'S

8    LIKE THE -- THE PROBATION DEPARTMENT HAS TO DETERMINE, BASED ON

9    EVERYTHING THEY KNOW, DO WE WANT HIM TO LOSE HIS JOB BY

10   NOTIFYING THEM, OR DO WE WANT THEM TO DO THEIR JOB?

11       TO WHAT EXTENT DO -- DOES THIS COURT WANT TO CONTROL WHAT

12   OCCURS AFTER THE SENTENCING IN TERMS OF WHETHER OR NOT AN

13   EMPLOYER KNOWS ABOUT A PRIOR CONVICTION?

14       THE COURT:  BUT THERE'S NO EVEN CONDITION -- WHETHER

15   HE'S ON PROBATION OR SUPERVISED RELEASE, THERE'S NO EVEN

16   CONDITION FOR HIS PROBATION OFFICER TO MONITOR HIS ACCESS TO

17   PROPRIETARY INFORMATION, AND I THINK IF SOMEONE'S BEEN

18   COMMITTING TRADE SECRET THEFT FOR SEVEN YEARS, I THINK THAT

19   MIGHT BE -- THAT AT LEAST SHOULD BE ON THE TABLE FOR

20   DISCUSSION --

21       MR. NOLAN:  ALL RIGHT.

22       THE COURT:  -- AS A TERM AND CONDITION OF WHATEVER IT

23   IS, PROBATION, SUPERVISED RELEASE, WHATEVER IT IS.  IT SHOULD

24   AT LEAST BE ON THE TABLE FOR DISCUSSION.  IT'S NOT EVEN ON THE

25   TABLE FOR DISCUSSION RIGHT NOW.

1     MR. NOLAN:  WELL, THIS COURT HAS MADE CONCLUSIONS

2  THAT HE TOOK TRADE SECRETS DURING THIS PERIOD OF TIME.

3     THE COURT:  WELL, HE'S ALREADY PLED GUILTY TO --

4     MR. NOLAN:  TO A TRADE SECRET.

5     THE COURT:  YES, OKAY.

6     MR. NOLAN:  I UNDERSTAND.  BUT WHEN THIS COURT SAYS,

7  "FOR SEVEN YEARS, HE WAS DECEIVING THE COMPANY HE WORKED FOR,"

8  THAT MEANS THAT YOU'RE SAYING THAT EMPLOYERS IN THIS STATE MAY

9  NOT HAVE THEIR OWN PRIVATE BUSINESS OUTSIDE.

10     THE COURT:  BUT WHAT DO YOU CALL THE 100,000 FILES?

11  WHAT WAS THAT?

12     MR. NOLAN:  I'M TRYING --

13     THE COURT:  NO, NO.  I'M ASKING YOU, WHAT WAS THE

14  100,000 FILES?  THAT WAS ALL JUST OPEN SOURCE?  IT WAS ALL JUST

15  OUT THERE?  I MEAN --

16     MR. NOLAN:  YOU KNOW --

17     THE COURT:  YEAH.

18     MR. NOLAN:  -- WHEN HE SAYS, "YOU CAN USE THIS

19  BECAUSE IT'S NOT A SECRET," THEN HE'S NOT GUILTY OF TRADE

20  SECRET THEFT.

21     THE COURT:  WHY IS HE CHANGING THE NAMING?  WHY DOES

22  HE NEED TO CHANGE THE NAMES OF THE FILES?

23     MR. NOLAN:  I'M GOING TO LET -- IF YOU DON'T MIND,

24  I'LL LET MS. KIEVAL ANSWER THESE QUESTIONS.

25    MY CONCERN IS THAT THE THINGS YOU'RE TALKING ABOUT AREN'T

1    NECESSARILY CRIMES.  I MEAN, YOU'RE BASICALLY SAYING THAT IF

2    YOU WORK FOR A COMPANY, YOU CANNOT HAVE ANOTHER COMPANY ON THE

3    SIDE.  YOU CANNOT WORK ON THE SIDE.  YOU CANNOT DEVELOP ANOTHER

4    PRODUCT.

5         THE KEY IS, THAT MAY BE A VIOLATION OF THE EMPLOYMENT

6    CONTRACT, BUT IT'S NOT A CRIME.

7         AND THIS PARTICULAR TRADE -- AGAIN, THE COURT -- THE COURT

8    IS, IN MY OPINION, DEMONIZING A REALITY THAT OCCURS WITHIN THIS

9    COMMUNITY OF PEOPLE ALWAYS WORKING ON OTHER PROJECTS, HAVING

10   OTHER KINDS OF JOBS THAT THEY'RE DOING, HAVING -- WE CAN'T

11   PREVENT THEM.  I CAN'T PREVENT PEOPLE IN MY OFFICE FROM DOING

12   SOMETHING ELSE, AND IT'S CERTAINLY NOT A CRIME WHEN THEY DO

13   SOMETHING ELSE.

14        THIS COMPANY WAS STARTED BEFORE HE WENT TO SIRF, AND I

15   THINK THAT E-MAIL PROVES THAT HE DIDN'T INTEND TO COMMIT A

16   CRIME.

17        A VIOLATION OF HIS EMPLOYMENT CONTRACT?  MAYBE.  BUT NOT A

18   CRIME.

19        AND THE IDEA THAT WE'RE GAMING THE SYSTEM, YOUR HONOR, WE

20   HAVE -- YOU HAVE THE U.S. ATTORNEY'S OFFICE WHO'S LOOKED AT

21   THIS, FBI AGENTS WHO HAVE LOOKED AT THIS, THE COMPANY LOOKED AT

22   THIS AND HAS SPENT A GREAT DEAL OF MONEY PURSUING THIS, WE GO

23   IN FRONT OF A FEDERAL JUDGE, WE ALL GO IN THERE WITH OUR

24   DIFFERENT TAKES ON WHAT'S GOING ON, AND WE ALL SIT DOWN AND WE

25   ALL COME TO A CONCLUSION THAT SATISFIES EACH OF THE NEEDS OF

1        EACH OF THE PARTIES.  EACH OF THE NEEDS.

2            AND IT SEEMS TO ME THAT THAT'S PART OF WHAT THE CRIMINAL

3        JUSTICE SYSTEM IS ALL ABOUT IS THAT WE WORK AT THIS TO TRY TO

4        DO ULTIMATE JUSTICE, AND WE CAN'T COME TO YOU AND SHARE ALL OF

5        THESE THINGS.

6            WHEN THIS PLEA WAS MADE, THE COURT LOOKED TO THE U.S.

7        ATTORNEY AND SAID, "WHAT'S THE REASON HERE?  WHAT'S THE

8        PROBLEM?"

9            INSTEAD, OF COURSE, OF TURNING TO US AS TO, "WHY DID YOU

10       PLEAD GUILTY?"

11           THE COURT'S ALREADY DECIDED THAT SOMEHOW, YOU KNOW, IT'S

12       THE GOVERNMENT'S FAULT THAT THEY MADE TOO BIG -- TOO MUCH OF A

13       DEAL, RATHER THAN MR. ZHANG WHO HAS DECIDED TO ENTER A PLEA TO

14       A FELONY AND HAVE THAT AS A RESULT.

15           AND SHE ADMITTED, IT WAS A PROOF PROBLEM.

16           AND NOW YOU HAVE A SITUATION WHERE WE'VE LAID OUT

17       EVERYTHING AND WE'VE COOPERATED FULLY AND WE HAVE RESOLVED THE

18       CIVIL MATTER AND WE'VE DEBRIEFED ON EVERYTHING AND WE'VE TRIED

19       TO -- WE'VE TRIED TO FIND --

20           THE COURT:  I'M NOT SAYING WE'RE FAR OFF, BUT I'M

21       SAYING THERE SHOULD BE THINGS THAT ARE AT LEAST ON THE TABLE

22       FOR DISCUSSION --

23           MR. NOLAN:  WELL, EACH --

24           THE COURT:  -- THAT ARE COMPLETELY NOT ON THE TABLE

25       AT ALL.

1          MR. NOLAN:  ALL RIGHT.  THESE WERE ON THE TABLE.

2     EACH OF THESE WERE ON THE TABLE.  EACH OF THESE HAVE COUNTER

3     FORCES, COUNTER PIECES THAT WE'D BE HAPPY TO SIT DOWN WITH THE

4     COURT AND WITH JUDGE WHYTE AND WITH THE CIVIL LITIGANTS AND

5     WITH THE U.S. ATTORNEY IN YOUR CHAMBERS AND TALK ABOUT, WAS HE

6     OR WAS HE NOT IN CHARGE OF THE SIRF STUDIO AT THIS TIME?

7          YOU DECIDED HE WASN'T.  WE SAID HE WAS.

8          I DON'T KNOW HOW WE RESOLVE THAT, THAT HE WAS IN CHARGE.

9          YOU --

10          THE COURT:  NO.  YOU ADMIT THAT THAT WAS NOT HIS

11     PRIMARY RESPONSIBILITY ANYMORE.  IT'S IN YOUR PAPERS.  IT'S IN

12     YOUR PAPERS THAT AS OF SEPTEMBER OF '08, HIS PRIMARY ASSIGNMENT

13     WAS NO LONGER SIRF STUDIO.

14          MS. KIEVAL:  YOUR HONOR, I'M HAPPY TO TALK ABOUT

15     THE -- I'VE SPENT A LOT OF TIME, AS I THINK YOU HAVE AS WELL,

16     TRYING TO UNDERSTAND SOME OF THE REAL SORT OF TECHNICAL DETAILS

17     OF THE CASE, AND I'M HAPPY TO TALK ABOUT THEM EITHER NOW OR

18     AFTER MR. NOLAN IS FINISHED.

19          MR. NOLAN:  GO RIGHT AHEAD.

20          THE COURT:  OKAY.  I'M LOOKING AT EXHIBIT B, OKAY?

21          MS. KIEVAL:  YES.

22          THE COURT:  DOCKET NUMBER 133-2, PAGE 4 OF 6, LINE 1

23     THROUGH 2:  "HIS PRIMARY JOB RESPONSIBILITY FROM MID-2006 TO

24     SEPTEMBER OF 2008 WAS TO WORK ON SIRF STUDIO."

25          MS. KIEVAL:  THAT'S CORRECT.

1      THE COURT:  "AND HIS PRIMARY ASSIGNMENT WAS TO

2   DEVELOP A PROGRAM CALLED SIRF HYBRID, WHICH WAS RELATED TO BUT

3   DISTINCT FROM SIRF STUDIO."

4      AND I SAID THAT -- YOUR POSITION WAS THAT HE STILL HAD TO

5   ACCESS THE 100,000 FILES BECAUSE HE WAS MONITORING THE WORK OF

6   THE SUBORDINATE, AND I SAID I DON'T KNOW, I JUST NEED MORE

7   INFORMATION.  AND I DON'T KNOW IF THAT'S THE CASE OR NOT.

8      BUT THE FACT THAT HE'S NO LONGER, EVEN BY YOUR OWN

9   DOCUMENTS, WORKING ON SIRF STUDIO, HE'S WORKING ON SOMETHING

10   ELSE, HE NEVER DOWNLOADED, IT SOUNDS LIKE, A SIRF HYBRID

11   DOCUMENT IN THE LAST SIX MONTHS OF HIS EMPLOYMENT BEFORE HE

12   RESIGNED TO WORK FULL TIME ON ANYWHERE LOGIC.

13      MR. NOLAN:  HE WAS PRIMARILY RESPONSIBLE.  I HAVE A

14   FEELING HE WORKED ON IT.  AND WE CAN TRY TO GET THAT.

15      BUT IT SEEMS TO ME THAT THERE ARE FACTUAL CONCLUSIONS THAT

16   THE COURT IS DRAWING --

17      THE COURT:  BUT THIS IS FROM EXHIBIT B OF YOUR OWN

18   DOCUMENT.

19      MR. NOLAN:  NO, I UNDERSTAND.

20      THE COURT:  I MEAN, THIS IS --

21      MR. NOLAN:  YOU'RE CONCLUDING HE DIDN'T HAVE

22   RESPONSIBILITY.

23      THE COURT:  I'M SAYING -- ALL I'M SAYING IS THIS

24   11(C)(1)(C) PLEA AGREEMENT DOESN'T EVEN ALLOW ANY DISCUSSION.

25   I'M NOT SAYING I'M GOING TO IMPOSE SOMETHING DRASTICALLY MORE

```
1    SEVERE OR NOT, BUT THIS DOESN'T EVEN ALLOW ANY DISCUSSION.  IT

2    DOESN'T LEAVE ANY DISCUSSION ON THE TABLE --

3              MR. NOLAN:  WELL, FIRST OF ALL --

4              THE COURT:  -- FOR A CONDITION OF -- I MEAN, YOU'RE

5    SAYING NO ON EVEN ANY CONDITIONS OF SUPERVISION AND THEY'RE NOT

6    SPELLED OUT AND IT'S ONLY THE SEARCH CONDITION.

7         I MEAN, IT'S JUST VERY RESTRICTIVE.

8              MR. NOLAN:  AND PART OF IT IS THAT HE'S BEEN ON

9    SUPERVISED RELEASE AND HE'S BEEN SUBJECT TO SUPERVISION.

10        WHEN HE'S BEEN GIVEN AN OPPORTUNITY, FOR EXAMPLE, TO FLY

11   OFF TO WORK AND A PLANE GETS CANCELLED, HE'S IMMEDIATELY ON THE

12   PHONE TO EVERYBODY TO SAY, "OH MY GOD, I'M NOT GOING TO MAKE IT

13   BACK ON TIME."

14             THE COURT:  YEAH.

15             MR. NOLAN:  EVERYBODY KNOWS HOW WELL HE'S BEEN DOING

16   BECAUSE THEY REPORT IT TO THE U.S. ATTORNEY AND EVERYBODY ELSE.

17   THEY'VE HAD THEIR OPPORTUNITY TO DO THEIR FULL EXAMINATION.

18             THE COURT:  WELL, YOU MAY BE ABLE TO CONVINCE ME THAT

19   NO OTHER PROBATION TERM IS NECESSARY.  YOU MAY BE ABLE TO

20   CONVINCE ME.

21        BUT I JUST FEEL LIKE I NEED MORE INFORMATION AND I NEED TO

22   AT LEAST HAVE THE DISCUSSION.  YOU MAY BE ABLE TO COMPLETELY

23   CONVINCE ME THAT NOTHING OTHER THAN THE SEARCH CONDITION IS

24   APPROPRIATE.  I'M NOT WEDDED TO THAT.  I JUST FEEL LIKE RIGHT

25   NOW I DON'T HAVE ALL THE INFORMATION THAT I NEED.
```

1           MR. NOLAN:  WELL, LET ME --

2           MS. KNIGHT:  YOUR HONOR --

3           MR. NOLAN:  I'M SORRY.  GO AHEAD.

4           MS. KNIGHT:  YOUR HONOR, IF YOU CAN JUST CLARIFY FOR

5      THE GOVERNMENT EXACTLY WHAT YOUR CONCERNS ARE.  DO YOU WANT TO

6      SEE A FINE?  DO YOU WANT TO SEE A FURTHER EXPLANATION OF THE

7      100,000 FILES?  THE GOVERNMENT WOULD JUST LIKE A FURTHER

8      CLARIFICATION SO WE CAN ADDRESS THIS, BECAUSE OBVIOUSLY WE'RE

9      NOT GOING TO BE ABLE TO RESOLVE THIS TODAY.  I JUST WOULD LIKE

10     TO BE ABLE TO RESPOND TO THE COURT'S CONCERNS.

11          THE COURT:  SURE.  WELL, I DON'T THINK IT -- I DON'T

12     THINK, BECAUSE OF RULE 11, IT WOULD BE APPROPRIATE FOR ME TO

13     SAY X, Y, Z, A, B, C.  I DON'T THINK I CAN, AND I DON'T EVEN

14     THINK I HAVE INFORMATION TO EVEN DO THAT RIGHT NOW.

15          MS. KNIGHT:  UM-HUM.

16          THE COURT:  I JUST -- AFTER REVIEWING EVERYTHING, AND

17     I -- YOU KNOW, YOU ALL ARE FABULOUS ATTORNEYS.  I UNDERSTAND

18     THE VERY DILIGENT PROCESS THAT WENT TO CREATING THIS PLEA

19     AGREEMENT, THE EXPERTS THAT YOU ALL HAD WITH ALL OF YOU AND

20     JUDGE WHYTE, AND I GIVE IT A LOT OF DEFERENCE.

21        JUST RIGHT NOW, I DON'T FEEL LIKE I HAVE THE INFORMATION,

22     AND AT LEAST TO HAVE THE DISCUSSION TO SAY, YES, THIS IS --

23     UNDER 3553(A) FACTORS, THIS IS DEFINITELY THE RIGHT THING.  I

24     JUST FEEL LIKE THERE ARE STILL SOME HOLES HERE THAT AT LEAST

25     SHOULD BE ON THE TABLE FOR DISCUSSION, AND YOU MAY BE ABLE TO

```
1    PERSUADE ME THAT THIS IS --
2              MR. NOLAN:  HOW DO WE GET THEM ON THE TABLE?  IN
3    OTHER WORDS, THE FIRST STEP IS TO FIND OUT WHAT THEY ARE, AND
4    THE COURT'S BASICALLY SAYING "I CAN'T TELL YOU WHAT THEY ARE."
5              THE COURT:  WELL, I'VE ALREADY GONE THROUGH -- THAT'S
6    WHY I WENT THROUGH --
7              MR. NOLAN:  ALL RIGHT.
8              THE COURT:  -- WHAT I THOUGHT WAS PRETTY PAINSTAKING
9    DETAIL ABOUT THE QUESTIONS THAT I STILL HAVE, THE CONCERNS THAT
10   I HAVE, WHETHER THERE WOULD BE ADEQUATE SUPERVISION.  I MEAN, I
11   FEEL LIKE I'VE LAID IT OUT WITH QUITE A BIT OF DETAIL OTHER
12   THAN SAYING, "I WANT X, Y, Z ON A, B, C," WHICH I DON'T THINK I
13   CAN OR SHOULD DO.
14             MR. NOLAN:  WELL, LET'S TALK A MINUTE, IF YOU DON'T
15   MIND, ABOUT ADEQUATE SUPERVISION.
16             THE COURT:  OKAY.
17             MR. NOLAN:  I SUPPOSE THE COURT COULD ORDER THAT THE
18   PROBATION DEPARTMENT MONITOR ALL OF HIS COMPUTER ACTIVITY AT
19   ANY JOB HE MIGHT HAVE IN THE FUTURE.  THAT WOULD MEAN HE WOULD
20   HAVE NO JOB IN THE FUTURE BECAUSE NO EMPLOYER WOULD ALLOW THEM
21   ACCESS TO THEIR INTELLECTUAL PROPERTY, ALLOW THE GOVERNMENT
22   ACCESS TO IT, ALLOW THEM TO BASICALLY MONITOR THE COMPUTERS.
23        SO WE DON'T WANT THAT SITUATION TO OCCUR.
24             THE COURT:  WELL, IN THE P.S.R. HE'S CLAIMING THAT HE
25   DOESN'T HAVE ACCESS TO CONFIDENTIAL INFORMATION AND THAT HE'S
```

1   JUST DOING CUSTOMER, YOU KNOW, FIELD APPLICATIONS WORK.  I

2   MEAN, THAT'S THE CLAIM, AND I -- THE THING IS, I JUST DON'T

3   KNOW AND PROBATION WASN'T ABLE TO VERIFY ANYTHING BECAUSE THEY

4   WEREN'T ALLOWED TO.

5       SO --

6           MR. NOLAN:  WELL, NOW WE'RE GETTING INTO -- WELL --

7           THE COURT:  I MEAN, HE'S SAYING "I'M NO LONGER A

8   SOFTWARE DEVELOPER.  I DON'T SUPERVISE ANY SOFTWARE DEVELOPERS.

9   I'M JUST A BUSINESS LEADER."

10      AND, I MEAN, HE --

11          MR. NOLAN:  SO WE CAN FIND SOMEBODY WHO KNOWS, FOR

12  EXAMPLE, THE NATURE OF HIS WORK WHO CAN THEN PREPARE A

13  DECLARATION TO CONFIRM THAT FACT?  WE HAVE NO INFORMATION THAT

14  HE'S LYING ABOUT THAT.  WE CAN CERTAINLY GIVE THAT INFORMATION

15  TO THE FBI AND THEY CAN CONDUCT AN INVESTIGATION AS TO WHETHER

16  OR NOT THAT'S TRULY WHAT HIS JOB IS.

17      WE CAN POSSIBLY GET SOME RECORDS FROM HIS EMPLOYER.

18      BUT THE MINUTE WE SAY, "WE WANT THIS NEW EMPLOYER CONTACTED

19  AND WE WANT TO MAKE SURE THAT THEY MONITOR HIS BEHAVIOR," THEN

20  HE IS NOT -- HE'S JOBLESS AND HE WON'T BE ABLE TO GET A JOB.

21      IF YOU'RE TALKING ABOUT MONITORING HIS HOME COMPUTER,

22  CERTAINLY THERE CAN BE THE PROSPECT OF HAVING -- AND YOU CAN DO

23  THIS IN CHILD PORNOGRAPHY CASES -- YOU CAN MONITOR HIS HOME

24  COMPUTER AND IT CAN BE SEARCHED TO SEE WHETHER HE'S WORKING ON

25  SOME OTHER COMPANY, WHICH IS NOT NECESSARILY A VIOLATION OF THE

1    LAW.

2         SO IN TERMS OF THAT PARTICULAR ISSUE, YOU KNOW, I DON'T

3    KNOW WHAT MORE WE CAN DO.  WE'VE MADE THE STATEMENT, AND

4    THERE'S NO CONTRARY EVIDENCE FOR THE COURT TO FIND THAT'S

5    INADEQUATE.  WITHOUT MORE, I THINK, IS NOT AN APPROPRIATE WAY

6    FOR THE COURT TO LOOK AT IT.

7         I THINK THAT WE HAVE TO LOOK AT WHAT WE'VE FOUND OUT,

8    WHETHER EVERYTHING HE SAID IN HIS DEBRIEFING IS TRUE AND, YOU

9    KNOW, I DON'T KNOW THAT YOU'RE EVER GOING TO GET MORE

10   SATISFACTION.

11        IF IT'S A MATTER OF SUPERVISION, THE PROBATION DEPARTMENT

12   IS FREE TO MAKE SURE THAT HIS EMPLOYER IS NOT IN JEOPARDY, BUT

13   THAT'S UP TO THE PROBATION DEPARTMENT AND IT SHOULDN'T, AT THIS

14   POINT, BE UP TO A CONDITION OF PROBATION.  IT'S UP TO THE

15   PROBATION DEPARTMENT.  IF THEY FEEL THAT THE EMPLOYER MIGHT BE

16   IN JEOPARDY, THEN THEY TAKE WHATEVER STEPS THEY FEEL ARE

17   NECESSARY TO PREVENT THAT FROM HAPPENING.

18        BUT I THINK THEY PROBABLY WILL COME TO THE CONCLUSION THAT

19   THAT'S NOT NECESSARY AND THAT'S NOT AN ISSUE AND THAT IT WAS

20   ADEQUATELY DISCUSSED.

21        EACH OF THESE THINGS WERE DISCUSSED BY ALL OF US IN

22   DECIDING WHETHER OR NOT WHAT WAS NEEDED IN THIS CASE.

23             THE COURT:  WELL, I'M LOOKING AT PARAGRAPH 66 OF THE

24   P.S.R.:  "THE DEFENDANT DECLINED TO DISCUSS THE DETAILS OF HIS

25   POSITION WITH THE U.S.P.O. IN THE PRESENTENCE INVESTIGATION AS

```
 1    HE PREFERS TO DISCUSS THE INFORMATION WITH A SUPERVISING

 2    OFFICER POST-SENTENCING."

 3         THAT, TO ME, IS NOT FORTHRIGHT.  THAT, TO ME, IS NOT

 4    PROVIDING ALL THE INFORMATION THAT THE PROBATION OFFICE NEEDS

 5    TO MAKE AN ASSESSMENT.  AND THAT'S -- THAT RIGHT THERE, THAT HE

 6    DECLINED TO DISCUSS THE DETAILS OF HIS CURRENT POSITION WITH

 7    PROBATION FOR THE PRESENTENCE INVESTIGATION, I MEAN --

 8              MR. NOLAN:  SO LET'S ASSUME THAT HE SAYS, "I WORK FOR

 9    ABC AND THIS IS WHAT I DO."  SOMEHOW THAT MAKES A DIFFERENCE?

10    I DON'T KNOW.

11         I MEAN, THE -- IF THAT'S WHAT THE COURT'S INTERESTED IN AND

12    HE'S GOT TO SAY WHERE HIS EMPLOYER IS, WELL, HE MIGHT LOSE A

13    JOB.  HE MIGHT NOT EVER BE ABLE TO GET ANOTHER JOB IF THE COURT

14    SAYS HE HAS TO TELL EVERY EMPLOYER THAT HE'S BEEN CONVICTED OF

15    A TRADE SECRET THEFT.

16         IT'S PUBLIC KNOWLEDGE.  IF THE EMPLOYER DOESN'T GET IT, WHY

17    SHOULD THE GOVERNMENT BE HELPING THE EMPLOYER?  WHY SHOULD THAT

18    BE AROUND HIS NECK FOR THE REST OF HIS LIFE IF THE EMPLOYER

19    THINKS HE'S A GOOD EMPLOYEE?

20         SO, YOU KNOW, IF THAT'S THE ISSUE, WE MIGHT BE ABLE TO

21    RESOLVE IT.

22         BUT THERE'S NO WAY TO DO IT IF WE CAN'T FIND A VEHICLE TO

23    DO THIS.  WE'RE DOING IT RIGHT NOW A LITTLE BIT.

24         BUT I AM CONCERNED ABOUT THE FACT THAT HE'S BEING --

25    WHAT'S BEING HELD AGAINST HIM IS YOU SAY HE DECEIVED HIS
```

1    EMPLOYER FOR SO MANY YEARS BECAUSE HE'S VIOLATED A CONDITION OF

2    HIS EMPLOYMENT BECAUSE HE'S HAD A COMPETING COMPANY.

3            THAT IS NOT A CRIME AND THAT SHOULDN'T BE USED TO INCREASE

4    THE PUNISHMENT FOR THE CRIME HE COMMITTED IN MY OPINION.

5            IF HE'S NOT BEING --

6            THE COURT:  WELL, LET'S JUST LOOK AT THE CRIME THAT

7    HE PLED GUILTY TO.  I'M TELLING YOU THAT, FOR WHAT HE PLED

8    GUILTY, I DON'T THINK FIVE YEARS OF PROBATION AND A CURFEW WITH

9    A LITTLE BIT OF ELECTRONIC MONITORING IS THE RIGHT SENTENCE.

10   ALL RIGHT?  FORGET EVERYTHING ELSE.  I THOUGHT I WOULD AT LEAST

11   GIVE YOU A BROAD STOKE OF WHAT I FOUND WAS AGGRAVATING,

12   MITIGATING, NEUTRAL, NOT -- BUT FINE.  LET'S JUST LOOK AT WHAT

13   HE DID PLEAD TO.

14           MR. NOLAN:  WELL, AGAIN, WE HAVE TO GO BACK --

15           THE COURT:  I'M JUST TELLING YOU --

16           MR. NOLAN:  I UNDERSTAND.

17           THE COURT:  -- I DON'T THINK THAT IT'S APPROPRIATE

18   FOR BASICALLY NOTHING TO BE ON THE TABLE OTHER THAN FIVE YEARS

19   PROBATION AND A HOME CURFEW FROM 10:00 P.M. TO 6:00 A.M. WITH

20   SOME ELECTRONIC MONITORING FOR SIX MONTHS.

21           MR. NOLAN:  AND WE'VE SHOWN YOU CASE LAW THAT TALKS

22   ABOUT THE COMPLEXITY OF THE TRADE SECRET LAW AND THE FACT THAT

23   THERE WASN'T EVEN A FEDERAL TRADE SECRET CRIME UNTIL, WHAT, 10,

24   15 YEARS AGO.  IT DIDN'T EXIST.  THE FACT IS THAT IT ISN'T

25   INGRAINED IN OUR SOCIETY.  IT ISN'T LIKE CANDLESTICKS IN

1    ENGLAND.  IT'S NEW.  MOST PEOPLE, WHEN IT FIRST STARTED OUT,

2    THOUGHT, "TRADE SECRET?  THAT'S NOT CRIMINAL.  THAT'S CIVIL.

3    THOSE MATTERS ARE HANDLED CIVILLY."

4         I THINK ALL YOU HAVE TO DO IS LOOK AT THE NUMBER OF CIVIL

5    TRADE SECRET CASES AND WONDER, "WHY AREN'T THEY IN MY COURT?"

6         WELL, THERE'S REASONS WHY THEY AREN'T IN THE COURT.

7         SOMETIMES THEY GET INTO THE COURT AND THEY SHOULDN'T BE IN

8    THE COURT.  SOMETIMES, WHEN YOU EXAMINE FURTHER, YOU FIND OUT

9    THAT, IN FACT, THEY DON'T BELONG THERE.

10        THE RESEARCH THAT WAS DONE FOR THE SENTENCING COMMISSION

11   SHOWS THE NUMBER OF PEOPLE WHO RECEIVE PROBATION AND THE NATURE

12   OF THOSE OFFENSES.

13        THE CASE THAT YOU REFER TO, SUIBIN ZHANG, THAT CASE WENT TO

14   TRIAL, HE DIDN'T ACCEPT RESPONSIBILITY, AND HE GOT THREE

15   MONTHS, YOU KNOW, HOME -- WHATEVER IT WAS, HOME CONFINEMENT OR

16   WHATEVER IT WAS IN THIS PARTICULAR DISTRICT.

17        AND SO YOU LOOK AT WHAT HE TOOK AND YOU -- YOU KNOW, AGAIN,

18   WE CITED -- AND I REALLY THINK THAT IT'S, IT'S SOMETHING WE

19   HAVE TO REMEMBER, AND THAT IS WE CITED AN EIGHTH CIRCUIT CASE

20   THAT SAID THIS IS ONE OF THE MOST COMPLEX AREAS OF LAW, WHAT IS

21   AND WHAT IS NOT A TRADE SECRET.

22        THE COURT:  MR. ZHANG GOT THREE MONTHS CUSTODY FROM

23   JUDGE RONALD WHYTE.

24        MR. NOLAN:  WHAT --

25        THE COURT:  I HEAR YOU.  I UNDERSTAND.  I'M NOT

1    SAYING THAT WE ARE FAR OFF, BUT I'M GOING TO ASK THAT YOU

2    PROVIDE MORE INFORMATION AND TRY TO REWORK THE PLEA AGREEMENT.

3    I'M NOT SAYING THAT WE ARE FAR OFF, BUT I NEED MORE INFORMATION

4    AND I THINK THERE SHOULD BE MORE THAT'S AT LEAST ON THE TABLE

5    FOR DISCUSSION AND BE A POSSIBILITY.

6         MR. NOLAN:  WELL --

7         THE COURT:  I MEAN, YOU MAY ULTIMATELY CONVINCE ME

8    THAT WE'RE CLOSE TO WHERE WE ARE, BUT AT THIS POINT I CAN'T DO

9    IT.

10         MS. KNIGHT:  IS THE COURT LOOKING FOR ANOTHER BINDING

11    PLEA AGREEMENT?  OR -- THE GOVERNMENT STANDS BY THE CURRENT

12    PLEA AGREEMENT, BUT IN LIGHT OF THE COURT'S COMMENTS, WOULD YOU

13    WANT TO SEE AN (A)(B) AGREEMENT RATHER THAN A (C) AGREEMENT?

14         THE COURT:  I JUST THINK MORE THINGS SHOULD BE ON THE

15    TABLE FOR DISCUSSION.

16         MS. KNIGHT:  OKAY.

17         MR. NOLAN:  WELL, WHAT I REQUEST THEN IS AN

18    OPPORTUNITY TO GET A TRANSCRIPT SO WE CAN REVIEW SOME OF THE

19    CONCERNS THE COURT HAS, ADDRESS THOSE CONCERNS WITH ALL PARTIES

20    INVOLVED, AND NOT SET ASIDE THIS AGREEMENT YET.

21         THE COURT:  I AGREE.  I AGREE.

22         MR. NOLAN:  SO WE CAN COME BACK SO THE COURT CAN LOOK

23    AT WHAT SUGGESTIONS AND IDEAS WE HAVE, OR NOT SUGGESTIONS AND

24    IDEAS, COUNTER-ARGUMENTS FOR THE COURT.

25       I THINK THAT NOT ACCEPTING -- IN ALL NEGOTIATIONS I'M AWARE

1    OF, NO ONE IS COMPLETELY HAPPY.  NO ONE IS COMPLETELY

2    SATISFIED.  BUT THEY RESPECT THE PROCESS THAT IS USED TO COME

3    TO A CONCLUSION.

4        AND SO TO TAKE ALL THE WORK THAT'S BEEN DONE BY ALL THE

5    PEOPLE INVOLVED AND TO BASICALLY SAY THERE ARE SOME ISSUES,

6    WE'RE NOT FAR APART, BUT THERE ARE SOME ISSUES, I WOULD THINK

7    THAT AN 11(C)(1)(C), UNLESS THERE'S SOME SIGNIFICANT -- AND YOU

8    SAID -- I THINK YOU MADE A COMMENT ABOUT PLAYING WITH THE

9    SYSTEM OR SOMETHING LIKE THAT, GAMING THE SYSTEM, WHICH, QUITE

10   FRANKLY, I NEED TO KNOW MORE ABOUT WHAT YOU MEAN BY THAT

11   BECAUSE THAT'S, THAT'S DISTURBING.

12       WE ALL ARE TRYING TO DO OUR JOBS AND WE COME TO YOU WITH A

13   SOLUTION THAT IS APPARENTLY NOT FAR OFF, BUT TO UNDO IT IS

14   SOMETHING THAT IS GOING TO CAUSE TREMENDOUS PROBLEMS.

15       WE'VE ALREADY DONE THINGS IN RELIANCE UPON THIS IN TERMS OF

16   THE CIVIL LITIGANTS.  WE'VE ALREADY SETTLED CIVIL CASES.  WE'VE

17   ALREADY DONE DEBRIEFINGS AND MADE ADMISSIONS.

18       AND THOSE THINGS, WHEN THEY COME BACK, IF THIS IS REJECTED,

19   ARE THINGS THAT, QUITE FRANKLY, ARE IN AN AREA I HAVE NO

20   KNOWLEDGE ABOUT.  WHAT DO WE DO ABOUT THE ADMISSIONS THAT HE

21   MADE?  WHAT DO WE DO ABOUT THE SETTLEMENTS THAT HE MADE?

22           THE COURT:  WELL, I'M SAYING LET'S JUST CONTINUE THE

23   SENTENCING.  LET'S CONTINUE THE SENTENCING FOR A FURTHER

24   HEARING.

25           MR. NOLAN:  VERY WELL.  WE'LL TRY TO ADDRESS SOME OF

1    THOSE ISSUES.

2            THE COURT:  AT THIS POINT I'M NOT REJECTING THE PLEA

3    AGREEMENT.  WE'RE GOING TO CONTINUE THE SENTENCING AND I'D LIKE

4    YOU TO HAVE A FURTHER DISCUSSION.

5            MS. KNIGHT:  YOUR HONOR, CAN WE PLEASE HAVE SOME TIME

6    TO ORDER TRANSCRIPTS?  I BELIEVE MY OFFICE NEEDS 30 DAYS TO DO

7    THAT.

8            THE COURT:  THAT'S FINE.  WHAT -- I MEAN, WHEN WOULD

9    YOU LIKE TO COME BACK?

10           MR. NOLAN:  WELL, WE NEED TIME FOR THE TRANSCRIPTS

11   AND THEN WE NEED TIME TO PREPARE DOCUMENTS AND MAYBE GET SOME

12   AFFIDAVITS FROM PEOPLE, OR SOME BETTER UNDERSTANDING OF WHAT

13   MR. ZHANG'S JOB WAS AT SIRF TO PROVE THAT HE DID HAVE THE RIGHT

14   TO THESE MATERIALS AND ACCESS TO THEM.

15       MAYBE SOME TREATISE ON THE FACT THAT, OR SOME STUDY ON THE

16   FACT OF THE NUMBER OF PEOPLE WHO WORK IN SILICON VALLEY WHO

17   ALSO HAVE COMPANIES ON THE SIDE.  I DON'T KNOW HOW WE'RE GOING

18   TO FIND THAT OUT, BUT I THINK WE'RE TALKING IN THE THOUSANDS OF

19   PEOPLE WHO HAVE COMPANIES THAT THEY CREATE TO DEVELOP SOMETHING

20   WHILE THEY'RE STILL WORKING FOR A COMPANY.

21       THE FACT THAT IN TRIAL, I THINK WE WOULD HAVE SHOWN THAT HE

22   WAS NOT GOING TO COMPETE WITH SIRF.  HE WAS TALKING ABOUT A

23   COMPLETELY DIFFERENT PRODUCT.

24       YOU KNOW, THESE ARE ALL THINGS THAT WE DISCUSSED WHEN WE

25   WENT INTO THIS AGREEMENT THAT WE DIDN'T FEEL THE NECESSITY TO

 1    PUT INTO, BECAUSE THESE ARE -- THESE ARE THINGS THAT WE HAD

 2    ARGUED ABOUT.

 3         AND SO, YOU KNOW, IF OUR ARGUMENT IS MORE POWERFUL THAN THE

 4    OTHER AND THEY SAY, "FINE, WE'RE GOING TO ACCEPT THAT," WE'RE

 5    NOT GOING TO COME BEFORE THE COURT AND SAY, "SEE, WE WERE

 6    RIGHT, WE WERE RIGHT, WE WERE RIGHT."  IT'S LIKE WE

 7    COMPROMISED.  YOU KNOW, WE DIDN'T HAVE TO PROVE THAT.

 8         AND THAT MAKES IT EXTREMELY DIFFICULT TO SETTLE CASES,

 9    BASICALLY, TO RESOLVE CASES.

10         COMPLEX AS THESE CASES ARE, YOU KNOW -- FOR EXAMPLE, THIS

11    IS A MATTER IN WHICH THE CIVIL LITIGANTS -- WE DIDN'T PUT ANY

12    OF THIS IN -- THE CIVIL LITIGANTS ENTERED INTO WHAT I

13    UNDERSTAND -- AND I DON'T MEAN TO IRRITATE THE CIVIL

14    LITIGANTS -- BUT THEY ENTERED INTO A "LET'S NOT DO ANYTHING

15    MODE" FOR AWHILE, OR WHATEVER, "WE'RE NOT GOING TO DO ANYTHING,

16    YOU'RE NOT GOING TO DO ANYTHING, WE'LL STAND STILL," WHATEVER.

17         AND THEN THEY WERE COOPERATING WITH THE GOVERNMENT AND THEY

18    TOOK A DEPOSITION.  HE COOPERATED IN THE DEPOSITION.

19         THE COURT:  I'VE BEEN EXTREMELY HARD ON MS. KNIGHT ON

20    THAT ISSUE AND I HAVE, IN MOST OF THESE STATUS CONFERENCES,

21    MR. NOLAN, BEEN ON YOUR SIDE PRESSING SIRF TO GIVE YOU THE

22    DISCOVERY, TO GIVE YOU THE DAMAGES NUMBERS, WHY ARE THEY BEING

23    SO SLOW?

24         I'VE VACATED THE TRIAL DATE OUT OF FRUSTRATION WITH YOUR

25    DELAY.

1      I HAVE -- I HAVE BEEN WITH YOU IN PRESSING MS. KNIGHT ON

2   THIS ISSUE ABOUT, YOU KNOW, DID THE U.S. ATTORNEY'S OFFICE, YOU

3   KNOW, ENCOURAGE A DEPOSITION KNOWING THAT THEY WERE CONSIDERING

4   A POTENTIAL CRIMINAL CASE?  SO I'VE BEEN WITH YOU.

5      I'M JUST SAYING AT THIS POINT I'D LIKE SOME MORE

6   INFORMATION.  I'D LIKE YOU TO PLEASE GO BACK.  I'D LIKE TO

7   CONTINUE THE SENTENCING.  I'M NOT REJECTING THE PLEA AGREEMENT

8   AT THIS TIME AND I JUST WANT TO GIVE YOU SOME TIME TO DO THAT.

9      SO WHEN CAN YOU COME BACK?

10   (DISCUSSION OFF THE RECORD BETWEEN COUNSEL.)

11      THE COURT:  AND I'M SORRY TO EVERYONE THAT THIS IS

12   GOING TO CAUSE FURTHER DELAY AND CAUSE FOLKS TO HAVE TO COME

13   BACK FOR A FURTHER SENTENCING, BUT --

14      MR. NOLAN:  YOUR HONOR, CAN WE COME BACK ON THE 20TH

15   OF NOVEMBER?

16      THE CLERK:  THAT'S THE DATE THAT YOU JUST SET THE --

17      THE COURT:  AH, WHAT ABOUT THE 27TH OR -- THAT'S THE

18   WEDNESDAY BEFORE THANKSGIVING.  THAT'S OKAY WITH ME, BUT IF

19   THAT'S NOT GOOD FOR YOU --

20      MS. KNIGHT:  THAT'S FINE FOR THE GOVERNMENT.

21      MR. NOLAN:  IT'S FINE WITH ME, OTHER THAN I HAVE A

22   TRIAL SET IN ANOTHER DEPARTMENT THAT IS SET FOR ABOUT FOUR TO

23   SIX WEEKS STARTING IN THE LATTER PART OF OCTOBER, BUT I THINK

24   IT MAY BE CONTINUED OR -- I DON'T KNOW --

25      THE COURT:  IF YOU HAVE A CONFLICT WITH THAT DATE,

```
 1      CAN YOU JUST FILE A STIPULATION AND PICK ANOTHER DATE THAT IS

 2      CONVENIENT FOR ALL PARTIES?

 3              MR. NOLAN:  OKAY.  ALL RIGHT.

 4              THE COURT:  ALL RIGHT.  OKAY.  SO NOVEMBER 27TH AT

 5      9:30 THEN.

 6              MS. RAYA:  YOUR HONOR, PROBATION IS ACTUALLY

 7      UNAVAILABLE THAT DATE.  WOULD IT BE ACCEPTABLE TO THE COURT TO

 8      HAVE A STAND-IN OR PERHAPS MAYBE SEEK ANOTHER DATE WHERE I

 9      WOULD BE AVAILABLE?

10         I'M ACTUALLY OUT, YOUR HONOR, ON THE 20TH AND THE 27TH.

11      I'LL BE BACK ON DECEMBER 4TH, BUT I'LL ALSO BE AROUND ON

12      NOVEMBER 13TH.

13              THE COURT:  WHAT ABOUT THE PARTIES?  THE 13TH

14      UNFORTUNATELY DOES NOT WORK FOR THE COURT.  THE 4TH IS FINE.

15              MS. KNIGHT:  DECEMBER 4TH IS FINE WITH THE

16      GOVERNMENT, YOUR HONOR.

17              THE COURT:  WILL THAT --

18              MR. NOLAN:  I DON'T THINK I HAVE ANYTHING OTHER THAN

19      A POSSIBLE TRIAL.

20              THE COURT:  THAT TRIAL THAT MIGHT GO ON?  OKAY.

21      LET'S MOVE IT TO DECEMBER 4TH.  I THINK THERE'S ENOUGH --

22      HOPEFULLY THAT WOULD BE LESS LIKELY TO INTERFERE WITH

23      MR. NOLAN'S TRIAL, AND THAT WAY OFFICER RAYA CAN BE HERE AS

24      WELL.

25         OKAY.  SO DECEMBER 4TH AT 9:30.  THANK YOU ALL VERY MUCH.
```

1          MS. RAYA:  THANK YOU, YOUR HONOR.

2          MS. KNIGHT:  THANK YOU, YOUR HONOR.

3          MR. NOLAN:  THANK YOU.

4          THE COURT:  I APPRECIATE YOUR PATIENCE WITH ME.

5       (THE PROCEEDINGS IN THIS MATTER WERE CONCLUDED.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                          CERTIFICATE OF REPORTER

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8    STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9    280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10   CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12   A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13   ABOVE-ENTITLED MATTER.

14

15

16   _____
     LEE-ANNE SHORTRIDGE, CSR, CRR
17   CERTIFICATE NUMBER 9595

18         DATED:  OCTOBER 16, 2013

19

20

21

22

23

24

25