```
 1              UNITED STATES DISTRICT COURT

 2             NORTHERN DISTRICT OF CALIFORNIA

 3                    SAN JOSE DIVISION

 4


 5
        UNITED STATES OF AMERICA,      )  CR-10-00827 LHK
 6                                     )
                      PLAINTIFF,       )  SAN JOSE, CALIFORNIA
 7                                     )
                 VS.                   )  APRIL 17, 2013
 8                                     )
        ZHIQIANG ZHANG, A/K/A MICHAEL  )  PAGES 1-28
 9      ZHANG,                         )
                                       )
10                    DEFENDANT.       )
        _____)
11

12               TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE LUCY H. KOH
13               UNITED STATES DISTRICT JUDGE

14

15      A P P E A R A N C E S:

16      FOR THE PLAINTIFF:    UNITED STATES ATTORNEY'S OFFICE
                              BY:  SUSAN KNIGHT
17                            50 ALMADEN BOULEVARD, SUITE 900
                              SAN JOSE, CALIFORNIA  95113
18

19      FOR THE DEFENDANT:    NOLAN, ARMSTRONG & BARTON
                              BY:  THOMAS J. NOLAN
20                                 SHIRA KIEVAL
                              600 UNIVERSITY AVENUE
21                            PALO ALTO, CALIFORNIA  94301

22


23      OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                                    CERTIFICATE NUMBER 9595
24

25             PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
                  TRANSCRIPT PRODUCED WITH COMPUTER
```

```
1     SAN JOSE, CALIFORNIA                    APRIL 17, 2013

2                   P R O C E E D I N G S

3        (COURT CONVENED AT 10:33 A.M.)

4            THE CLERK:  CALLING CASE NUMBER CR-10-00827 LHK,

5     UNITED STATES VERSUS ZHIQIANG ZHANG.

6            MS. KNIGHT:  GOOD MORNING, YOUR HONOR.  SUSAN KNIGHT

7     FOR THE UNITED STATES.

8            MR. NOLAN:  GOOD MORNING, YOUR HONOR.  TOM NOLAN WITH

9     MR. ZHANG, AND ALSO APPEARING WITH ME IS SHIRA KIEVAL.

10           THE COURT:  OKAY.  GOOD MORNING.

11       I READ THIS FACTUAL BASIS IN THE PLEA AGREEMENT AND I WAS

12    READING THIS AND I WAS THINKING I WAS GOING TO SENTENCE

13    MR. ZHANG TO 18 MONTHS PRISON, SO I WAS QUITE SHOCKED TO SEE

14    HE'S GETTING FIVE YEARS OF PROBATION WITH SIX MONTHS OF

15    ELECTRONIC MONITORING.

16       WHAT -- I FIND THIS OFFENSE CONDUCT TO BE VERY SERIOUS AND

17    I'M A LITTLE BIT PUZZLED, BECAUSE I GET DEFENDANTS IN HERE WHO

18    DO SOME POSTAL FRAUD WHERE THEY, YOU KNOW, STEAL A COUPLE

19    THOUSAND DOLLARS WORTH OF IPODS AND THE GOVERNMENT COMES IN

20    HERE ASKING ME TO PUT THEM IN JAIL FOR ONE TO TWO YEARS, AND

21    THEN HERE YOU HAVE THIS SOFTWARE ENGINEER STEALING TRADE

22    SECRETS, GIVING THEM TO THE CHINESE GOVERNMENT, AND I'M BEING

23    ASKED TO GIVE HIM FIVE YEARS PROBATION.  I, FRANKLY, AM JUST

24    SHOCKED.

25           WHY IS HE BEING TREATED SO LENIENTLY WHEN YOUR OFFICE COMES
```

1    IN ASKING ME TO DO ONE TO TWO YEARS OF JAIL TIME FOR PEOPLE WHO

2    JUST PICK UP SOME UPS PACKAGES THAT HAVE, YOU KNOW, MAYBE 2-,

3    $300 OF ELECTRONICS AND PUT THEM IN JAIL FOR ONE TO TWO YEARS,

4    AND THEN THIS GUY IS GETTING FIVE YEARS PROBATION WHEN I THINK

5    WHAT HE DID WAS FAR WORSE.  THIS IS THEFT OF FAR WORSE OF A

6    NATURE THAN STEALING A COUPLE IPODS.

7        WHY IS HE GETTING SUCH A LENIENT, LENIENT DEAL HERE?

8            MR. NOLAN:  WHO ARE YOU ASKING FIRST, YOUR HONOR?

9            THE COURT:  WELL, I KNOW WHY YOU WANT A LENIENT DEAL.

10   LET ME ASK MS. KNIGHT.

11           MR. NOLAN:  NO, BUT ALSO I HAVE --

12           THE COURT:  I MEAN, THIS IS REALLY SERIOUS CONDUCT,

13   REALLY SERIOUS.  I THINK IT'S VERY AGGRAVATING.

14       AND THEN I -- YOU KNOW, I TURN TO PAGE 6 AND HE'S GETTING

15   PROBATION.

16           MS. KNIGHT:  SO, YOUR HONOR, IF I CAN JUST SPEAK TO

17   THAT?

18           THE COURT:  YEAH.

19           MS. KNIGHT:  THIS NEGOTIATION, I MEAN THIS PLEA

20   AGREEMENT IS A RESULT OF MULTIPLE SETTLEMENT CONFERENCES WITH

21   JUDGE WHYTE --

22           THE COURT:  UM-HUM.

23           MS. KNIGHT:  -- THE GOVERNMENT REVIEWING THE EVIDENCE

24   THAT WE HAD --

25           THE COURT:  OKAY.

1        MS. KNIGHT:  -- THAT IN THE EVENT WE WERE TO PROCEED

2   TO TRIAL, AND ALSO TAKING INTO ACCOUNT MR. ZHANG'S COOPERATION.

3        MR. ZHANG HAS MET WITH THE GOVERNMENT ON MULTIPLE OCCASIONS

4   TO ASSIST THE GOVERNMENT AND THE VICTIM COMPANY TO LOCATE

5   DEVICES THAT MIGHT HAVE SIRF OF MATERIAL ON THEM, TO DISCUSS

6   OTHER INDIVIDUALS WHO WERE INVOLVED IN ANYWHERE LOGIC.

7        THE GOVERNMENT TOOK A LOOK AT FORENSIC EVIDENCE WE HAD AND

8   LOOKED AT THE EVIDENTIARY HURDLES THAT WE HAD IN THIS CASE AND

9   WE ARRIVED AT A SENTENCE, A PROBATIONARY SENTENCE WITH A FINE.

10       AND WE BELIEVE THAT THAT IS A REASONABLE SENTENCE IN LIGHT

11  OF THE EVIDENCE THAT WE HAVE, MR. ZHANG'S COOPERATION, ALSO THE

12  VICTIM COMPANY -- AND I'LL NOTE KIMBERLY STEWART FROM SIRF IS

13  HERE TODAY -- THE VICTIM COMPANY WAS INVOLVED IN THE

14  NEGOTIATION.

15       THAT'S WHAT WE CONSIDERED IN REACHING THIS PLEA.

16       THE COURT:  SO YOU HAD PROOF PROBLEMS?

17       MS. KNIGHT:  YES.  AND THOSE WERE THOROUGHLY

18  DISCUSSED WITH JUDGE WHYTE ON -- YOU KNOW, THROUGH SEVERAL

19  SETTLEMENT CONFERENCES.  GETTING INTO THE EVIDENCE AND

20  EVALUATING WHAT WE HAD REGARDING THE THEFT OF TRADE SECRETS, WE

21  HAD SOME SIGNIFICANT EVIDENTIARY HURDLES.

22       THE COURT:  I SEE.

23       MR. NOLAN:  COULD I --

24       THE COURT:  WELL, THAT MAKES -- LET ME ASK YOU, IN

25  TERMS OF COOPERATION, YOU KNOW, HE'S THE ONE THAT STARTS

1    ANYWHERE LOGIC, THEN HE RECRUITS OTHER SIRF EMPLOYEES TO WORK,

2    I GUESS SIMULTANEOUSLY, FOR ANYWHERE LOGIC WHILE THEY'RE

3    WORKING AT SIRF.

4       SO WHY ARE YOU HAVING THE KING PIN COOPERATE DOWN ON LOWER

5    PEOPLE?  SHOULDN'T YOU ROLL UP?  IT SEEMS UNFAIR THAT, YOU

6    KNOW, HE'S NOW SNITCHING ON PEOPLE THAT HE RECRUITED TO DO

7    ILLEGAL THINGS AND NOW HE'S GOING TO GET THE SENTENCING

8    BENEFIT.

9            MS. KNIGHT:  THE OTHER TWO CO-DEFENDANTS ARE IN

10   CHINA.

11      AND WE ALSO LEARNED, THROUGH HIS COOPERATION, ABOUT ANOTHER

12   INDIVIDUAL WHO IS HIGHER ON THE FOOD CHAIN.  WE BELIEVE THERE'S

13   ANOTHER INDIVIDUAL WHO WAS VERY MUCH INVOLVED.  WE'VE JUST

14   RECENTLY LEARNED ABOUT THE EXTENT OF THIS INDIVIDUAL'S

15   INVOLVEMENT.

16      SO WE'RE INVESTIGATING -- WE'RE GOING TO INVESTIGATE.

17   WE'RE INVESTIGATING THAT INDIVIDUAL WHO WAS JUST AS CULPABLE AS

18   MR. ZHANG.

19            THE COURT:  NOW, EARLIER WHEN WE HAD OUR VARIOUS

20   STATUS CONFERENCES, I THOUGHT THAT SIRF WAS ALLEGING THE LOSS

21   AMOUNT TO BE 2 MILLION, SO HOW DID YOU ALL DECIDE ON 75,000?

22            MS. KNIGHT:  WHAT WE LOOKED AT WAS THE CODE THAT WE

23   HAD IN OUR POSSESSION, AND MR. ZHANG -- THE -- WE SEE -- WELL,

24   WE OBTAINED SEVERAL COMPUTERS, AND ALL WE HAD ON THOSE

25   COMPUTERS WERE NAMES OF FILES.  WE DID NOT HAVE THE CODE

1    ITSELF.

2         THERE WERE SOME OTHER DEVICES THAT HAD CODE ON THEM.

3         WE ALSO LEARNED ABOUT ANOTHER INDIVIDUAL WHO MR. ZHANG GAVE

4    SIRF PROPRIETARY INFORMATION TO AND WE TOOK A LOOK AT THAT AND

5    WE WORKED WITH THE VICTIM COMPANY TO ARRIVE AT A LOWER LOSS

6    AMOUNT GIVEN WHAT THE VALUE OF THE CODE IN OUR POSSESSION WAS

7    WORTH.

8         AND THE VICTIM COMPANY AGREED WITH THE LOSS.  THEY

9    EVALUATED THE CODE AND THE LOSS AMOUNT THAT WE CAME UP WITH, OR

10   THAT THE VICTIM COMPANY CONCURRED WITH, WAS BETWEEN 70 AND

11   $120,000.

12        MR. NOLAN:  COULD I ADDRESS SOME OF THESE QUESTIONS,

13   YOUR HONOR?

14        THE COURT:  GO AHEAD.

15        MR. NOLAN:  ALL RIGHT.

16        THE COURT:  I --

17        MR. NOLAN:  NO, NO, NO.

18        FIRST OF ALL, WE USED THE SETTLEMENT CONFERENCE, WHICH WAS

19   AN EXCELLENT VEHICLE, TO BRING THE THREE PARTIES TOGETHER,

20   BECAUSE YOU CAN'T REALLY RESOLVE THESE CASES WITHOUT TAKING

21   INTO ACCOUNT THE VICTIM.

22        THE VICTIM HAS A LOT OF POWER IN TERMS OF SETTLEMENT

23   BECAUSE THEY COME IN FOR RESTITUTION, AND THE GOVERNMENT CAN'T

24   BASICALLY NEGOTIATE RESTITUTION, SO IT MAKES IT ALMOST

25   IMPOSSIBLE FOR, IN CASES LIKE THIS, FOR THE TWO PARTIES TO GET

1    TOGETHER.

2         SO WE HAD THE THREE PARTIES.

3         AND THE BENEFIT OF THAT WAS, FROM THE POINT OF VIEW OF THE

4    JUDGE, WAS THAT HE COULD TALK TO EACH PARTY INDIVIDUALLY, FIND

5    OUT STRENGTHS AND WEAKNESSES, FIND OUT WHAT THEY NEEDED, WHAT

6    THEY WANTED, HOW EVERYBODY FELT ABOUT THE RESOLUTION OF THE

7    CASE.

8         AND FORTUNATELY NOW IN THE NORTHERN DISTRICT -- BEFORE THIS

9    COURT BECAME A JUDGE, THEY RARELY HAPPENED.

10        THEY'RE HAPPENING MORE AND MORE AND I THINK THEY'RE VERY

11   IMPORTANT.  THAT'S NUMBER ONE.

12        NUMBER TWO, THE SETTLEMENT IN THIS CASE INVOLVES A

13   SETTLEMENT WITH THE CIVIL LITIGANTS, WITH THE CIVIL SIDE, AND

14   THE CONDITION OF THAT SETTLEMENT IS THAT WE ENTER A PLEA.

15        AND WE HAD TO SATISFY THE GOVERNMENT, BEFORE ENTERING INTO

16   THIS PLEA, OF OUR FULL AND COMPLETE COOPERATION.  IT ISN'T A

17   MATTER OF A 5K1.  IT'S A MATTER OF CONDITIONED -- THE PLEA IS

18   CONDITIONED ON OUR SATISFYING THE GOVERNMENT, AND THE

19   SETTLEMENT IS CONDITIONED UPON OUR SATISFYING THE GOVERNMENT IN

20   TERMS OF PROVIDING WHATEVER INFORMATION AND HELP WE CAN.

21        AND THE DECISION ON WHETHER OR NOT WE WERE -- WE FULFILLED

22   THAT CONDITION WOULD BE WITH THE UNITED STATES GOVERNMENT.

23             THE COURT:  IS THAT ONGOING OR HAS THAT BEEN

24   COMPLETED?

25             MR. NOLAN:  IT IS ONGOING, ONLY BECAUSE WE, WE SORT

```
 1        OF RAN OUT OF TIME.

 2             WITHIN THE LAST TWO DAYS WE'VE LOCATED INDIVIDUALS AND MAY

 3        HAVE LOCATED SOME OF THE DRIVES IN CHINA AND THE PEOPLE APPEAR

 4        TO BE COOPERATIVE AND WE'RE GOING TO CONTINUE IN THE PURSUIT OF

 5        TRYING TO GET THOSE BACK.

 6             BUT WE HAD THREE, THREE MEETINGS.  ONE WAS -- I CAN'T

 7        REMEMBER WHETHER THEY WERE -- ONE WAS, LIKE, THREE-QUARTERS OF

 8        A DAY, AND THE OTHERS WERE TWO OR THREE HOURS EACH WITH, YOU

 9        KNOW, AGAIN, FULL COOPERATION.

10             SO THE SETTLEMENT AGREEMENT IS REALLY A CONDITION OF

11        ENTERING THE PLEA.

12             THE AMOUNT OF MONEY WAS THE EXACT AMOUNT OF MONEY THAT WAS

13        INITIALLY THOUGHT TO SETTLE THE CIVIL CASE.  IT WAS THE -- THE

14        SETTLEMENT WAS IN PROCESS WHEN HE WAS INDICTED FOR THIS CASE.

15             SO THE CIVIL LITIGANTS HAD A CIVIL LAWSUIT -- NO.  THEY

16        THREATENED -- I'M SORRY.  THEY THREATENED A CIVIL LAWSUIT AND

17        THE AGREED UPON AMOUNT WAS $75,000.  SO THEY'VE GONE BACK TO

18        THAT AMOUNT, WHICH WAS WHAT THEY WERE NEGOTIATING AT THE TIME

19        OF THE COMPLAINT.

20             IF I COULD ALSO INDICATE, YOUR HONOR, RECENTLY -- I'VE DONE

21        A NUMBER OF TRADE SECRET CASES, AND RECENTLY I WAS ASKED TO

22        GIVE A SPEECH IN CHINA ON TRADE SECRET AND ECONOMIC ESPIONAGE.

23             BY THE WAY, THIS IS NOT AN ECONOMIC ESPIONAGE CASE.

24                  MS. KNIGHT:  THAT'S CORRECT.

25                  MR. NOLAN:  THIS IS NOT ONE OF THOSE CASES.  THIS IS
```

```
 1        NOT --
 2                THE COURT:  ALTHOUGH WHAT IS THE INFORMATION THAT HE
 3        GAVE TO THE JIANGSU PROVINCE?  IT WAS THE PROVINCE OFFICE OF
 4        CHINA MOBILE?  I'M LOOKING AT LINE 4 ON PAGE 3.
 5                MR. NOLAN:  HE MADE A PRESENTATION TO THEM, NOT --
 6        AND HE'S GIVEN THOSE DOCUMENTS, THE PRESENTATION DOCUMENTS.
 7            I DON'T THINK THERE ARE ANY TRADE SECRETS IN THE
 8        PRESENTATION DOCUMENTS.  HE WAS TRYING TO GET THEM TO DO
 9        BUSINESS WITH HIM.
10            BUT EVEN IF -- EVEN IF IT -- WELL, I'M NOT GOING TO GET
11        INTO THE BENEFIT THING, BUT THE BENEFIT OF THE GOVERNMENT
12        DOESN'T NECESSARILY MEAN CHINA MOBILE AS A COMPANY, BUT THAT'S
13        BESIDE THE POINT.
14            IN PREPARATION FOR THIS SPEECH TO TRY TO EDUCATE SOME OF
15        THE CHINESE -- AMERICAN CHINESE IN BUSINESS IN BUYING
16        PHARMACEUTICAL, WE DID A SURVEY OF ALL THE CRIMINAL TRADE
17        SECRET CASES FROM THE TIME THEY STARTED IN THE FEDERAL SYSTEM
18        UNTIL, I THINK, JUNE OF LAST YEAR, YEAH, JUNE OF LAST YEAR
19        BECAUSE THE SPEECH WAS MAY OR JUNE.
20            AND WHAT WE DETERMINED WAS THAT THERE WERE 125 CASES.  OUT
21        OF THOSE 125 CASES, 34 OF THE PEOPLE RECEIVED PROBATION.
22            IT'S IRONIC THAT 32 OF THE 34 WERE CAUCASIAN NAMES AND ONLY
23        TWO WERE ASIAN NAMES.  ASIAN DEFENDANTS RECEIVED TWICE THE
24        SENTENCE OF CAUCASIAN -- ASIAN NAMED INDIVIDUALS RECEIVED TWICE
25        THE SENTENCE OF CAUCASIAN NAMED INDIVIDUALS.
```

1    THE SENTENCING RANGE WAS NOT VERY HIGH.  THERE WAS ONE

2    OUTLIER AT ABOUT 188 MONTHS OUT OF THESE 125 CASES THAT WERE

3    TRIED, EITHER TRIED OR PLED, AND I MEAN PLED IN THE

4    UNITED STATES.

5    AND IT IS -- I ONLY POINT THIS OUT BECAUSE THE FEDERAL

6    SENTENCING COMMISSION, IN FACT, FOUND OUT THROUGH THE FEDERAL

7    DEFENDER THAT I HAD DONE THIS STUDY, THIS SURVEY AND THIS STUDY

8    FOR THIS SPEECH, THEY ASKED FOR IT, I SUBMITTED IT -- THEY

9    SUBMITTED IT TO THE SENTENCING COMMISSION AND THE SENTENCING

10   COMMISSION DECIDED TO GO CONTRARY TO THE GOVERNMENT'S

11   RECOMMENDATION OF INCREASING THE BASE LEVEL OFFENSE FOR TRADE

12   SECRETS BASED UPON, I'M TOLD, BASED UPON THE MATERIALS I

13   SUBMITTED, THAT THEY -- THEY SAW THE SCOPE IN TERMS OF THE

14   SERIOUSNESS OF EACH OF THE OFFENSES.

15   I'M ONLY GIVING YOU THAT BECAUSE I THINK IT'S INTERESTING

16   BECAUSE THAT PERSPECTIVE HELPS -- THAT MAY HELP YOU, AND I'D BE

17   HAPPY TO SUBMIT -- TO GIVE YOU THAT AS, YOU KNOW, FOR YOUR

18   BENEFIT SO YOU CAN TAKE A LOOK.

19   IT CERTAINLY HELPED, APPARENTLY HELPED THE SENTENCING

20   COMMISSION IN NOT INCREASING THE BASE LEVEL, AND ALSO NOT

21   DOUBLE JOINING ECONOMIC ESPIONAGE WITH TAKING TO A FOREIGN

22   COUNTRY.  ONE IS GOING TO BE A FOUR LEVEL, THE OTHER IS GOING

23   TO BE A TWO LEVEL ENHANCEMENT.

24   IN THIS PARTICULAR CASE, THE REASONING BEHIND ALL THE --

25   THE COURT:  I THINK THE LINE IN CHINA BETWEEN A

 1        COMPANY AND THE GOVERNMENT IS VERY BLURRY.

 2            MR. NOLAN:  THAT'S TRUE.

 3            THE COURT:  AND IT'S MORE SO THAN PROBABLY ANY OTHER

 4        COUNTRY IN THE WORLD.

 5            MR. NOLAN:  OH, ABSOLUTELY.

 6        BUT I TRIED A CASE IN THIS DISTRICT WHERE THE ISSUE WAS

 7        ECONOMIC ESPIONAGE AND WAS IT BENEFITING THE COUNTRY.

 8            AND IT WAS THE 863 PROJECT, AND YOU PROBABLY ARE AWARE OF

 9        THE 863 PROJECT, AND WHAT WE PROVED TO THE COURT AND TO THE --

10        WELL, THE COURT MADE THE DECISION ON ITS OWN -- WAS THAT IS A,

11        THAT IS A GRANT PROJECT, NOT AN INVESTMENT PROJECT.

12            NOW, I KNOW THAT DISTINCTION, YOU KNOW, IS DIFFICULT.  BUT

13        WE HAD THAT, IN EFFECT, DISMISSED BY THE COURT IN A RULING,

14        THAT IF IT'S A GRANT PROGRAM, IT'S NOT A BENEFIT FOR A COUNTRY,

15        YOU KNOW, BECAUSE OTHERWISE YOU CAN ARGUE ANYTHING BENEFITS THE

16        COUNTRY.

17            IF YOU COME INTO THE UNITED STATES AND YOU HAVE TO PAY

18        TAXES, YOU'RE BENEFITING THE UNITED STATES GOVERNMENT.

19            I MEAN, SO A BENEFIT CAN GO A LONG WAY.  AND I THINK --

20            THE COURT:  WELL, I STILL THINK, BASED ON -- I MEAN,

21        YOU CAN TALK ABOUT EVERY SINGLE TRADE SECRET CASE IN THE

22        COUNTRY, BUT YOU HAVE TO LOOK AT THE SPECIFICS THAT ARE BEFORE

23        YOU, AND BASED ON THESE FACTS, I THINK THIS IS A VERY LENIENT

24        SENTENCE.

25            BUT I TAKE MS. KNIGHT AT HER WORD THAT THE GOVERNMENT HAD

1    SOME PROOF PROBLEMS AND SHE IS A ZEALOUS ADVOCATE AND SHE

2    THINKS THIS IS A FAIR DEAL.

3        SO I'M SATISFIED.

4        BUT I DO THINK, ABSENT EVIDENTIARY HOLES OR SOME KIND OF

5    PROOF PROBLEM, I WOULD NOT FEEL COMFORTABLE WITH ACCEPTING THIS

6    11(C)(1)(C) PLEA AGREEMENT.

7        BUT MS. KNIGHT IS A VERY EXPERIENCED ATTORNEY AND SHE'S

8    TELLING ME THIS IS A FAIR AND APPROPRIATE DISPOSITION IN LIGHT

9    OF HER EVIDENCE, SO I TAKE HER AT HER WORD.

10        MR. NOLAN:  WE HAD THE HELP OF A EXPERIENCED JUDGE,

11    ALSO, TO WORK THIS OUT AS WELL.

12        THE COURT:  AND I HEAR YOU.  I HEAR YOU.

13    ALL RIGHT.  SO LET'S GO FORWARD.

14        MR. NOLAN:  OKAY.  THANK YOU.

15        THE COURT:  OKAY.  ALL RIGHT.  WOULD YOU PLEASE SWEAR

16    IN MR. -- IT'S ZHANG; CORRECT?

17        THE DEFENDANT:  YES.

18        THE CLERK:  RAISE YOUR RIGHT HAND.

19    (ZHIQIANG ZHANG, DEFENDANT, SWORN.)

20        THE DEFENDANT:  YES.

21        MR. NOLAN:  YOUR HONOR, BEFORE WE PROCEED, I THINK WE

22    OUGHT TO FILE A WAIVER OF INDICTMENT.

23        THE COURT:  OH, YES, PLEASE.  AND I DON'T EVEN

24    HAVE -- AH.  WAIT ONE SECOND.

25    YES, PLEASE, LET'S DO THAT.

1          THE CLERK:  HE'S FILLING OUT AND SIGNING THE FORM.

2      AND YOU HAVE THE SUPERSEDING INFORMATION, RIGHT?  IT SHOULD

3  BE ON TOP OF THE FILE.

4          THE COURT:  DATED APRIL 8TH, FILED APRIL 8TH,

5  SUPERSEDING INFORMATION?

6      ALL RIGHT.  THANK YOU.

7      MR. ZHANG, DO YOU HAVE A COPY OF THE SUPERSEDING

8  INFORMATION?

9          THE DEFENDANT:  YES.

10          THE COURT:  HAVE YOU HAD A CHANCE TO REVIEW IT?

11          THE DEFENDANT:  YES.

12          THE COURT:  HAVE YOU HAD AN OPPORTUNITY TO DISCUSS

13  THE SUPERSEDING INFORMATION WITH YOUR ATTORNEY?

14          THE DEFENDANT:  YES.

15          THE COURT:  THE SUPERSEDING INFORMATION CHARGES YOU

16  WITH THEFT OF TRADE SECRETS IN VIOLATION OF 18 U.S. CODE

17  SECTION 1832(A)(2), AND TRADE SECRETS FORFEITURE IS ALSO

18  PROVIDED FOR IN THE INFORMATION PURSUANT TO 18 U.S.C. SECTION

19  1834.

20      MR. NOLAN, DOES YOUR CLIENT WAIVE READING OF THE

21  INFORMATION AND ADVISEMENT OF RIGHTS?

22          MR. NOLAN:  HE DOES.

23          THE COURT:  OKAY.  AND HAVE YOU SWORN IN MR. ZHANG?

24          THE CLERK:  YES.

25          THE COURT:  OH, YOU HAVE.  OKAY.  ALL RIGHT.  THANK

1       YOU.

2           ALL RIGHT.  MR. ZHANG, I HAVE SOME QUESTIONS TO ASK YOU.

3           FIRST OF ALL, YOU DID REVIEW THIS WAIVER OF INDICTMENT

4       FORM; CORRECT?

5               THE DEFENDANT:  YES.

6               THE COURT:  AND YOU UNDERSTAND YOU DO HAVE THE RIGHT

7       TO BE INDICTED BY A GRAND JURY THAT IS MADE UP OF CITIZENS OF

8       THE COMMUNITY?

9               THE DEFENDANT:  YES.

10              THE COURT:  AND YOU'RE GIVING UP THAT RIGHT AND YOU

11      WISH TO PROCEED BY INFORMATION?

12              THE DEFENDANT:  YES.

13              THE COURT:  OKAY.  I'M SIGNING YOUR WAIVER OF

14      INDICTMENT FORM AND MS. PARKER BROWN WILL FILE THAT.

15          MR. ZHANG, IF YOU NEED ME TO REPEAT OR EXPLAIN ANY

16      QUESTION, WOULD YOU PLEASE TELL ME?

17              THE DEFENDANT:  YES.

18              THE COURT:  IF YOU NEED TO SPEAK WITH YOUR ATTORNEY

19      BEFORE ANSWERING ANY QUESTION, WOULD YOU PLEASE DO SO?

20              THE DEFENDANT:  YES.

21              THE COURT:  YOU'VE TAKEN AN OATH, SO IF YOU MAKE AN

22      UNTRUE STATEMENT, THE GOVERNMENT CAN USE THAT STATEMENT TO

23      PROSECUTE YOU FOR PERJURY.

24          DO YOU UNDERSTAND THAT?

25              THE DEFENDANT:  YES.

1           THE COURT:  WHAT IS YOUR TRUE NAME?

2           THE DEFENDANT:  ZHIQIANG ZHANG.

3           THE COURT:  HOW OLD ARE YOU?

4           THE DEFENDANT:  I WAS BORN IN 1969.

5           THE COURT:  WHAT IS THE HIGHEST LEVEL OF SCHOOLING

6    YOU HAVE ATTENDED?

7           THE DEFENDANT:  PH.D.

8           THE COURT:  DID YOU READ THIS PLEA AGREEMENT?

9           THE DEFENDANT:  YES.

10          THE COURT:  HAVE YOU HAD ENOUGH TIME TO DISCUSS THIS

11   PLEA AGREEMENT WITH YOUR ATTORNEY?

12          THE DEFENDANT:  YES.

13          THE COURT:  HAS YOUR ATTORNEY BEEN ABLE TO ANSWER

14   YOUR QUESTIONS ABOUT THE PLEA AGREEMENT?

15          THE DEFENDANT:  YES.

16          THE COURT:  ARE YOU SATISFIED WITH THE SERVICES YOUR

17   ATTORNEY HAS PROVIDED TO YOU?

18          THE DEFENDANT:  YES.

19          THE COURT:  OTHER THAN THE PROMISES THAT ARE

20   CONTAINED IN THIS PLEA AGREEMENT, HAS ANYONE ELSE PROMISED YOU

21   ANYTHING IN ORDER TO GET YOU TO PLEAD GUILTY TODAY?

22          THE DEFENDANT:  LET ME --

23      (DISCUSSION OFF THE RECORD BETWEEN MR. NOLAN AND THE

24   DEFENDANT.)

25          MR. NOLAN:  YOUR HONOR, IF I MIGHT, THE ONE CONCERN

```
 1        IS WE HAVE THAT SETTLEMENT AGREEMENT WHICH WAS A CONDITION UPON

 2        ENTERING THE PLEA, AND SO HE MAY BE CONFUSED ABOUT THAT.

 3              THE DEFENDANT:  YES.

 4              MR. NOLAN:  BUT OTHER THAN -- CAN I --

 5              THE COURT:  DOES THE SETTLEMENT AGREEMENT PROVIDE FOR

 6        ANY BENEFITS IN TERMS OF SENTENCING?

 7              MR. NOLAN:  YES, IN TERMS OF RESTITUTION.

 8              THE COURT:  IT, WHAT, AGREES TO THE 75,000?

 9              MR. NOLAN:  RIGHT, CORRECT.

10              THE COURT:  ALL RIGHT.  WHAT ELSE?  ANYTHING ELSE IN

11        THE SETTLEMENT AGREEMENT THAT WOULD AFFECT YOUR SENTENCING?

12              MR. NOLAN:  NO, NOTHING.

13              THE COURT:  OKAY.  ALL RIGHT.  MR. ZHANG, IS THERE

14        ANYTHING THAT YOU HAVE BEEN PROMISED IF YOU PLEAD GUILTY TODAY,

15        OTHER THAN WHAT'S SET FORTH IN THIS PLEA AGREEMENT, WHICH DOES

16        INCLUDE THE $75,000 IN RESTITUTION?  IS THERE ANYTHING ELSE,

17        SIR?

18              THE DEFENDANT:  NO.

19              THE COURT:  OKAY.  HAS ANYONE MADE ANY THREATS

20        AGAINST YOU IN ORDER TO GET YOU TO PLEAD GUILTY?

21              THE DEFENDANT:  NO.

22              THE COURT:  IS YOUR DECISION TO PLEAD GUILTY FREE AND

23        VOLUNTARY?

24              THE DEFENDANT:  YES.

25              THE COURT:  HAVE YOU TAKEN ANY DRUG OR MEDICATION
```

1    THAT AFFECTS YOUR ABILITY TO THINK CLEARLY, UNDERSTAND WHAT IS

2    HAPPENING, AND MAKE DECISIONS?

3              THE DEFENDANT:  NO.

4              THE COURT:  ALL RIGHT.  MS. KNIGHT, WOULD YOU PLEASE

5    STATE THE ELEMENTS THAT THE GOVERNMENT WOULD HAVE TO PROVE

6    BEYOND A REASONABLE DOUBT IN ORDER FOR MR. ZHANG TO BE FOUND

7    GUILTY AND CONVICTED OF THIS OFFENSE?

8              MS. KNIGHT:  YES.  THANK YOU, YOUR HONOR.

9         THE DEFENDANT'S BEEN CHARGED IN A SUPERSEDING INFORMATION

10   WITH THEFT OF TRADE SECRETS IN VIOLATION OF 18 UNITED STATES

11   CODE SECTION 1832(A)(2).

12        THE ELEMENTS OF THAT OFFENSE ARE AS FOLLOWS:  WITH THE

13   INTENT TO CONVERT A TRADE SECRET TO THE ECONOMIC BENEFIT OF

14   ANYONE OTHER THAN THE OWNER OF THE TRADE SECRET, THE DEFENDANT

15   KNOWINGLY, AND WITHOUT AUTHORIZATION, REPLICATED A TRADE

16   SECRET, SPECIFICALLY ALLEGED IN THE SUPERSEDING INDICTMENT AS

17   AN INTERFACE CONTAINED WITHIN SIRF TECHNOLOGIES, WHICH IS NOW A

18   SUBSIDIARY OF CAMBRIDGE SILICON RADIO'S CODE, KNOWN AS

19   BTMANAGER.JAVA CODE; AND THE GOVERNMENT WOULD HAVE TO ALSO

20   PROVE THAT THE DEFENDANT INTENDED OR KNEW THAT HIS POSSESSION,

21   APPROPRIATION, OR COMMUNICATION OF THE TRADE SECRET WOULD

22   INJURE THE OWNER OF THE TRADE SECRET, SPECIFICALLY SIRF

23   TECHNOLOGY AND CAMBRIDGE SILICON RADIO, AND THAT THE

24   INFORMATION WAS, IN FACT, A TRADE SECRET AND THE TRADE SECRET

25   IS RELATED TO OR INCLUDED IN A PRODUCT THAT IS PRODUCED FOR OR

```
 1          PLACED IN INTERSTATE OR FOREIGN COMMERCE.

 2               THE COURT:  DO YOU UNDERSTAND, MR. ZHANG, WHAT THE

 3     GOVERNMENT WOULD HAVE TO PROVE BEYOND A REASONABLE DOUBT AT

 4     TRIAL?

 5               THE DEFENDANT:  YES.

 6               THE COURT:  WOULD YOU PLEASE, MS. KNIGHT, ALSO STATE

 7     THE MAXIMUM PENALTIES PROVIDED BY LAW?

 8               MS. KNIGHT:  YES, YOUR HONOR.  THE MAXIMUM SENTENCE

 9     OF IMPRISONMENT IS TEN YEARS; A MAXIMUM FINE OF $250,000; THE

10     MAXIMUM TERM OF SUPERVISED RELEASE IS THREE YEARS; A MANDATORY

11     SPECIAL ASSESSMENT OF $100; THERE'S ALSO RESTITUTION AND

12     FORFEITURE.

13               THE COURT:  ALL RIGHT.  IN ADDITION, SIR, I DON'T

14     KNOW WHAT YOUR IMMIGRATION STATUS IS, BUT IF YOU ARE NOT A U.S.

15     CITIZEN, YOU MAY BE REMOVED FROM THE UNITED STATES, AND THERE

16     MAY BE OTHER IMMIGRATION CONSEQUENCES AS WELL.

17          DO YOU UNDERSTAND THE MAXIMUM PENALTIES PROVIDED BY LAW?

18               THE DEFENDANT:  YES.

19               THE COURT:  SIR, YOU ARE PLEADING TO A BINDING --

20     PURSUANT TO A BINDING PLEA AGREEMENT, KNOWN AS A FEDERAL RULE

21     OF CRIMINAL PROCEDURE 11(C)(1)(C) PLEA AGREEMENT, AND IF YOU

22     ARE NOT SENTENCED ACCORDING TO THE AGREEMENT THAT YOU HAVE

23     REACHED WITH THE GOVERNMENT IN THIS PLEA AGREEMENT, YOU CAN

24     WITHDRAW YOUR GUILTY PLEA.

25               DO YOU UNDERSTAND THAT?
```

```
1                    THE DEFENDANT:  YES.

2                    THE COURT:  SIMILARLY, IF YOU ARE NOT SENTENCED

3      ACCORDING TO YOUR PLEA AGREEMENT WITH THE GOVERNMENT AS SET

4      FORTH IN THIS PLEA AGREEMENT, THE GOVERNMENT CAN ALSO WITHDRAW

5      THIS PLEA OFFER TO YOU.

6          DO YOU UNDERSTAND THAT?

7                    THE DEFENDANT:  YES.

8                    THE COURT:  DO YOU UNDERSTAND THAT YOU HAVE THE RIGHT

9      TO PLEAD NOT GUILTY?

10                   THE DEFENDANT:  YES.

11                   THE COURT:  DO YOU GIVE UP THAT RIGHT?

12                   THE DEFENDANT:  YES.

13                   THE COURT:  DO YOU UNDERSTAND THAT YOU HAVE THE RIGHT

14     TO A JURY TRIAL?

15                   THE DEFENDANT:  YES.

16                   THE COURT:  DO YOU GIVE UP THAT RIGHT?

17                   THE DEFENDANT:  YES.

18                   THE COURT:  DO YOU UNDERSTAND THAT YOU HAVE THE RIGHT

19     TO BE REPRESENTED BY AN ATTORNEY AT TRIAL AND AT ALL STAGES OF

20     THESE PROCEEDINGS?

21                   THE DEFENDANT:  YES.

22                   THE COURT:  DO YOU GIVE -- OH, I'M SORRY.

23          IF YOU COULD NOT AFFORD AN ATTORNEY, THE COURT WOULD

24     APPOINT ONE FOR YOU.  DO YOU UNDERSTAND THAT?

25                   THE DEFENDANT:  YES.
```

1    THE COURT:  DO YOU UNDERSTAND THAT YOU HAVE THE RIGHT

2    AT TRIAL TO SEE, HEAR, AND ASK QUESTIONS OF ANY WITNESSES

3    AGAINST YOU?

4    THE DEFENDANT:  YES.

5    THE COURT:  DO YOU GIVE UP THAT RIGHT?

6    THE DEFENDANT:  YES.

7    THE COURT:  DO YOU UNDERSTAND THAT YOU HAVE THE RIGHT

8    TO TESTIFY AND TO PRESENT EVIDENCE IN YOUR DEFENSE AT TRIAL?

9    THE DEFENDANT:  YES.

10    THE COURT:  DO YOU GIVE UP THAT RIGHT?

11    THE DEFENDANT:  YES.

12    THE COURT:  DO YOU UNDERSTAND THAT YOU HAVE THE RIGHT

13    TO REMAIN SILENT, NOT TO TESTIFY, NOT TO PRESENT ANY EVIDENCE

14    OR ANY DEFENSE AT ALL?

15    THE DEFENDANT:  YES.

16    THE COURT:  DO YOU GIVE UP THAT RIGHT?

17    THE DEFENDANT:  YES.

18    THE COURT:  DO YOU UNDERSTAND THAT YOU HAVE THE RIGHT

19    TO CALL WITNESSES TO COME TO TRIAL TO TESTIFY ON YOUR BEHALF,

20    AND TO HAVE THE COURT ORDER WITNESSES TO COME TO COURT TO

21    TESTIFY?

22    THE DEFENDANT:  YES.

23    THE COURT:  DO YOU GIVE UP THAT RIGHT?

24    THE DEFENDANT:  YES.

25    THE COURT:  DO YOU UNDERSTAND THAT IF YOU WERE TO GO

```
 1        TO TRIAL AND BE CONVICTED, YOU WOULD HAVE THE RIGHT TO APPEAL

 2        THE CONVICTION, THE JUDGMENT, YOUR SENTENCE, AND ANY ORDERS

 3        MADE BY THIS COURT?

 4                  THE DEFENDANT:  YES.

 5                  THE COURT:  IN PARAGRAPH 4 OF YOUR PLEA AGREEMENT,

 6        HOWEVER, YOU ARE GIVING UP YOUR RIGHT TO APPEAL.

 7           IS THAT WHAT YOU WANT TO DO, SIR?

 8                  THE DEFENDANT:  YES.

 9                  THE COURT:  YOU ALSO HAVE THE RIGHT TO FILE OTHER

10        TYPES OF MOTIONS OR PETITIONS ATTACKING ORDERS MADE BY THIS

11        COURT ATTACKING YOUR CONVICTION AND YOUR SENTENCE.

12           DO YOU UNDERSTAND THAT?

13                  THE DEFENDANT:  YES.

14                  THE COURT:  DO YOU UNDERSTAND THAT YOU ARE GIVING UP

15        THAT RIGHT IN PARAGRAPH 5 OF YOUR PLEA AGREEMENT, EXCEPT YOU

16        ARE KEEPING THE RIGHT TO ARGUE AND FILE A CLAIM THAT YOUR

17        LAWYER WAS NOT EFFECTIVE IN NEGOTIATING THIS PLEA AGREEMENT OR

18        IN YOUR ENTRY OF A GUILTY PLEA?

19                  THE DEFENDANT:  YES.

20                  THE COURT:  WOULD YOU PLEASE STATE THE GOVERNMENT'S

21        OFFER OF PROOF?

22                  MS. KNIGHT:  YES, YOUR HONOR.  THANK YOU.

23           IF THIS CASE WERE TO PROCEED TO TRIAL, THE GOVERNMENT WOULD

24        OFFER TESTIMONY OF AN AGENT FROM THE UNITED STATES SECRET

25        SERVICE, REPRESENTATIVES FROM SIRF TECHNOLOGY, FORENSIC
```

1    EVIDENCE, ALONG WITH THE DEFENDANT'S STATEMENTS TO PROVE THE

2    FOLLOWING:

3         ON OR ABOUT NOVEMBER 26TH, 2002, THE DEFENDANT WAS HIRED

4    AS A SENIOR SOFTWARE ENGINEER AT SIRF TECHNOLOGY IN SAN JOSE,

5    CALIFORNIA AND WAS ULTIMATELY PROMOTED TO DIRECTOR OF SOFTWARE

6    DEVELOPMENT IN AUGUST OF 2008.

7         AT THE TIME WHEN THE DEFENDANT WAS HIRED, HE SIGNED A

8    PROPRIETARY INFORMATION AGREEMENT OUTLINING HIS OBLIGATIONS TO

9    SIRF REGARDING, AMONG OTHER MATTERS, THE TREATMENT AND

10   PROTECTION OF CONFIDENTIAL INFORMATION AND THAT ALL OF HIS

11   INVENTIONS BELONGED TO SIRF TECHNOLOGY.

12        IN ADDITION, HE SIGNED A DOCUMENT ENTITLED "LIST OF

13   INVENTIONS" WHICH WAS INCORPORATED INTO THE PROPRIETARY

14   INFORMATION AGREEMENT CERTIFYING THAT HE DID NOT HAVE ANY

15   INVENTIONS, DISCOVERIES, DEVELOPMENTS, IMPROVEMENTS, TRADE

16   SECRETS, OR WORKS OF AUTHORSHIP RELEVANT TO HIS EMPLOYMENT AT

17   SIRF.

18        IN JUNE 2009, SIRF BECAME A SUBSIDIARY OF CAMBRIDGE

19   SILICON RADIO.

20        IN APPROXIMATELY MAY OF 2009, THE DEFENDANT RESIGNED FROM

21   SIRF TO WORK FOR ANYWHERE LOGIC LLC, A COMPANY IN ONE OF THE

22   SAME MARKETS AS SIRF, WHICH HE ESTABLISHED IN NOVEMBER 2000 TO

23   PROVIDE LOCATION-BASED SERVICES FOR MOBILE PHONES.

24        WHILE THE DEFENDANT WAS STILL EMPLOYED AT SIRF AND

25   UNBEKNOWNST TO SIRF, HE BEGAN TO ESTABLISH SEVERAL

1   ANYWHERE LOGIC ENTITIES IN THE UNITED STATES AND THE PEOPLE'S

2   REPUBLIC OF CHINA.  FOR EXAMPLE, IN NOVEMBER 2008, HE

3   ESTABLISHED ANYWHERE LOGIC U.S.A. AS A CALIFORNIA CORPORATION.

4        FURTHERMORE, THE DEFENDANT RECRUITED SIRF EMPLOYEES,

5   INCLUDING XIADONG LIANG AND YANMIN LI, WHO ARE CO-DEFENDANTS IN

6   THIS CASE, TO WORK FOR ANYWHERE LOGIC WHILE THEY WERE STILL

7   EMPLOYED AT SIRF.

8        IN ADDITION, IN APPROXIMATELY 2006, HE ARRANGED FOR

9   ANYWHERE LOGIC EMPLOYEES TO GIVE A PRESENTATION THE JIANGSU

10  PROVINCE OFFICE OF CHINA MOBILE REGARDING ANYWHERE LOGIC'S

11  PRODUCT.

12       FURTHERMORE, WHILE THE DEFENDANT WAS EMPLOYED AT SIRF, HE

13  WAS RESPONSIBLE FOR DEVELOPING THE SIRFSTUDIO SOURCE CODE WHICH

14  WAS TO BE USED AS A PLATFORM FOR LOCATION-BASED SERVICES AND

15  APPLICATIONS FOR MOBILE PHONES.

16       UNTIL APPROXIMATELY SEPTEMBER 2008, THE DEFENDANT'S

17  PRIMARY ASSIGNMENT WAS TO WORK ON SIRFSTUDIO, INCLUDING

18  MANAGING SEVERAL ENGINEERS.

19       IN SEPTEMBER 2008, MR. ZHANG'S PRIMARY ASSIGNMENT BECAME

20  DEVELOPING A PROGRAM CALLED SIRFHYBRID WHICH WAS RELATED TO,

21  BUT DISTINCT FROM, SIRFSTUDIO.

22       FROM APPROXIMATELY NOVEMBER 2008 UNTIL APPROXIMATELY APRIL

23  OF 2009, THE DEFENDANT ACCESSED SIRF'S PERFORCE DATABASE, WHICH

24  IS A PASSWORD PROTECTED DATABASE WHERE SIRF MAINTAINS ITS

25  PROPRIETARY INFORMATION, AND DOWNLOADED OVER 100,000 FILES

1    CONSTITUTING MILLIONS OF LINES OF SOURCE CODE RELATING TO

2    SIRFSTUDIO AND SIRFLOC.  HE THEN TRANSFERRED SOME OF THE CODE

3    TO EXTERNAL DEVICES AND PLACED THE MATERIAL ON HIS PERSONAL

4    LAPTOP.  HE LATER DELETED THE FILES FROM HIS PERSONAL LAPTOP.

5         THEN ON JULY 15TH, 2009, THE DEFENDANT SAVED MULTIPLE

6    COPIES OF THE INSTALL FILE FOR THE OPERATING SYSTEM FEDORA.  HE

7    DID NOT INSTALL THE OPERATING SYSTEM ON THE COMPUTER.

8         HOWEVER, THE ACT OF SAVING MULTIPLE COPIES OF THE

9    INSTALLATION FILE OVERRODE THE UNUSED SPACE ON THE COMPUTER.

10        THE DEFENDANT AGREES THAT SIRF SPENT APPROXIMATELY $7.7

11   MILLION, EXCLUDING SALES COSTS, TO DEVELOP SIRFSTUDIO SOURCE

12   CODE AND ITS COMPANION CODE KNOWN AS SIRFLOC.

13        FOR PURPOSES OF THE SUPERSEDING INFORMATION, THE FACTUAL

14   BASIS THE GOVERNMENT ALLEGES IS AS FOLLOWS:  THAT THE DEFENDANT

15   REPLICATED INFORMATION BELONGING TO SIRF, SPECIFICALLY THE

16   INTERFACE WITHIN THE CODE KNOWN AS BTMANAGER.JAVA TO USE IN

17   DEVELOPING A PRODUCT FOR ANYWHERE LOGIC.

18        SIRF DEVELOPED THIS CODE IN JUNE 2006 TO ACCESS THE SIRF

19   BLUETOOTH GPS DEVICE AS PART OF RELATED GLOBAL POSITIONING

20   SYSTEM LOCATION-BASED SERVICES FOR MOBILE PHONES.

21        THE DEFENDANT KNEW THAT THIS INFORMATION WAS A TRADE

22   SECRET AND THAT SIRF TECHNOLOGY AND CAMBRIDGE SILICON RADIO

23   TOOK REASONABLE MEASURES TO KEEP THE INFORMATION SECRET, AND

24   THE INFORMATION DERIVED INDEPENDENT ECONOMIC VALUE FROM NOT

25   BEING GENERALLY KNOWN TO, AND NOT BEING READILY ASCERTAINABLE

1    THROUGH PROPER MEANS TO THE PUBLIC.

2          THE DEFENDANT FURTHER AGREES THAT THE INFORMATION RELATED

3    TO THE PRODUCTS THAT ARE PRODUCED FOR OR PLACED AT

4    INTERSTATE -- THAT THE PRODUCTS ARE PRODUCED FOR OR PLACED IN

5    INTERSTATE OR FOREIGN COMMERCE, MEANING THE INFORMATION THAT HE

6    REPLICATED.

7          HE ALSO KNEW THAT HIS POSSESSION AND USE OF THE

8    INFORMATION OUTSIDE OF SIRF TECHNOLOGY AND CAMBRIDGE SILICON

9    RADIO WOULD INJURE THAT COMPANY.

10         FINALLY, THE DEFENDANT AGREES THAT THE COMPANY SPENT

11   APPROXIMATELY BETWEEN $70,000 AND $120,000 TO DEVELOP THE

12   BTMANAGER.JAVA CODE.

13            THE COURT:  MR. ZHANG, DID YOU HEAR AND UNDERSTAND

14    THE FACTS THE GOVERNMENT IS PREPARED TO PROVE?

15            THE DEFENDANT:  YES.

16            THE COURT:  ARE THOSE FACTS TRUE AND CORRECT?

17            THE DEFENDANT:  YES.

18            THE COURT:  LET ME ASK, WHAT IS THE STATUS OF THE TWO

19    CO-DEFENDANTS?  THEY'RE IN CHINA?

20            MS. KNIGHT:  YES, YOUR HONOR, THEY ARE IN CHINA.

21            THE COURT:  ALL RIGHT.  WHAT IS YOUR PLEA TO

22   COUNT ONE OF THE SUPERSEDING INFORMATION WHICH CHARGES THAT IN

23   OR ABOUT 2006 IN THE NORTHERN DISTRICT OF CALIFORNIA, YOU

24   COMMITTED THE OFFENSE OF THEFT OF TRADE SECRETS IN VIOLATION OF

25   18 UNITED STATES CODE SECTION 1832(A)(2)?

1              MR. NOLAN:  WHAT'S YOUR PLEA?

2              THE DEFENDANT:  HUH?

3              MR. NOLAN:  WHAT IS YOUR PLEA?

4              THE DEFENDANT:  GUILTY.

5              MR. NOLAN:  SAY IT AGAIN, PLEASE.

6              THE DEFENDANT:  GUILTY PLEA.

7              THE COURT:  OKAY.  YOU'RE PLEADING GUILTY TO THIS

8     OFFENSE?

9              THE DEFENDANT:  YES.

10             THE COURT:  ALL RIGHT.  YOU UNDERSTAND THERE IS A

11    FORFEITURE PROVISION FOR A DELL LAPTOP COMPUTER, A DELL POWER

12    EDGE SERVER, THUMB -- AND VARIOUS THUMB DRIVES AND COMPACT

13    DISKS?  YOU UNDERSTAND THAT AS WELL, CORRECT?

14             THE DEFENDANT:  YES.

15             THE COURT:  OKAY.  ALL RIGHT.

16         MR. NOLAN, DO YOU CONCUR IN MR. ZHANG'S WAIVER OF RIGHTS

17    AND ENTRY OF A GUILTY PLEA TO THE SUPERSEDING INFORMATION?

18             MR. NOLAN:  I DO.

19             THE COURT:  THE COURT ACCEPTS THE PLEA AND FINDS THAT

20    MR. ZHANG HAS MADE A KNOWING, INTELLIGENT, FREE AND VOLUNTARY

21    WAIVER OF RIGHTS AND ENTRY OF A GUILTY PLEA.  THERE IS AN

22    INDEPENDENT FACTUAL BASIS FOR EACH ELEMENT OF THE OFFENSE.

23         I'M REFERRING THIS MATTER TO THE U.S. PROBATION OFFICE FOR

24    THE PREPARATION OF A PRESENTENCE REPORT.

25         I'M, OF COURSE, GOING TO RESERVE JUDGMENT AS TO WHETHER I'M

1       GOING TO ACCEPT THIS PLEA AGREEMENT OR NOT UNTIL AFTER I'VE

2       REVIEWED THE PRESENTENCE REPORT AND AFTER WE'VE HAD OUR

3       SENTENCING HEARING AND I'VE HEARD FROM ALL THE PARTIES.

4            I WOULD LIKE TO SEE THE DATA THAT YOU HAVE COLLECTED, SO IF

5       YOU WOULD PLEASE JUST SUBMIT THAT WITH YOUR SENTENCING

6       STATEMENT.

7            DO YOU HAVE ANY OBJECTION TO THAT, MS. KNIGHT?

8                 MS. KNIGHT:  NO.

9                 THE COURT:  SUBMIT THAT WITH YOUR SENTENCING

10      STATEMENT, PLEASE.

11                MR. NOLAN:  CERTAINLY.

12                THE COURT:  HAVE YOU ALL DECIDED ON A SENTENCING

13      HEARING DATE?

14                MR. NOLAN:  NO, YOUR HONOR.

15                MS. KNIGHT:  WHATEVER IS CONVENIENT TO THE COURT.

16                MR. NOLAN:  WHATEVER IS CONVENIENT TO THE COURT.

17                THE CLERK:  IT SHOULD BE ON OR AFTER JULY 24TH.

18                THE COURT:  WHAT DATE WOULD YOU LIKE?  I THINK WE'RE

19      COMPLETELY OPEN.

20                THE CLERK:  WE DO HAVE NASS AND GOLDBERG SET ON THE

21      24TH, BUT THEY MAY GET CONTINUED AGAIN.  I DON'T KNOW.

22                THE COURT:  THAT'LL DEPEND ON ALL THE CO-DEFENDANTS.

23                THE CLERK:  THE 31ST IS GOOD.

24                MR. NOLAN:  THE 31ST?

25                MS. KNIGHT:  THAT'S GOOD FOR THE GOVERNMENT, YOUR

1      HONOR.

2              MR. NOLAN:  THAT'S FINE.  THANK YOU.

3              THE COURT:  OKAY.  SO JULY 31 OF 2013 AT 9:00 A.M.

4          IS THERE ANYTHING ELSE WE NEED TO DO IN MR. ZHANG'S CASE

5      TODAY?

6              MR. NOLAN:  NO, YOUR HONOR.

7              MS. KNIGHT:  NO, YOUR HONOR.  THANK YOU.

8              MR. NOLAN:  NO, YOUR HONOR.

9              THE COURT:  OKAY.  THANK YOU.  WE'LL SEE YOU THEN,

10     SIR.

11             MR. NOLAN:  THANK YOU, YOUR HONOR.

12         (THE PROCEEDINGS WERE CONCLUDED AT 11:04 A.M.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                       CERTIFICATE OF REPORTER

4

5

6

7        I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8    STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9    280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10   CERTIFY:

11       THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12   A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13   ABOVE-ENTITLED MATTER.

14

15

16   _____
     LEE-ANNE SHORTRIDGE, CSR, CRR
17   CERTIFICATE NUMBER 9595

18       DATED:  JANUARY 22, 2014

19

20

21

22

23

24

25